1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

DEJAVUAI, INC., a Washington Corporation,

Plaintiff,

v.

FYODOR "TED" KAPUSTIN aka FYDOR
"TED" KAPUSTINE, an individual,

Defendant.

No.

VERIFIED COMPLAINT FOR
DAMAGES AND INJUNCTIVE RELIEF

## **INTRODUCTION**

1.      This is a case about a current Director of a closely held corporation who is using confidential information, including stolen trade secrets, to actively and continually compete with and intentionally harm the corporation in violation of his fiduciary duties and contractual obligations.

2.      Defendant Fyodor "Ted" Kapustin is a former employee and current member of the Board of Directors (the "Board") of Plaintiff DejaVuAI, Inc. ("DejaVuAI" or the "Company"). By appointing Kapustin to DejaVuAI's Board, the Company's shareholders entrusted Kapustin with the Company's wellbeing. Kapustin accepted that fiduciary responsibility, and in doing so assumed binding legal duties of undivided loyalty, good faith, and due care to DejaVuAI. He is

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1    dutybound to act in the Company's best interests at all times and prohibited from competing with

2    or intentionally causing DejaVuAI harm.

3         3.    Kapustin has and is continuing to violate his fiduciary duties, as well as federal

4    trade secret law and the plain terms of his employment contract. He is not only exploiting

5    DejaVuAI's proprietary software source code to compete with the Company, but also specifically

6    targeting DejaVuAI's customers, employees, resellers, vendors, and investors in a deliberate effort

7    to damage or even destroy the Company.

8         4.    Kapustin has:

9         •  withheld DejaVuAI's proprietary source code from the Company and created

10           competing products based upon it;

11        •  misused DejaVuAI's confidential information to contact current and prospective

12           customers, employees, resellers, vendors, and investors;

13        •  admonished DejaVuAI customers to "make sure you don't sign any new contracts

14           with DejaVuAI, Inc.";

15        •  promised DejaVuAI customers that he will "soon offer you the latest version of my

16           software that has been much improved in the last few months";

17        •  instructed DejaVuAI employees to stop issuing licenses for DejaVuAI's software

18           to its customers;

19        •  encouraged DejaVuAI employees to "start looking for another job" and informed

20           them of his competing venture;

21        •  directed a key DejaVuAI vendor to stop issuing DejaVuAI user licenses, which, as

22           he knows, would cripple the Company; and

23        •  admitted to DejaVuAI investors "Frankly, I don't care about the company. And if

24           you don't care about your own money, then I don't care about it either."

25        5.    Kapustin's conduct is repeated and ongoing, requiring court intervention to prevent

26    further harm to the Company. He has refused to stop when demanded, stating "I don't owe

509372484.4

COMPLAINT - 2

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

anything to DejaVuAI." He has already caused DejaVuAI irreparable harm and, if left unchecked, he will continue, threatening to skuttle the pending and future sales and funding transactions that are integral to the Company's success. DejaVuAI has tried every option to avoid litigation, but Kapustin has become an active threat to the Company's future. DejaVuAI files this Complaint to vindicate its legal rights and stop Kapustin's disloyal and wrongful conduct.

## PARTIES

6.      **Plaintiff:** DejaVuAI, Inc. is a tech company who develops and sells artificial-intelligence-powered image recognition software. It is a closely held Washington Corporation organized under the Washington Business Corporation Act, RCW Title 23B. It is headquartered and has its principal place of business in Olalla, WA.

7.      **Defendant:** Fyodor "Ted" Kapustin is an individual residing in Bellevue, WA. He is a Russian native and Canadian national and was the beneficiary of an O-1 visa during most events described herein.[1] Together with Johnny Kessler, Kapustin founded first 1$^{st}$1 Technologies, LLP ("1$^{st}$1" or the "Partnership"), and its majority-owned subsidiary, DejaVuAI, Inc. Kapustin is a managing partner of 1$^{st}$1 and a Board member of DejaVuAI, and he was previously employed at DejaVuAI as its Chief Technology Officer. He is sued in his personal capacity.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over DejaVuAI's Misappropriation of Trade Secrets Claim pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States. This Court has supplemental jurisdiction over DejaVuAI's other state law claims under 28 U.S.C. § 1367 because they are sufficiently related to DejaVuAI's Misappropriation of Trade Secrets Claim to form part of the same case or controversy.

---

[1] Because Kapustin's name is transcribed from the Cyrillic alphabet, it can be spelled several different ways, including "Kapustine."

509372484.4

COMPLAINT - 3

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

9. Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b) because the Defendant resides in this district and a substantial part of the events or omissions giving rise to DejaVuAI's claims occurred herein.

### STATEMENT OF FACTS

**A. DejaVuAI's Founding**

10. In 2020, Kapustin joined forces with Johnny Kessler, a friend with over twenty years of experience in the tech industry, to found 1$^{st}$1. They agreed 1$^{st}$1 would be partner-managed, with Kapustin developing commercial software for the Partnership and Kessler managing the business side of the enterprise.[2]

11. The business needed funding to grow. To facilitate raising funding from investors, Kessler and Kapustin restructured the business in 2022 by founding DejaVuAI, Inc., as a majority-owned subsidiary of 1$^{st}$1. They moved all 1$^{st}$1's operations and assets to DejaVuAI, including assigning to it all trademarks related to 1$^{st}$1's software. They executed an exclusive, perpetual, irrevocable licensing agreement between 1$^{st}$1 and DejaVuAI that granted DejaVuAI all rights to the software owned by 1$^{st}$1. *See* **Ex. A** (A true and correct copy of that licensing agreement). Since DejaVuAI's founding, 1$^{st}$1 has functioned as only a holding company with no income, expenses, tangible operations, or assets other than its ownership interest in DejaVuAI and the intellectual property it irrevocably licensed to DejaVuAI.

12. At the Company's founding, Kessler and Kapustin were each designated as Directors of the new Company. In their capacity as Board members, Kessler and Kapustin also approved their appointment as officers of the Company, with Kessler becoming the new Company's CEO and Kapustin its CTO.

---

[2] Kapustin retained ownership of an image-recognition prototype he had created prior to 1st1's founding in 2020. He agreed that 1st1 would develop commercial software based on that technology that the Partnership would own. All software and source code that DejaVuAI claims trade secret rights over was created after 1st1's founding in 2020.

**K&L GATES LLP**
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**B. Kapustin's Contract**

13.    Kessler and Kapustin each signed employment contracts with DejaVuAI. *See* **Ex. B** (A true and correct copy of Kapustin's executed Proprietary Information and Invention Assignment Agreement). As consideration, the Company agreed to pay them each a salary. Kapustin also leveraged the employment to support his visa application.

14.    Kapustin's contract contained the standard covenants prohibiting the disclosure and misappropriation of DejaVuAI's intellectual property and other confidential information. Specifically, it included a prohibition on his using or disclosing DejaVuAI's customer and vendor lists or any of the Company's other trade secrets or confidential information except for the Company's benefit, and even then it permitted use or disclosure only to the extent necessary for Kapustin to perform his job. *Id.* at 1, § 3(a). The contract also expressly prohibited Kapustin from soliciting DejaVuAI's employees, customers, and licensors or encouraging these parties to terminate their relationship with DejaVuAI. *Id.* at 4, § 7.

15.    Kapustin's contract also assigned ownership of all Kapustin's inventions related to the Company's business to DejaVuAI, including a prospective assignment of new inventions he created during his employment. *Id.* at 3-4, § 4. Kapustin expressly agreed that any new creations would be "works made for hire" owned by DejaVuAI, for which he would be compensated by his salary. *Id.*. The sole prior invention related to DejaVuAI's business that was exempted was the software Kapustin had developed for $1^{st}1$ that the Partnership had irrevocably licensed to DejaVuAI. *Id.* Kapustin's contract reaffirmed that license, stating that DejaVuAI would have perpetual, irrevocable rights to any of $1^{st}1$'s software that Kapustin incorporated into a DejaVuAI product or process. *Id.*

**C. Kapustin's Termination**

16.    DejaVuAI has been successful in the three years since it was founded. The Company paid Kapustin a substantial salary to develop new versions of the prior software and a

509372484.4

COMPLAINT - 5

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

number of new products for DejaVuAI.[3] Meanwhile, Kessler managed the Company's business, hiring employees and creating numerous relationships with new investors, resellers, vendors, licensors, and other business partners. The Company is now an international business with many large companies and government agencies among its clientele. It is currently in conversation with other major potential customers, including some who are household names.

17.     In late 2024, however, a dispute arose between DejaVuAI and Kapustin over, among other things, Kapustin's opposition to DejaVuAI raising additional financing, which Kapustin feared would dilute 1st1's ownership interest, and potential customers, some of which Kapustin did not wish to do business with. Kapustin insisted he should be able to have veto power over the Company's customers and investors.

18.     Additionally, Kapustin began insisting the software was "his and only his" and threatened to destroy the code if the Company did not comply with his demands. On other occasions, he sent emails threatening to leave the country and "take his software with him." Having played a leading role in creating the Company's valuable source code from his home office where he routinely worked, there is no question Kapustin has the ability to execute on these threats.

19.     Realizing Kapustin's possession of the source code had become a substantial risk for the Company, DejaVuAI requested him to turn over a copy to ensure its safety. Kapustin refused. On February 11, 2025, DejaVuAI terminated Kapustin's employment at DejaVuAI.

**D.  Kapustin's Efforts to Compete with and Intentionally Harm DejaVuAI**

20.     Although DejaVuAI terminated Kapustin's employment, he remains a member of its Board of Directors.[4] Nevertheless, since his termination, Kapustin has steadily refused to return or provide a copy of DejaVuAI's proprietary source code. He is attempting to use the code to

---

[3] In keeping with his ownership assignment, Kapustin included a notation on each of the programs' "about" screen stating that the software was "© DejaVuAI, Inc."

[4] Kapustin previously refused when the other Directors requested that he resign so as to make DejaVuAI eligible for government contracts that are unavailable to companies with foreign nationals on their Board.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON 98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

create new products to directly compete with DejaVuAI. He has also repeatedly exploited the confidential information he obtained during his employment to contact numerous DejaVuAI current and prospective customers, employees, vendors, and investors. He is urging these parties to cease doing business with DejaVuAI, often threatening them if they refuse, and soliciting them for his rival business. And he has made numerous inaccurate claims regarding DejaVuAI's legal rights to its intellectual property and its financial condition.

21.    DejaVuAI initially attempted to negotiate an amicable resolution with him for the return of the source code. Because Kapustin had threatened to delete the source code, the Company informed Kapustin that it would discuss a deal only if he first deposited a copy of the code with a third-party escrow agent to ensure its safekeeping. Through counsel, Kapustin agreed in writing that he would escrow the code. **Ex. C** (A true and correct copy of the email agreement). DejaVuAI then spent dozens of hours and thousands in legal fees negotiating a detailed three-party escrow contract. Shortly before the final contract was to be executed, DejaVuAI received word Kapustin's counsel no longer represented him and Kapustin would not be depositing the Company's source code in escrow as promised.

22.    Kapustin is now exploiting his knowledge of DejaVuAI's confidential customer lists to contact DejaVuAI's current and prospective customers and instructing them to "make sure you don't sign any new contracts with DejaVuAI, Inc." While still a director with a duty of undivided loyalty to DejaVuAI, Kapustin told the customers that he was operating a competing business and would "soon offer you the latest version of my software that has been much improved in the last few months."

23.    Kapustin is likewise using his knowledge of DejaVuAI's confidential contracts and business relationships to contact DejaVuAI resellers. He has so far contacted at least two such business partners and attempted to extort them into breaching their contracts with the Company. Kapustin told them "I suggest that you immediately stop dealing with DejaVuAI,Inc. … otherwise you may face legal consequences."

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

24.     Kapustin is also harassing DejaVuAI's employees and interfering with their duties through mass-emails and social media messages. He has demanded they cease issuing licenses for DejaVuAI's software to customers and turn the Company's license management account over to him.[5] He has threatened employees directly, telling them "A failure to stop issuing user licenses will result in me suing you personally for the amount of losses and interest." He is urging DejaVuAi's employees to quit, telling them "I suggest you start looking for another job." Kapustin then told the employee that he would "soon start selling much improved version of [DejaVuAI's] products," seemingly soliciting the employee for his competing business.

25.     When Kapustin's threats to DejaVuAI's employees failed to intimidate them into turning over the Company's license management account, he contacted DejaVuAI's license management service provider directly. Styling the email as a "stop request" for DejaVuAI's account number, Kapustin instructed the vendor to cut off the Company's user licenses. This would have rendered DejaVuAI unable to sell to new customers, crippling the Company.

26.     Kapustin is also harassing DejaVuAI investors and their employees (and possibly potential new investors as well). He is contacting them repeatedly, sometimes multiple times a day. One such email falsely claimed to be the "DejaVuAI, Inc. newsletter." He has told the investors to "Say goodbye to your money!" and again falsely claimed that "Bankruptcy of DejaVuAI, Inc. is imminent." He encouraged investors to defraud later investors by unlawfully withdrawing their contributions from DejaVuAI and "let that Series C investor lose their money instead." He also demanded the investors remove Kessler as CEO and force DejaVuAI to sign a new licensing agreement with him, falsely claiming the Company did not have a licensing

---

[5] Because computer software can be easily copied and installed on additional computers, software companies must use a licensing system to prevent unauthorized users from copying and using their software without ever buying it. Licensing can be implemented in various ways, but DejaVuAI uses license management service to create and issue a unique user license file to paying customers, without which DejaVuAI's software will not function. When a user installs or runs the software, the software verifies that the user's license file is valid to ensure the user is authorized to use the software. Thus, without its licensing management account, DejaVuAI would be unable to sell functioning copies of its software.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

agreement with 1st1. And Kapustin threatened to publicly defame the investors if DejaVuAI sought to vindicate its legal rights, stating "if DejaVuAI, Inc. sue me [sic] or I sue DejaVuAI, Inc., the whole story and your names will pop up on social media and in the news (I will take care of this). Do you really want this?"

27.    In many of these contacts, Kapustin has made false and defamatory claims that DejaVuAI and its officers are involved in an elaborate plot to "steal" the software that DejaVuAI paid Kapustin a six-figure salary to develop for the Company.[6] Kapustin did not at any point bring his inaccurate theory of officer misconduct to DejaVuAI's Board so it could be independently investigated.[7] Instead, while still a Director of DejaVuAI, he has repeatedly communicated his damaging false allegations to numerous DejaVuAI current and prospective customers, employees, vendors, and investors in a deliberate attempt to harm DejaVuAI's reputation and business relationships and allow his unlawful competing business an advantage over the Company.

28.    Kapustin has told DejaVuAI investors, "Frankly, I don't care about the company. And if you don't care about your own money, then I don't care about it either." But Kapustin is a Director of DejaVuAI who is *legally required* to care about the Company and its shareholders' money. Despite the Company's best efforts, Kapustin continues to stubbornly deny this, claiming outright "I don't owe anything to DejaVuAI." Accordingly, the Company now brings this action seeking Court intervention to mitigate further ongoing damage to the Company.

---

[6] Because Kapustin's allegations are scurrilous and could threaten DejaVuAI's reputation, business relationships, and current and future negotiations if disseminated, the substance of the accusations and the reasons they are false are discussed in DejaVuAI's forthcoming motion to seal.

[7] After Kapustin received a cease-and-desist letter from DejaVuAI in which the Company told him it would, on its own initiative, form a special committee of the Board to conduct an independent investigation of Kapustin's allegations, Kapustin finally emailed an unknown sampling of shareholders and Board members (not including the full Board) a "CEO Investigation Request." Although DejaVuAI's Bylaws permit Mr. Kapustin to call a Board meeting for any purpose at any time and provide several routes by which Kapustin could seek a shareholders' meeting, he has never done so.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## CAUSES OF ACTION

### COUNT I
### Breach of Fiduciary Duties

29.     DejaVuAI realleges and incorporates by reference the foregoing paragraphs of the Complaint as if set forth in full herein.

30.     Kapustin is a director of DejaVuAI. Under Washington law, directors of corporations are fiduciaries of the company. He accordingly owes legal duties to the Company and its shareholders, including duties of good faith, undivided loyalty, and care. *See* RCW 23B.08.300; 23B.08.735. Kapustin has repeatedly breached these duties.

31.     The duty of undivided loyalty prohibits directors from competing or taking business opportunities from the corporations they direct. As outlined herein, Kapustin is violating this duty by establishing and operating a competing business to DejaVuAI and soliciting DejaVuAI's customers and employees—contacts he has only by virtue of his service to the Company—for his competing venture.

32.     The duty of good faith prohibits directors from intentionally harming the company they direct. Kapustin is violating this duty by intentionally seeking to damage DejaVuAI's reputation and relationships with its business contacts. He is threatening and otherwise seeking to dissuade customers, resellers, employees, and vendors from doing business with DejaVuAI in hopes of gaining an advantage for his unlawful competing business. Kapustin even deliberately attempted to get vendors providing critical services to DejaVuAI to cut off services, crippling and potentially destroying the Company.

33.     The duty of due care requires directors to use the care of a reasonably prudent person when dealing with the affairs of the corporations they direct. Kapustin violated this duty by acting upon and communicating to outside parties unverified, false information regarding DejaVuAI, its officers, and its legal rights. Kapustin could have made reasonable inquiry into the facts and law by consulting with DejaVuAI's counsel or bringing his concerns to the Board for

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

independent investigation. He chose not to do so and instead to act in a reckless, careless manner with respect to corporate affairs.

34.     The foregoing list is nonexclusive, and DejaVuAI reserves all rights with respect to other conduct by Kapustin alleged herein that constitutes breaches of his fiduciary duties.

35.     Kapustin's breaches of his fiduciary duties have already and will continue to cause DejaVuAI significant damages, including but not limited to legal bills, the cost of repairing business relationships, reputational damage, and other losses.

**COUNT II**
**Tortious Interference with Contracts and/or Business Expectancy**

36.     DejaVuAI realleges and incorporates by reference the foregoing paragraphs of the Complaint as if set forth in full herein.

37.     Under Washington Law, a defendant commits tortious interference with a contract or business expectancy when he knows that a valid contractual relationship or legitimate business expectancy exists and intentionally interferes with that relationship or expectancy through an improper means or with a wrongful purpose, thereby causing damage to the party whose contract or expectancy the defendant disrupted.

38.     As outlined herein, Kapustin has—and if not prevented will continue to—tortiously interfere with DejaVuAI's valid contracts and business expectancies. He is aware of DejaVuAI's contractual relationships with its customers, employees, vendors, resellers, and investors, as well as its valid business expectancies with its prospective customers and investors. Kapustin has sought to interfere with these contracts and expectancies through improper means, including the misuse and attempted wrongful disclosure of DejaVuAI's confidential information in breach of his employment contract and the dissemination of inaccurate and defamatory information regarding DejaVuAI and its officers. Kapustin's purpose for interfering with DejaVuAI's contracts and expectancies is likewise improper, as he has done so for the purpose of harming the Company

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

in violation of his fiduciary duty of good faith and to divert business to his competing venture in violation of fiduciary duty of undivided loyalty.

39.    The foregoing list is nonexclusive, and DejaVuAI reserves all rights with respect to Kapustin's other conduct alleged herein that constitutes tortious interference.

40.    Kapustin's tortious interference has already and will continue to cause DejaVuAI significant damages, including but not limited to legal bills, the cost of repairing business relationships, reputational damage, and other losses.

## COUNT III
## Breach of Contract (Employment Agreement)

41.    DejaVuAI realleges and incorporates by reference the foregoing paragraphs of the Complaint as if set forth in full herein.

42.    Kapustin's contract expressly prohibits him from attempting to "either directly or indirectly solicit[ing], induc[ing], recruit[ing] or encourage[ing] any of the Company's employees or consultants to terminate their relationship with the Company." Kapustin violated this obligation by threatening DejaVuAI's employees, urging them to leave the Company, and informing them of his competing venture.

43.    In his contract, Kapustin also agreed that he would not "not solicit any licensor to or customer of the Company or licensee of the Company's products, in each case, that are known to me, with respect to any business, products or services that are competitive to the products or services offered by the Company or under development as of the date of termination of my Relationship with the Company." Kapustin violated this duty by contacting DejaVuAI's customers, vendors, and licensors, urging them to cease doing business with DejaVuAI, and encouraging them to instead work with his competing business that would offer "improved versions" of DejaVuAI's products.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

44.     Kapustin's contract further committed that he would "at all times … hold in strictest confidence, and not [] use, except for the benefit of the Company, except to the extent necessary to perform my obligations to the Company … or to disclose to any … entity … any Confidential Information of the Company." The agreement defines confidential information to include, among other things "suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom I called or with whom I became acquainted during [my employment])," as well as "finances, budgets or other business information disclosed to me by the Company either directly or indirectly."

45.     As outlined herein, Kapustin violated this obligation by misusing DejaVuAI's confidential information regarding its current and prospective customers, vendors, business partners, and investors to contact these parties and urge them not to do business with DejaVuAI, which was neither "for the benefit of the Company" nor "necessary" for Kapustin "to perform [his] obligations to the Company." He further violated this provision by attempting to disclose information regarding DejaVuAI's "finances, budget" and other business information to these parties (though much of what he claimed about these matters was false and inaccurate).

46.     The foregoing list is nonexclusive, and DejaVuAI reserves all rights with respect to Kapustin's other conduct alleged herein that constitutes breaches of his contract.

47.     Kapustin's employment Contract includes a mandatory arbitration provision, but it expressly authorizes DejaVuAI to obtain injunctive relief in court to protect its rights and maintain the status quo during the arbitration process.

48.     Kapustin's contractual breaches have already and will continue to cause DejaVuAI significant damages, including but not limited to legal bills, the cost of repairing business relationships, reputational damage, and other losses.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**COUNT IV**
**Breach of Contract (Escrow Agreement)**

49.    DejaVuAI realleges and incorporates by reference the foregoing paragraphs of the Complaint as if set forth in full herein.

50.    Under Washington law, a plaintiff has an action for breach of contract when a valid agreement was formed through an offer and acceptance, and the defendant breaches a duty imposed by that agreement, resulting in damages to the plaintiff.

51.    Additionally, Washington recognizes the equitable doctrine of promissory estoppel. Under the doctrine, a promise is enforceable if the promisor should reasonably expect the promisee will rely on his promise and the promisee does in fact rely on it to the promisee's detriment, allowing injustice to be avoided only by holding the promisor to his word.

52.    Following his termination, DejaVuAI attempted to negotiate with Kapustin for the return of the source code to the Company's software. DejaVuAI offered to forego immediate legal recourse and seek an amicable resolution if Kapustin deposited a copy of the source code with a neutral third-party escrow agent to ensure its security. Through counsel, Kapustin agreed in writing that he would escrow a copy of the code to facilitate negotiations, thereby forming a valid contract.

53.    DejaVuAI then justifiably relied on Kapustin's promise, as Kapustin should have reasonably (and, in fact, did) expect. As Kapustin himself has acknowledged in subsequent emails to investors, DejaVuAI expended thousands of dollars in legal fees and dozens of hours of work negotiating a detailed three-party escrow agreement.

54.    Kapustin then broke his promise to escrow the code.

55.    Kapustin breached a valid contract to escrow the code, and his promise to do so was at minimum enforceable under the doctrine of promissory estoppel based on DejaVuAI's justifiable and reasonably expectable reliance.

56.    Kapustin's actions caused DejaVuAI significant damages, including the loss of the time and legal fees the Company invested in negotiating the escrow agreement.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1

2

3

**COUNT V**
**Misappropriation of Trade Secrets**
**18 U.S.C. § 1836(b)(1)**

4

5

57.     DejaVuAI realleges and incorporates by reference the foregoing paragraphs of the Complaint as if set forth in full herein.

6

7

8

9

10

11

12

13

58.     DejaVuAI's source code and other confidential trade secret information relate to products and services used in and intended for use in interstate commerce, including but not limited to the Company's proprietary software. DejaVuAI took reasonable efforts to maintain the secrecy of its information, including training, confidentiality agreements, limiting access, and password protection. The information derives independent economic value from not being generally known to or readily accessible by the public using proper means—indeed, the information at issue is the lifeblood of the value of the Company's business. The source code and other confidential information thus constitutes trade secrets protected under federal law. *See* 18 U.S.C. § 1839(3).

14

15

16

17

18

59.     Kapustin received, possessed, and benefitted from DejaVuAI's trade secrets, knowing they were obtained without authorization and through an improper means, including in breach of a duty to maintain its secrecy. Kapustin has misappropriated DejaVuAI's source code and other confidential information in violation the Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq. See* 18 U.S.C. § 1839(5).

19

20

21

60.     Kapustin's misappropriation of DejaVuAI's trade secrets has already and will continue to cause DejaVuAI significant damages, including but not limited to the cost of reverse engineering DejaVuAI's software to recreate its source code.

22

23

24

61.     Kapustin's misappropriation of DejaVuAI's trade secrets was willful and malicious. DejaVuAI is thus entitled to its reasonable attorneys' fees, and to exemplary damages in an amount up to twice actual damages awarded, pursuant to 18 U.S.C. § 1836.

25

26

509372484.4

COMPLAINT - 15

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

## **PRAYER FOR RELIEF**

WHEREFORE, DejaVuAI prays for a judgment and decree in its favor and against Kapustin as follows:

a) Temporary and permanent orders restraining and enjoining Kapustin from violating his fiduciary duties, including by operating a business in competition with DejaVuAI; defaming DejaVuAI or its officers; soliciting or attempting to induce DejaVuAI's current or prospective customers, employees, vendors, investors, or other parties to cease doing business with DejaVuAI; misusing of disclosing DejaVuAI's trade secrets or other confidential information, or intentionally seeking to harm, interfere, or disrupt DejaVuAI's operations;

b) Preliminary orders restraining and enjoining Kapustin from violating his contract during the pendency of the case, including by misusing DejaVuAI's confidential customer or vendor lists or other information; by disclosing DejaVuAI's confidential information to any party; or by soliciting or attempting to induce DejaVuAI's current or prospective customers, employees, vendors, investors, or other parties to cease doing business with DejaVuAI and instead do business with a competing business;

c) An award of actual damages in an amount to be proven at trial;

d) An order enforcing any arbitration award DejaVuAI receives against Kapustin;

e) An award of DejaVuAI's reasonable costs and attorney fees;

f) An award of exemplary damages in an amount to be determined at trial;

g) Such further relief as this Court deems just and equitable.

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**

1    DATED this 14th day of May, 2025

2                                    K&L GATES LLP

3

4                                    By: /s/John T. Bender
                                         John T. Bender, WSBA # 49658
5                                        Spencer McCandless, WSBA # 60871

6                                    925 Fourth Avenue
                                     Suite 2900
7                                    Seattle, Washington  98104-1158
                                     Tel: +1 206 623 7580
8                                    Fax: +1 206 623 7022
                                     Emails: John.Bender@klgates.com
9                                             Spencer.McCandless@klgates.com

10                                   *Attorneys for Plaintiff DejaVuAI, Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**<u>VERIFICATION</u>**

I, Johnny Kessler, declare that I am the Chief Executive Officer of DejaVuAI, Inc., the Plaintiff in this case, and I have authorized the filing of this complaint. I have reviewed the allegations made in the complaint, and undertaken reasonable inquiry to verify they are true. As to those allegations of which I have personal knowledge, I believe them to be true to the best of my knowledge. As to those allegations of which I do not have personal knowledge, I rely on emails, text messages, and screen captures, and other communications made to me by DejaVuAI, Inc.'s current and perspective customers, employees, vendors, investors, and resellers, and those parties representatives. I believe those allegations to be true to the best of my knowledge as well.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this _____14th_____ day of May, 2025, in ____Olalla, WA_____.

DocuSigned by:

_____
526B9938BA711400...
Johnny Kessler

509372484.4

COMPLAINT - 18

**K&L GATES LLP**
**925 FOURTH AVENUE**
**SUITE 2900**
**SEATTLE, WASHINGTON  98104-1158**
**TELEPHONE: +1 206 623 7580**
**FACSIMILE: +1 206 623 7022**