UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DEJAVUAI, INC., a Washington corporation<br><br>　　　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FYODOR "TED" KAPUSTIN aka FYDOR "TED" KAPUSTINE, an individual,<br><br>　　　　　　　　　　　　　Defendant. | No. 2:25-cv-00915<br><br>PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION OUGHT NOT ISSUE<br><br>NOTE ON MOTION CALENDAR:<br>　　　May 16, 2025 |

**INTRODUCTION AND RELIEF REQUESTED**

Defendant Fyodor Kapustin ("Kapustin") is a Director and former Chief Technology Officer of Plaintiff DejaVuAI, Inc., a software company ("DejaVuAI" or the "Company"). Kapustin thus owes DejaVuAI fiduciary duties of good faith, undivided loyalty, and care, and he is legally obligated to act in DejaVuAI's best interests. He is also subject to enforceable contractual obligations not to misuse or disclose DejaVuAI's confidential information and not to solicit DejaVuAI's customers, employees, and vendors. Kapustin is violating these duties by misusing DejaVuAI's confidential information to intentionally harm and compete against the Company, including by openly flouting his non-solicitation obligations. ***While still sitting on DejaVuAI's Board of Directors***, Kapustin is:

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NO. 2:25-CV-00915 - 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

- admonishing DejaVuAI customers to "make sure you don't sign any new contracts with DejaVuAI, Inc.";
- promising DejaVuAI customers that he will "soon offer you the latest version of my software that has been much improved in the last few months";
- falsely telling DejaVuAI customers and investors that DejaVuAI is on the verge of bankruptcy;
- instructing DejaVuAI employees to stop issuing licenses for DejaVuAI's software to its customers;
- encouraging DejaVuAI employees to "start looking for another job" and informing them of his competing venture;
- telling a key DejaVuAI vendor to stop processing DejaVuAI user licenses, which would cripple the Company; and
- admitting to DejaVuAI investors "Frankly, I don't care about the company. And if you don't care about your own money, then I don't care about it either."

Declaration of Christian Berg ("Berg Decl.") Ex. A; Declaration of Leon Worthen ("Worthen Decl.") Exs. A-C; Declaration of Johnny Kessler ("Kessler Decl.") Exs. 12, 14, 16, 22.

When DejaVuAI demanded Kapustin stop these unlawful acts, he refused and denied his legal duties, claiming he "doesn't owe anything to DejaVuAI." Kessler Decl. ¶ 35, Ex. 22. ***As recently as May 15, Kapustin was still contacting DejaVuAI's customers and employees.*** *Id.* ¶¶ 36, 37, Exs. 23, 24. DejaVuAI thus seeks a temporary restraining order ("TRO") and order to show cause why a preliminary injunction ought not issue to stop Kapustin's wrongful conduct, prevent further irreparable harm to DejaVuAI, and preserve the status quo.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER - 2

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## BACKGROUND

**A. DejaVuAI, Inc. and Kapustin's Contractual Obligations.**

DejaVuAI is a software company that develops and sells state-of-the-art artificial-intelligence-powered image recognition software. Kessler Decl. ¶ 2. DejaVuAI was founded in September 2022 as part of a restructuring of 1st1 Technologies LLP ("1st1"), which Kapustin had co-founded with partner Johnny Kessler. *Id.* ¶ 4. The partners established DejaVuAI a majority-owned subsidiary of 1st1 so that the business could raise capital through the issuance of shares to third-party investors. *Id.* Concurrent with its formation, the partners transferred substantially all 1st1's assets to DejaVuAI. *Id.* ¶ 4, Ex. 1. 1st1 is now a holding company and DejaVuAI is the operating entity. *Id.* At the Company's founding, Kapustin was designated a member of its Board of Directors (the "Board"), and he has remained a Director ever since. *Id.* ¶ 7, Ex. 3.

Also at the Company's founding, DejaVuAI's Board appointed Kapustin Chief Technology Officer. *Id.* ¶ 9, Ex. 4. Kapustin executed an employment agreement with the Company containing confidentiality and multiple non-solicitation covenants (the "Employment Agreement"). *Id.* ¶ 10, Ex. 5. The Employment Agreement, among other things, prohibits Kapustin from disclosing or using DejaVuAI's confidential information except for the benefit of the Company and then only to the extent necessary for his work for the Company. *Id.*, Ex.5 at 1, § 3(a). "Confidential Information" is defined to include "any Company proprietary information, technical data, trade secrets or know-how, including" among other things, "services, suppliers, customer lists and customers (including, but not limited to, customers of the Company on whom [Kapustin] called or with whom [Kapustin] became acquainted during the Relationship)," as well as "marketing, licenses, finances, budgets or other business information disclosed to me by the Company either directly or indirectly." *Id.*

Kapustin's Employment Agreement also contains comprehensive non-solicitation provisions applicable to employees, customers, and resellers. Kapustin promised, for a period of

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 3

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

twelve months after the end of his employment, that he would "not either directly or indirectly solicit, induce, recruit or encourage any of the Company's employees or consultants to terminate their relationship with the Company, or take away, hire or otherwise engage the services of such employees or consultants, or attempt to solicit, induce, recruit, encourage or take away, employees or consultants of the Company, either for myself or for any other person or entity." *Id.*, Ex. 5 at 4, § 7. Kapustin likewise promised not to "solicit any licensor to or customer of the Company or licensee of the Company's products, in each case, that are known to me, with respect to any business, products or services that are competitive to the products or services offered by the Company or under development."[1] *Id.*

**B. DejaVuAI Terminated Kapustin's Employment, but He Remains a Director and Board Member.**

In late 2024, a dispute arose between Kapustin and DejaVuAI over intellectual property rights. *Id.* ¶ 11. In short, Kapustin's Employment Agreement assigned to the Company ownership of any software related to DejaVuAI's business, including the new software he was paid to develop during his employment. Both he and 1st1 had also perpetually and irrevocably licensed to the Company the rights to software created before DejaVuAI's founding. But Kapustin insisted the software belonged to him and only him, threatened to delete or publish the software's source code, and refused the Company's requests to turn over the code. *Id.* ¶ 12. Based on these and other disruptive behaviors, DejaVuAI terminated Kapustin's employment as CTO on February 11, 2025. Kessler Decl. ¶ 13, Ex. 6.

However, Kapustin remains a member of DejaVuAI's Board. DejaVuAI's Board previously requested his resignation, but he exercised his rights under the Company's governing documents to refuse the request to resign. *Id.* ¶ 14, Ex. 7. Kapustin therefore knowingly and

---

[1] Kapustin's Employment Agreement also contains an assignment of intellectual property rights. *See* Kessler Decl. Ex. 5 at 3-4, § 4, Compl. ¶ 16. It further includes clauses mandating that disputes arising under the Employment Agreement be resolved through arbitration, but the provisions include a carve out permitting DejaVuAI to obtain court ordered injunctive relief to prevent irreparable harm. *Id.*, Ex. 5 at 5-6, §§ 10(a), (f).

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

intentionally retained his fiduciary duties to the Company and its shareholders, including good faith, undivided loyalty, and due care. But Kapustin has consistently and repeatedly violated his fiduciary and contractual duties since his employment was terminated.

### C. Kapustin is Directly Competing Against DejaVuAI and Intentionally Seeking to Harm the Company

Kapustin has been misusing his knowledge of DejaVuAI's confidential business information to contact numerous current and prospective customers, employees, vendors, resellers, and investors. He has urged these parties to cease doing business with DejaVuAI, solicited them for his competing business, and made repeated inaccurate and defamatory claims regarding DejaVuAI and its officers.

#### 1. Kapustin is Encouraging DejaVuAI Customers to Cut Ties with the Company and Soliciting them for his Competing Business.

Kapustin has contacted multiple DejaVuAI current and prospective customers to urge them to cease doing business with the Company, telling them to "make sure you don't sign any new contracts with DejaVuAI, Inc." *See, e.g.*, Declaration of Christian Berg ("Berg Decl."), ¶ 2, Ex. A. He claimed DejaVuAI did not have rights to its products and falsely told the customers that DejaVuAI "is also on a brink of bankruptcy." *Id.* Kapustin told the customers that he was operating a competing business and would "soon offer you the latest version of my software that has been much improved in the last few months." *Id.* █████████████

[redacted content]

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022



When DejaVuAI served Kapustin with a cease-and-desist letter, Lubic Decl. ¶ 14, Ex. K, Kapustin responded by admitting in writing not only that he had contacted DejaVuAI's customers, but also that he had threatened them with legal action if they continued to do business with the Company, stating that "My goal was to inform customers that they may participating [sic] in violating my copyright on DejaVuAI technology." *Id.*, ¶ 15, Ex. L. The cease-and-desist letter did not deter Kapustin. As recently as May 15, Kapustin was still contacting DejaVuAI customers. Kessler Decl. ¶ 37, Ex. 24.

**2.  Kapustin is Soliciting DejaVuAI Employees and Interfering with their Duties.**

Kapustin is also soliciting and harassing DejaVuAI's employees through mass emails and social media messages. Kapustin has explicitly encouraged DejaVuAI's employees to quit and solicited them for a competing venture, stating "I suggest you start looking for another job" and



509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 6

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

telling them he will "soon start selling much improved version of [DejaVuAI's] products." Declaration of Leon Worthen ("Worthen Decl.") ¶¶ 4-5, Exs. C-D.

Kapustin is additionally interfering with DejaVuAI employees' duties. He has repeatedly instructed them to stop issuing licenses for DejaVuAI's software to the Company's customers. Worthen Decl. ¶ 2, Ex. A. He has even directly threatened individual employees, telling them "A failure to stop issuing user licenses will result in me suing you personally for the amount of losses and interest." *Id.*, Ex. C. Kapustin has demanded that the employees turn the Company's license management account over to him. *Id.*, Exs. A-B. And he has continued his attempts to damage DejaVuAI's business reputation, falsely telling DejaVuAI's employees that they are working for an illegal enterprise ████████████████████████████████ ████████████████ Even after DejaVuAI served him with a cease and desist letter, Kapustin has continued contacting employees, with the most recent contact occurring on May 15. Kessler Decl. ¶ 36, Ex. 23.

### 3. Kapustin is Soliciting and Interfering with DejaVuAI Vendors and Resellers.

Kapustin has contacted at least two of DejaVuAI's resellers,[3] urged them to breach their agreements with DejaVuAI, and threatened to sue them unless they stopped doing business with the Company. Kessler Decl. ¶¶ 29-30, Exs. 17 & 18. He told them "I suggest that you immediately stop dealing with DejaVuAI, Inc. … otherwise you may face legal consequences." *Id.*

Kapustin has also contacted DejaVuAI's vendors and attempted to convince them to cut off critical services on which the Company depends. When his threats to DejaVuAI's employees failed to intimidate them into turning over the Company's license management account, Kapustin contacted DejaVuAI's license management service provider directly. Kessler Decl. ¶ 26, Ex. 14. Styling the email as a "stop request" for DejaVuAI's account number, Kapustin instructed the

---

[3] DejaVuAI's reseller partners purchase software user licenses from DejaVuAI and resell them to retail consumers.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER - 7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

vendor to cease issuing the Company's user licenses. *Id.* This would have crippled DejaVuAI, rendering the Company totally unable to sell to new customers.[4] *Id.* ¶ 21, 26.

### 4. Kapustin is Harassing Investors (and their Employees) and Encouraging them to Defraud the Company and other Investors

Kapustin has also repeatedly harassed DejaVuAI's investors and their employees, bombarding them with many long, rambling emails multiple times a day. One such email falsely claimed to be the "DejaVuAI, Inc. newsletter." Kessler Decl. ¶ 22, Ex. 12. Kapustin told investors to "Say goodbye to your money!" and again falsely claimed that "Bankruptcy of DejaVuAI, Inc. is imminent."[5] *Id.* Kapustin encouraged the investors to defraud later investors, urging them to unlawfully withdraw their contributions and "let that Series C investor lose their money instead." *Id.,* ¶ 27, Ex. 15. He also demanded the investors remove Kessler as CEO and force DejaVuAI to sign a new licensing agreement with him.[6] *Id.* And Kapustin threatened to defame the investors if DejaVuAI sought to vindicate its legal rights, stating "if DejaVuAI, Inc. sue me [sic] or I sue DejaVuAI, Inc., the whole story and your names will pop up on social media and in the news (I will take care of this). Do you really want this?" *Id.*

Kapustin told the investors, "Frankly, I don't care about the company. And if you don't care about your own money, then I don't care about it either." *Id.* Again, Kapustin is a Director of

---

[4] Because software can be easily copied and installed on an unlimited number of computers, software companies must use licensing systems to prevent parties from using their software without buying it. Through its license management service, DejaVuAI issues a unique user license file to each paying customer or other authorized user, without which the software will not function. Kessler Decl. ¶ 26. If DejaVuAI's service provider had cut the Company off, DejaVuAI would no longer be able to issue these unique files, meaning any software it sold to new customers would not function.

[5] Kapustin also bragged about having breached an agreement he had made with the Company to escrow the Company's code for safe-keeping during settlement discussions, claiming DejaVuAI was "trying to trick me into giving my source codes to" the Company and openly acknowledging that breaking his commitment had "wasted a lot of the company's money." Kessler Decl. ¶ 22, Ex. 12.

[6] Kapustin falsely told investors that "a license agreement between 1st1 Technologies, LLP and DejaVuAI, Inc. regarding my technology was drafted in December 2023, but it was never finalized and signed." Kessler Decl. 27, Ex. 15. DejaVuAI has had an exclusive, perpetual, irrevocable license agreement with 1st1—a contract which Kapustin himself signed—since DejaVuAI's founding in September 2022. Kessler Decl. ¶ 5, Ex. 2.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 8

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

DejaVuAI who is legally required to care about the Company. Kapustin denied his basic fiduciary obligation and told investors outright "I don't owe anything to DejaVuAI." *Id.*, ¶ 35, Ex. 22.

## STATEMENT OF ISSUES

**A. Should the court issue a TRO enjoining Kapustin from competing with or intentionally harming DejaVuAI, including contacting its customers, vendors, or employees; disparaging the Company; or interfering with its operations?**

## EVIDENCE RELIED ON

This motion relies upon on the declarations of Michael Lubic, Johnny Kessler, Christian Berg, and Leon Worthen, and the exhibits thereto, as well as the Verified Complaint, exhibits thereto, and the other filings in this matter.

## ARGUMENT

**A. Legal Standard**

A party seeking a TRO or preliminary injunction "must establish that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tip in their favor; and (4) a preliminary injunction is in the public interest." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009); *Stuhlberg Int'l Sales Co., Inc. v. John D. Bushy & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (the TRO standard is "substantially identical").

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER - 9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**B. DejaVuAI, Inc. is Very Likely to Succeed on its Claims for Breach of Kapustin's Fiduciary and Contractual Duties**

**1. Kapustin is clearly violating his fiduciary duties to DejaVuAI**

   **a.   Fiduciary standards**

Under Washington law, directors of a corporation owe fiduciary duties to the company and its shareholders.[7] *See* RCW 23B.08.300; 23B.08.735. "In general, fiduciary duty comprises three sub-duties: the duty of loyalty, the duty of care, and the duty to act in good faith." *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1232 (W.D. Wash. 2003).

Under the duty of loyalty, directors "occupy a fiduciary relation to a private corporation and the shareholders thereof akin to that of a trustee, and owe undivided loyalty, and a standard of behavior above that of the workaday world." *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 64 Wn.2d 375, 381, 391 P.2d 979, 983 (1964); *see also* RCW 23B.08.735. They "must act in the best interests of the corporation," and "are forbidden from acquiring profit for themselves—directly or indirectly—at the expense of the company." *Lodis v. Corbis Holdings, Inc.*, 172 Wn. App. 835, 861, 292 P.3d 779, 793 (2013). "The duty of loyalty is imposed on a corporate director so that the corporation can be assured that it has and may rely upon the impartial and undivided fidelity of the director in all assigned tasks."[8] *James v. Paton*, No. CV C15-1914RSL, 2016 WL 11783314, at *3 (W.D. Wash. Nov. 10, 2016).

Under the duty of good faith, "corporate directors and officers are bound to exercise the utmost good faith in furthering the interests of the corporation." *Poweroil Mfg. Co. v. Carstensen*, 69 Wn.2d 673, 677, 419 P.2d 793, 796 (1966); *see also* RCW 23B.08.300(1)(a), (c). The fiduciary duty of good faith requires a director "to preserve and protect the corporation and to do nothing

---

[7] Kapustin is also a managing partner of 1st1, DejaVuAI's majority shareholder, and Washington courts have recognized that majority shareholders in a closely held corporation also owe fiduciary duties to the corporation and their fellow shareholders. *See Price v. Price,* No. 75847-1-I, 2018 WL 2021867, at *4 (2018).

[8] Even if Kapustin were not intentionally violating his duties, "[G]ood faith cannot justify a breach of a fiduciary's duty of loyalty." *James*, No. CV C15-1914RSL, at *3 (quoting *Williams v. Queen Fisheries, Inc.*, 2 Wn. App. 691, 695 (1970) ("The fiduciary obligation may be breached, although no corruption, dishonesty or bad faith is involved.")).

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 10

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

which will damage or destroy it," and it prohibits a director from "entertain[ing] hostile and improper motives concerning his corporation." *State ex rel. Paschall v. Scott*, 41 Wn.2d 71, 80, 247 P.2d 543, 549 (1952). The duty is violated when a director intentionally harms the company, consciously and intentionally disregards their responsibilities. *Rodriguez v. Loudeye Corp.*, 144 Wn. App. 709, 722, 189 P.3d 168, 174 (2008).

Finally, the duty of care requires directors to exercise "the care an ordinarily prudent person in a like position would exercise under similar circumstances." RCW 23B.08.300(1)(b). This includes "an affirmative duty to be aware of the affairs of the companies they serve" and "[j]ust as ignorance of the law is no excuse for the violation of a law, ignorance of the affairs of a business to which one owes a duty of diligence, care and skill does not excuse a director[.]" *Senn v. Nw. Underwriters, Inc.*, 74 Wn. App. 408, 414, 875 P.2d 637, 640 (1994). A director is entitled to rely on the officers or employees of the corporation when fulfilling this duty regarding matters not within the director's own competence, including the Company's legal counsel. RCW 23B.08.300(2)(b).

b. **Kapustin's fiduciary violations**

Kapustin is violating his duty of undivided loyalty to DejaVuAI by openly competing with DejaVuAI and placing his personal interests above the Company and its shareholders. *Cf.* RCW 25.15.038(2)(c). Moreover, he is using the contacts and information he gained from DejaVuAI to advance his competing business, soliciting the Company's employees and current and prospective customers and telling them he will "soon offer you the latest version of my software that has been much improved in the last few months." *See, e.g.,* Berg Decl. Ex. A. This is precisely the type of "personal profit or advantage gleaned 'on the side'" that violates the fiduciary duty of loyalty. *Interlake Porsche & Audi, Inc. v. Bucholz*, 45 Wn. App. 502, 508, 728 P.2d 597, 603 (1986).

Kapustin is violating his duty of good faith by intentionally seeking to harm DejaVuAI. He is contacting DejaVuAI's current and prospective customers, resellers, and vendors and urging

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 11

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

them to cease doing business with DejaVuAI, often in breach of their contracts with the Company, and threatening them if they refuse. Kessler Decl. ¶¶ 18-37, Ex 12-24. This includes providers of critical services that DejaVuAI requires to operate. *Id*. ¶ 16, Ex 14. And he is encouraging some investors to unlawfully withdraw their contributions from the Company and harm other shareholders. *Id*. ¶ 27, Ex 18; *Cf. Rodriguez.,* 144 Wn. App. at 722 ("[T]he duty of loyalty mandates that the best interest of the corporation and its shareholders takes precedence over any interest possessed by a director ... and not shared by the stockholders generally."). Kapustin is also consciously and intentionally disregarding his Director responsibilities, stating outright to DejaVuAI's shareholders that he "does not care about the Company" or the shareholders' money, *Id.* Exs. 22-23, and claiming he does "not owe anything to DejaVuAI."[9] *Id.* Ex. 25.

Finally, Kapustin is violating his duty of care. He has made numerous inaccurate claims to various parties about DejaVuAI's financial state and legal rights, ███████████████████ ███████████████████████████████████████ Kessler Decl. Ex. 12-24; *supra* note 2. Kapustin could have easily verified the facts and law by consulting with DejaVuAI's counsel or bringing his concerns to the Board for independent investigation. He chose not to do so and instead acted in a reckless, destructive manner with respect to corporate affairs.

   **2.   Kapustin is clearly in breach of his contract with DejaVuAI**

In addition to his fiduciary duties, Kapustin's actions are violating the clear terms of his Employment Agreement. First, the Employment Agreement prohibits Kapustin from disclosing or using the Company's confidential information except for the benefit of the Company and to the extent necessary for his work." *Id.* ¶ 10, Ex. 5 at 1, § 3. The Employment Agreement defines "Confidential Information" to include "services, suppliers, customer lists and customers" as well

---

[9] Kapustin recently claimed he did not know he was still a director of DejaVuAI. Kessler Decl. Ex. 22. Under Washington law, "officers and directors have an affirmative duty to be aware of the affairs of the companies they serve" and "[j]ust as ignorance of the law is no excuse for the violation of a law, ignorance of the affairs of a business to which one owes a duty of diligence, care and skill does not excuse a director[.]" *Senn v. Nw. Underwriters, Inc.*, 74 Wn. App. 408, 414, 875 P.2d 637, 640 (1994).

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 12

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

as its "licenses, finances," and "other business information" *Id*. Kapustin has misused his knowledge of DejaVuAI's customers and suppliers, as well as information about the Company's licenses and other contracts, to contact many of DejaVuAI's business contacts, urge them to stop doing business with the Company, and solicit them for his competing venture. He has likewise purported to disclose detailed information about DejaVuAI's finances, contracts, and other business information to numerous parties (though much of it was misrepresented or outright false). Plainly these uses and disclosures were not for DejaVuAI's benefit.

Kapustin is also squarely violating the Employment Agreement's non-solicitation provision, which prohibit him from "encourag[ing] any of the Company's employees… to terminate their relationship with the Company[.]" *Id.*, Ex. 5 at 4, § 7; *see* Worthen Decl. ¶ 4, Ex. C (telling an employee "I suggest you start looking for another job."). The provision also forbids him from "solicit[ing] any licensor to or customer of the Company or licensee of the Company's products…with respect to any business, products or services that are competitive to the products or services offered by the Company. Kessler Decl. Ex. 5, § 7. Again, Kapustin is soliciting the Company's customers, telling them he will soon offer "improved" versions of DejaVuAI's products. Berg Decl. Ex. A.

**C. DejaVuAI will Likely Suffer Irreparable Harm in the Absence of a TRO**

Kapustin's actions have already and will continue to cause irreparable harm to DejaVuAI in the absence of injunctive relief. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). A "threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841 (citation omitted); *see, also, e.g., Amazon.com, Inc. v. Moyer*, 417 F. Supp. 3d 1388, 1403 (W.D. Wash. 2019) ("Evidence of loss of control over business reputation and damage to

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 13

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

goodwill [can] constitute irreparable harm." (quoting *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)); *Playup, Inc. v. Mintas*, No. 2:21-CV-02129-GMN-NJK, 2021 WL 5763557, at *6 (D. Nev. Dec. 3, 2021) ("Plaintiff has thus shown that allowing Defendant to continuously spread disparaging comments concerning [plaintiff corporation] will likely result in immediate and irreparable injury to Plaintiff in the form of loss of income, loss of goodwill, damage to its reputation, and damage to its business relationships.").

Kapustin is actively causing serious damage to DejaVuAI's reputation and business relationships. Nevertheless, DejaVuAI does not need to show it will definitely be irreparably damaged without a TRO or even that the damage will be significant. Given DejaVuAI's likelihood of success on the merits, it is enough that some irreparable damage is likely. *Small v. Avanti Health Sys., LLC*, 661 F.3d 1180, 1191 (9th Cir. 2011) ("Of course, while 'likely' is a higher threshold than 'possible,' the [movant] need not prove that irreparable harm is certain or even nearly certain."); *Big Country Foods, Inc. v. Bd. of Educ. of Anchorage Sch. Dist., Anchorage, Alaska*, 868 F.2d 1085, 1088 (9th Cir. 1989) (explaining the irreparable harm requirement is a sliding scale that decreases as the likelihood of success on the merits increases).

Kapustin is falsely telling numerous current and prospective customers, investors, employees, resellers, vendors, and other business contacts that DejaVuAI is on the verge of bankruptcy, is illegally selling its products, and has committed criminal fraud. Kessler Decl. Exs. 12-24. He is also threatening these parties, wrongly claiming they will themselves be subject to liability if they do business with DejaVuAI. *See, e.g.,* Worthen Decl. Ex. C. These inaccurate and defamatory claims are particularly damaging due to Kapustin's status as a DejaVuAI director with access to confidential information regarding the Company's finances and business affairs.

Kapustin has leveraged these false claims to attempt to get at least one vendor providing critical digital services to cut the Company off, which would disrupt DejaVuAI's operations or even render it completely unable to do business. Kessler Decl ¶ 21, 26, *supra* note 4.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 14

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  ████████████████████████████████████████████████████
2  ████████████████████████████████████████████████████
3  ██████████████████████████████████████ Moreover, DejaVuAI is currently negotiating multiple major transactions with potential customers and business partners for whom long-term reliability and ongoing support are a priority. *Id.* ¶ 38. They may decide doing business with an unstable Company with an uncertain future is not worth the risk. DejaVuAI is also in negotiations to raise additional capital. *Id.* ¶ 39. Kapustin wrongful derogatory statements threaten to derail these transactions that are key to the Company's future.

**D. The Balance of Equities Weighs in Favor of a TRO**

When considering the balance of equities, the Court should "balance the interests of all parties and weigh the damage to each." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138 (9th Cir. 2009) (citing *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1203 (9th Cir. 1980)).

DejaVuAI has described the irreparable harm it will suffer absent a TRO above. To prevent that harm, DejaVuAI requests that Kapustin be prohibited from (1) contacting any of DejaVuAI's current and prospective customers, resellers, licensors, vendors, or other business contacts whom he is aware of by virtue of his former DejaVuAI employment of his position as a director of the Company; (2) engaging in any form of conduct or making statements or representations that disparage, portray in a negative light, or otherwise impair the reputation or commercial interest of DejaVuAI, its officers and directors, its investors, or its products and services; (3) selling, offering for sale, marketing, or otherwise conducting or purporting to conduct business with respect to any product or service in competition with DejaVuAI's products or services; and (4) taking any action to directly or indirectly interfere with DejaVuAI's operations, including any conduct to disrupt, alter, or otherwise affect any digital services or infrastructure that DejaVuAI currently uses to operate or market its business.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 15

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

The hardship to Kapustin from such an order will be minimal. Kapustin has no legitimate need to contact DejaVuAI's current and prospective customers, resellers, licensors, or vendors. He has no official authority to speak for or about the Company to outside parties in his capacity as an individual director. *See Trethewey v. Green River Gorge*, 17 Wn.2d 697, 727, 136 P.2d 999, 1011 (1943) (holding the authority of directors "is vested in them, not individually, but as a board," "they cannot act in an individual capacity outside of a formal meeting," and "any determination affecting the corporation shall only be arrived at and expressed after a consultation at a meeting of the board"). And as a DejaVuAI fiduciary who is subject to confidentiality and non-solicit obligations, he is legally prohibited from contacting them or anyone else for the purpose of competing with DejaVuAI or intentionally disrupting or otherwise harming the Company's business. Kapustin thus has little if any legitimate interest in communicating with these outside parties, particularly regarding DejaVuAI, its officers, its products and services, or any products in competition therewith.

Nor will the restrictions on Kapustin disparaging the Company or its officers, directors, investors, or products be a significant burden.[10] The TRO will leave Kapustin ample avenues for expressing any legitimate objections or concerns about DejaVuAI's management or business decisions, or for exercising any of his other rights or duties as a Board member and indirect shareholder. Under DejaVuAI's bylaws, Kapustin in his capacity as a director may call official meetings at any time to raise his concerns and propose votes on an investigation, change in management, or other initiative. Kessler Decl. ¶ 40, Ex. 23 at 8, § 4.9(b), *see Trethewey,* 17 Wn.2d at 727 (stating stockholders "have a right to have the individual viewpoint of the several directors expressed *at a conference*, for the purpose of obtaining the exchange view of the several persons in arriving at conclusions after deliberate consideration of any issue").

---

[10] Because Kapustin's fiduciary and contractual duties are self-imposed legal obligations, the First Amendment is no obstacle to the Court granting the requested relief. *See Belgau v. Inslee,* 975 F.3d 940, 950 (9th Cir. 2020)("When 'legal obligations ... are self-imposed,' state law, not the First Amendment, normally governs. (quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 671 (1991)); *see also Playup, Inc. v. Mintas*, No. 2:21-CV-02129-GMN-NJK, at *8 (granting TRO enjoining disparagement using substantially identical language to the proposed order).

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 16

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Finally, the TRO prohibition on competing will not significantly impair Kapustin's livelihood. Kapustin will be permitted to work in software development or any other field so long as he does not specifically develop products or services to compete with DejaVuAI's highly specialized software and other products.

Any hardship to Kapustin is thus greatly outweighed by the need to prevent irreparable harm to DejaVuAI.

### E.  A TRO is in the Public Interest

"When the reach of an injunction is narrow, limited only to the parties," and has little if any "impact on non-parties, the public interest" is typically "at most a neutral factor in the analysis rather than one that favors granting or denying the preliminary injunction." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1138–39 (9th Cir. 2009) (quotations and alterations omitted). Nevertheless, courts in this circuit have generally recognized that "the public interest benefits from the enforcement of business contracts," *Organo Gold Int'l, Inc. v. Ventura*, No. C16-487RAJ, 2016 WL 1756636, at *11 (W.D. Wash. May 3, 2016), and "the public interest favors the strict enforcement of fiduciary duties owed by a trustee to a beneficiary." *Bourque v. Metz*, No. CV-13-02589-PHX-SRB, 2014 WL 12855623, at *4 (D. Ariz. Feb. 6, 2014).

### CONCLUSION

For the foregoing reasons, DejaVuAI requests that the Court grant its motion for temporary restraining order and an order that Kapustin show cause why a preliminary injunction ought not issue.

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 17

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  I certify that this memorandum contains 5,729 words, in compliance with the Local Civil Rules.

DATED this 16th day of May, 2025

K&L GATES LLP


By: s/ John T. Bender
    John T. Bender, WSBA # 49658
Spencer McCandless, WSBA # 60871

925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Emails: John.Bender@klgates.com
        Spencer.McCandless@klgates.com

*Attorneys for Plaintiff DejaVuAI, Inc.*

Defendant's Contact Information:

Fyodor Kapustin
(425) 240-4627
446 164th Ave NE,
Bellevue, WA 98008

509393592.7
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 18

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

# CERTIFICATE OF SERVICE

I certify that a copy of this motion, along with the declarations in support of this motion and the exhibits thereto, was served in person by a process server at 6:58 p.m. on May 16, 2025, on the following:

Fyodor Kapustin
446 164th Ave NE
Bellevue, WA 98008

DATED this 16th day of May, 2025

K&L GATES LLP

By: /s John T. Bender
John T. Bender, WSBA # 49658
Spencer McCandless, WSBA # 60871

925 Fourth Avenue
Suite 2900
Seattle, Washington 98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: John.Bender@klgates.com
Spencer.McCandless@klgates.com

Attorneys for Plaintiff DejaVuAI, Inc.

509380827.8
PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
CASE NUMBER  - 19

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022