UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEJAVUAI INC., | CASE NO. 2:25-cv-00915-JNW |
| Plaintiff, | TEMPORARY RESTRAINING ORDER |
| v. | |
| FYODOR KAPUSTIN also known as TED also known as FYODOR KAPUSTINE, | |
| Defendant. | |

## 1. INTRODUCTION

On May 16, 2025, Plaintiff DejaVuAI Inc. moved for a temporary restraining order ("TRO") against Defendant Fyodor Kapustin, its current board member and former employee. Dkt. Nos. 5 (sealed); 10 (redacted version). The bottom-line allegations are stark: Kapustin "is not only exploiting DejaVuAI's proprietary software source code to compete with the Company, but also specifically targeting DejaVuAI's customers, employees, resellers, vendors, and investors in a deliberate effort to damage or even destroy the Company." Dkt. No. 1 ¶ 3. DejaVuAI asserts claims for breach of fiduciary duties, tortious interference with contracts and

TEMPORARY RESTRAINING ORDER - 1

business expectancy, breach of contract, and misappropriation of trade secrets under 18 U.S.C. § 1836(b)(1). *Id.* ¶¶ 29–61.

Despite proper service on May 16, 2025, Dkt. No. 10 at 19, Kapustin at first failed to respond. *See* LCR 65(b)(4). On May 22, 2025—six days after service and after the Court had already taken the matter under submission—Kapustin filed an opposition brief. Dkt. No. 20. Kapustin's opposition does not meaningfully contest the factual allegations underlying the motion or challenge DejaVuAI's likelihood of success on the merits. Instead, he argues only that the dispute should be referred to arbitration and offers to stipulate to certain limited restrictions. These arguments are unconvincing and do not override the strong showing DejaVuAI has made on all elements required for emergency relief.

Accordingly, the motion is granted for the reasons stated below.

## 2. FINDINGS OF FACT

Together with his business partner Johnny Kessler, Kapustin founded 1st1 Technologies LLP to develop AI image recognition software in 2020. Dkt. No. 11 ¶ 3. The partners later established DejaVuAI, Inc. as a majority-owned subsidiary of 1st1 and transferred most of 1st1's assets to DejaVuAI. *Id.* ¶ 4. Kapustin became both a board member of DejaVuAI and its Chief Technology Officer (CTO). *Id.* ¶ 9. As CTO, he executed an employment agreement with DejaVuAI that contained confidentiality and non-solicitation covenants ("Employment Agreement"). Dkt. Nos. 11 ¶ 10; 11-5 at 2–3.

A dispute over intellectual property rights and ownership of various software in 2024 led to DejaVuAI terminating Kapustin's employment as CTO on February 11, 2025. *Id.* ¶¶ 12–13. The DejaVuAI Board also asked Kapustin to resign as a board member, but he refused. *Id.* ¶ 14.

According to DejaVuAI, what followed was a calculated campaign to undermine the company Kapustin remains legally obligated to serve. "Kapustin has contacted multiple DejaVuAI current and prospective customers to urge them to cease doing business with [DejaVuAI.]" Dkt. No. 10 at 5. DejaVuAI attached a declaration by Christian Berg, the founder of one of DejaVuAI's customers and partners, in which he attests that Kapustin told him to "make sure [not to] sign any new contracts with DejaVuAI, Inc." and "claimed that the company did not have rights to its products." Dkt. No. 14 ¶ 3. Kapustin also stated that DejaVuAI is "on the brink of bankruptcy" and that he would "soon offer [Berg] the latest version of [his] software that has been much improved in the last few months." *Id.*

On May 1, 2025, DejaVuAI sent Kapustin a cease-and-desist letter, to which he responded: "My goal was to inform customers that they may [be] participating in violating my copyright on DejaVuAI technology." Dkt. No. 12 ¶¶ 14–15. DejaVuAI asserts that Kapustin continues to contact DejaVuAI customers in this way as recently as May 15, 2025. Dkt. No. 11 ¶ 37.

Kapustin also contacted at least two of DejaVuAI's resellers, urged them to breach their agreements with the company, and threatened to sue them unless they stopped doing business with DejaVuAI. Dkt. Nos. 11 ¶¶ 29–30; 11-17 at 3; 11-18 at 3. In his correspondence with these resellers, Kapustin states, "I suggest that you

immediately stop dealing with DejaVuAI, Inc. . . . otherwise you may face legal consequences." *Id.*

DejaVuAI also claims that Kapustin harasses and solicits DejaVuAI employees through mass emails and social media messages, encouraging them to quit and join his new venture. Dkt. No. 10 at 6. Kapustin told one DejaVuAI employee to stop issuing licenses for DejaVuAI's software to customers because there may be "serious legal consequences." Dkt. No. 13 ¶ 4. Kapustin threatened to sue the same employee and stated, "I suggest you start looking for another job." *Id.* ¶ 5.

Finally, DejaVuAI claims that Kapustin has "bombard[ed]" its investors with emails urging them to withdraw their investments. Dkt. No. 10 at 8. Kapustin told investors to "say goodbye to your money!" and claimed DejaVuAI's bankruptcy will be imminent. Dkt. No. 11-12 at 2. Kapustin also threatened investors stating, "if DejaVuAI, Inc. sue me [sic] or I sue DejaVuAI, Inc., the whole story and your names will pop up on social media and in the news (I will take care of this). Do you really want this?" Dkt. No. 11-15 at 4. He also told investors he didn't owe anything to DejaVuAI. Dkt. No. 11-22 at 9.

### 3. CONCLUSIONS OF LAW

**3.1  Legal standard.**

The standard for issuing a TRO is the same as the standard for issuing a preliminary injunction. *See New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1347 n.2 (1977). A TRO is "an extraordinary remedy that may only be

awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "The proper legal standard for preliminary injunctive relief requires a party to demonstrate (1) 'that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20). These four factors—the *Winter* factors—apply whenever a preliminary injunction is sought. *Winter*, 555 U.S. at 20; *see All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) ("a showing on all four prongs" is required).

The Ninth Circuit takes a "sliding scale" approach to preliminary relief, under which "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiffs can support issuance of a preliminary injunction, so long as the plaintiffs also show that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up). This approach allows a stronger showing of one Winter factor to offset a weaker showing of another. *Planned Parenthood Great Nw., Hawaii, Alaska, Indiana, Kentucky v. Labrador*, 122 F.4th 825, 843–44 (9th Cir. 2024).

### 3.2 DejaVuAI is likely to succeed on its claim that Kapustin is violating his fiduciary duties.

DejaVuAI brings five claims against Kapustin: breach of fiduciary duties, tortious interference with contracts and/or business expectancy, breach of the

employment agreement, breach of the escrow agreement, and misappropriation of trade secrets under 18 U.S.C. § 1836(b)(1). Dkt. No. 1 ¶¶ 29–61. In its TRO motion, DejaVuAI argues it will likely succeed on the merits of two of its claims: first, that Kapustin is violating his fiduciary duties to DejaVuAI; and second, that he breached his employment agreement.

"Where a party asserts multiple claims, the court need not find that the plaintiff is likely to succeed on the merits of all of the plaintiff's claims to issue a preliminary injunction." *Versaterm Inc. v. City of Seattle*, C16-1217-JLR, 2016 WL 4793239, at *5 (W.D. Wash. Sept. 13, 2016). Accordingly, the Court only addresses the merits of DejaVuAI's claim that Kapustin is violating his fiduciary duties, finding that DejaVuAI is likely to succeed on the merits of this claim.

Corporate directors "occupy a fiduciary relation to a private corporation and the shareholders thereof akin to that of a trustee, and owe undivided loyalty, and a standard of behavior above that of the workaday world." *State ex rel. Hayes Oyster Co. v. Keypoint Oyster Co.*, 391 P.2d 979, 983 (Wash. 1964). Directors breach these duties, giving rise to liability, through "(1) 'intentional misconduct,' (2) 'a knowing violation of law,' (3) 'conduct violating RCW 23B.08.310' (which includes discharging duties in good faith under RCW 23B.08.300) or (4) 'any transaction from which the director will personally receive a benefit in money, property, or services to which the director is not legally entitled.'" *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003) (quoting RCW 23B.08.320). Above all, directors "are not permitted to retain any personal profit or advantage gleaned 'on the side.'" *Interlake Porsche & Audi, Inc. v. Bucholz*, 728 P.2d 597, 603 (Wash. Ct. App. 1986)

Directors must also exercise due care by (1) "conduct[ing] themselves with the care of an ordinarily prudent person in a like position under similar circumstances"; (2) "[a]ssess[ing] available information and perform their actions carefully, thoughtfully and in an informed manner"; (3) "[s]eek[ing] all relevant material information before acting; and (4) "[a]void[ing] and prevent corporate waste and unnecessary expense." *RRW Legacy Mgmt. Grp., Inc. v. Walker*, No. C14-1544 MJP, 2015 WL 5883381, at *8 (W.D. Wash. Oct. 8, 2015), *aff'd,* 751 F. App'x 993 (9th Cir. 2018) (citing *Grassmueck*, 281 F. Supp. 2d at 1230 (citing RCW 23B.08.300–400))).

Because Kapustin currently serves on the Board of Directors, DejaVuAI argues that he is violating his fiduciary duties through a deliberate pattern of conduct aimed at destroying the company he is bound to protect. *See* Dkt. No. 10 at 11–12. DejaVuAI raises strong arguments on this score. Kapustin has actively tried to woo DejaVuAI customers and employees to his own business as well as threatened them with legal action, which violates his duty of loyalty by openly competing with DejaVuAI. He has also likely violated his duty of good faith and care by seeking to harm the company through false accusations that DejaVuAI is illegally selling its products and on the brink of bankruptcy. He has violated his duty to not abuse his knowledge of the company for personal gain.

Thus, the first *Winter* factor favors imposition of a TRO curtailing Kapustin's conduct because the Court finds DejaVuAI will likely succeed on its breach of fiduciary duty claim against Kapustin,

**3.3    Irreparable harm is both likely and ongoing.**

The plaintiff "must demonstrate a likelihood of irreparable injury—not just a possibility—in order to obtain preliminary relief." *Winter*, 555 U.S. at 21. Typically, economic injury does not constitute irreparable harm because it can be compensated by an award of money damages. *Potlongo v. Herff Jones*, LC, 749 Fed. App'x 537, 538 (9th Cir. 2018) (citing *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)). "However, [the Ninth Circuit] ha[s] also recognized that intangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm." *Rent-A-Center*, Inc., 944 F.2d at 603. To assert one of these intangible irreparable harms, the plaintiff must produce evidence that establishes the harm's irreparable nature and imminence. The evidence may not be speculative.

The evidence establishes concrete, ongoing harm to DejaVuAI's business relationships and reputation. DejaVuAI has provided evidence, through declarations, that Kapustin has tried to poach one of DejaVuAI's customers, threatened two resellers with legal action, and threatened to sue one of DejaVuAI's employees. This is not speculative future harm—this is documented conduct that he is currently engaged in despite being served a cease-and-desist letter. Thus, the intangible injury to DejaVuAI's goodwill and reputation are ongoing.

The timing makes this harm particularly acute. Kessler, DejaVuAI CEO, attests that DejaVuAI is "currently negotiating multiple major deals with potential customers and business partners for whom long-term reliability and ongoing support are a priority" and "in negotiations to raise additional capital . . . through

issuing new equity to current and new investors." Dkt. No. 11 ¶¶ 38–39. DejaVuAI argues that these potential customers, business partners, and investors "may decide doing business with an unstable [c]ompany with an uncertain future is not worth the risk[,]" and therefore, Kapustin's actions will likely cause further injury to DejaVuAI's recruitment efforts. Dkt. No. 10 at 15. The Court agrees—Kapustin's campaign of disparagement threatens these critical business opportunities that cannot be recreated or compensated through damages.

Under these circumstances, the Court finds it likely that DejaVuAI will face irreparable harm to its business that would not be compensable through money damages later.

### 3.4    The balance of equities strongly favors DejaVuAI.

As to the third *Winter* factor—balance of equities—this is not a close call. Kapustin seeks to profit from violating duties he voluntarily assumed. DejaVuAI only requests that he honor his obligations. Specifically, DejaVuAI seeks to bar him from:

- Contacting any of DejaVuAI's current and prospective customers, resellers, licensors, vendors, or other business contacts whom he is aware of by virtue of his former DejaVuAI employment or his position as a director of the company;
- Engaging in any form of conduct or making statements or representations that disparage, portray in a negative light, or otherwise impair the

- reputation or commercial interest of DejaVuAI, its officers and directors, its investors, or its products and services;
- Selling, offering for sale, marketing, or otherwise conducting business or purporting to conduct business with respect to any product or service in competition with DejaVuAI's products or services; and
- Taking any action to directly or indirectly interfere with DejaVuAI's operations, including any conduct to disrupt, alter, or otherwise affect any digital services or infrastructure that DejaVuAI currently uses to operate or market its business.

Dkt. No. 10-1 at 2–3. These restrictions are not onerous, as they largely reflect the fiduciary duties by which he is already bound. Kapustin failed to submit a timely response, despite proper service, that argues otherwise.

The balance of equities decisively favors protecting DejaVuAI from ongoing harm. Kapustin's belated opposition does not meaningfully contest this analysis or argue that the requested relief would cause him substantial hardship. His offer to stipulate to some limitations implicitly acknowledges the appropriateness of at least some restraints on his conduct.

**3.5   The public interest supports enforcing standards for fiduciaries.**

Courts consistently recognize that "the public interest favors the strict enforcement of fiduciary duties owed by a trustee to a beneficiary." *Bourque v. Metz*, No. CV-13- 02589-PHX-SRB, 2014 WL 12855623, at *4 (D. Ariz. Feb. 6, 2014). Allowing directors to compete with and disparage their own companies would

undermine this foundational corporate law principle. Thus, the final *Winter* factor favors emergency injunctive relief.

### 3.6   Kapustin's procedural arguments do not bar injunctive relief.

Kapustin argues that "this whole proceeding should be referred to arbitration per Item 10 of the Proprietary Information and Invention Assignment Agreement." Dkt. No. 20 at 1. But his employment agreement expressly carves out injunctive relief from the arbitration requirement, providing that DejaVuAI may "seek injunctive relief from a court of competent jurisdiction to prevent irreparable harm to the Company and to maintain the status quo during the arbitration process." Dkt. No. 20-1 at 7, § 10(f). This provision shows that the parties contemplated this type of emergency relief would be appropriate for a federal court to consider.

If Kapustin wishes to challenge the appropriate forum for this dispute, he may do so in a motion to compel arbitration. But for now, DejaVuAI has made a solid showing that a TRO is warranted and Kapustin's procedural arguments do not change this fact.

### 4.   CONCLUSION

Accordingly, the Court GRANTS DejaVuAI's motion for a TRO. Dkt. No. 10. Pending further order from this Court, Kapustin is immediately enjoined from:

- Contacting any of DejaVuAI's current and prospective customers, resellers, licensors, vendors, or other business contacts whom he is aware of by virtue of his former DejaVuAI employment or his position as a director of the Company;

- Engaging in any form of conduct or making statements or representations that disparage, portray in a negative light, or otherwise impair the reputation or commercial interest of DejaVuAI, its officers and directors, its investors, or its products and services;

- Selling, offering for sale, marketing, or otherwise conducting business or purporting to conduct business with respect to any product or service in competition with DejaVuAI's products or services; and

- Taking any action to directly or indirectly interfere with DejaVuAI's operations, including any conduct to disrupt, alter, or otherwise affect any digital services or infrastructure that DejaVuAI currently uses to operate or market its business.

No security bond is required under Federal Rule of Civil Procedure 65(c) because Kapustin faces no realistic likelihood of harm from enjoining his conduct. *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003).

Kapustin is ORDERED TO SHOW CAUSE on or before June 12, 2025, why the Court should not convert this TRO into a preliminary injunction. DejaVuAI may file a reply, if any, on or before June 19, 2025. If either party believes an evidentiary hearing is necessary, they should say so in their respective filings.

DejaVuAI must promptly serve Kapustin with a copy of this order.

Dated this 22nd day of May, 2025.

*Jamal N. Whitehead*
United States District Judge

TEMPORARY RESTRAINING ORDER - 13