The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DEJAVUAI, INC., a Washington corporation,<br><br>                      Plaintiff,<br><br>    v.<br><br>FYODOR "TED" KAPUSTIN aka FYDOR "TED" KAPUSTINE, an individual,,<br><br>                      Defendant. | No. 2:25-cv-00915<br><br>PLAINTIFF'S EMERGENCY MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT AND/OR OTHER SANCTIONS<br><br>NOTE ON MOTION CALENDAR:<br>                      June 10, 2025 |

## INTRODUCTION

Plaintiff DejaVuAI, Inc. ("DejaVuAI" or the "Company") respectfully requests that the Court order Defendant Fyodor "Ted" Kapustin to appear and show cause why he ought not be held in contempt of Court for violating the Court's Temporary Restraining Order ("TRO") or otherwise sanctioned pursuant to the Court's inherent authority.

On May 22, 2025, this Court issued a TRO prohibiting Defendant from, among other things, contacting parties who do business with DejaVuAI or disparaging DejaVuAI or its officers directors, investors, or products. TRO, Dkt 21 at 11-12. Despite the TRO, and without his counsel's knowledge or consent, Defendant has in the last week:

- Sent multiple emails to a representative of DejaVuAI's largest outside investor (who also sits on DejaVuAI's Board of Directors) in which he disparaged the Company, called a

DejaVuAI officer a "scumbag," and threatened to defame the investor and DejaVuAI in the press if the Company did not withdraw this lawsuit;

- Sent multiple text messages to DejaVuAI's chief of staff, who is also an investor in the Company, in which Defendant further disparaged the Company, called a DejaVuAI officer an "asshole," and threatened that he was "going to put [the officer] in prison" if DejaVuAI did not drop this lawsuit; and

- Sent nearly twenty harassing emails to DejaVuAI's counsel within a single twenty-four-hour period in which he disparaged and threatened DejaVuAI and its officers and demanded that the Company abandon this lawsuit.

Declaration of Spencer McCandless ("McCandless Decl.) ¶¶ 4-27, Ex. A, C; Declaration of Johnny Kessler ("Kessler Decl.") ¶¶ 3-4; Declaration of Jeff Benson ("Benson Decl.") ¶ 5-7, Ex. A.

Defendant is not simply misunderstanding his legal obligations—he is intentionally violating this Court's order. As these violations were occurring, DejaVuAI informed Defendant's counsel of Defendant's actions and requested that counsel reiterate to him the terms of the TRO and the consequences for violating a court order. McCandless Decl. ¶ 22, Ex. B at 6/3/25 9:32 am. Defense counsel confirmed that she had successfully contacted Defendant. *Id.* at 6/3/25 11:36 am. Yet even after this Defendant texted the same DejaVuAI employee/investor to reiterate his extortionary threats. Benson Decl. ¶ 7, Ex A.

There is no question that Defendant is knowingly violating the Court's TRO in an effort to disrupt the administration of justice.[1] He has demonstrated that he will not comply with the TRO (or his counsel's advice) on his own accord. Whether via the Court's contempt power or its inherent authority to sanction bad faith conduct related to the litigation, sanctions are appropriate.

---

[1] Further, it appears that Defendant may have violated federal and state criminal laws. *See, e.g.,* 18 USC §§ 873, 875(d); RCW 9A.56.110, 9A.56.130(1), 9A.04.110(28)(d)-(f), (j).

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 2

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**STATEMENT OF FACTS**

On May 22, 2025, this Court issued a TRO ordering Defendant to refrain from, inter alia, "[e]ngaging in any form of conduct or making statements or representations that disparage, portray in a negative light, or otherwise impair the reputation or commercial interest of DejaVuAI, its officers and directors, its investors, or its products and services," and "[c]ontacting any of DejaVuAI's current and prospective customers, resellers, licensors, vendors, or other business contacts whom he is aware of by virtue of his former DejaVuAI employment or his position as a director of the Company." TRO, Dkt 21 at 11-12.

Less than three weeks later, on June 2, 2025, Defendant began sending numerous harassing emails to DejaVuAI's counsel. McCandless Decl. ¶¶ 4-8, 10-16, 19-21, 23-27, Ex. A. Defendant sent the first email around 4 p.m. PDT, in which he falsely accused a DejaVuAI officer of "screw[ing] up [his] immigration," "forg[ing]" legal documents, and "committ[ing] fraud."[2] *Id.* ¶ 6. Around the same time, DejaVuAI's counsel received an email from a file sharing service containing a link to files Defendant had sent with a description again accusing DejaVuAI and its officer of "yet another fraud."[3] *Id.* ¶ 4.

Next, Defendant proceeded to send ten additional emails to counsel over the following four-and-a-half hours in which he falsely accused DejaVuAI and its officers of fraud many more times; claimed DejaVuAI had used "deception to illegally obtain" its software licenses and was illegally selling its products; falsely accused DejaVuAI and its counsel of "knowingly" including "DELIBERATELY FALSE INFORMATION" in their court filings; falsely accused a DejaVuAI officer of "financial and tax violations and crimes" and "trying to steal [his] technology"; claimed

---

[2] To avoid needing to file a motion to seal to prevent dissemination of Defendants' libel, DejaVuAI has not included the emails Defendant sent to its counsel themselves in support of this filing, instead summarizing them in counsel's declaration and submitting a summary chart screenshotting the headers of each email Mr. Kapustin sent. *See* McCandless Decl. ¶¶ 4-8, Ex. A. DejaVuAI is prepared to submit the emails under seal or in camera upon the Court's request.

[3] Counsel is presently consulting with its information technology department to determine if these files are safe to open or contain malicious software. McCandless Decl. ¶ 4 n. 1.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 3

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

the Company had "cheated, deceived, defrauded and backstabbed him"; and asserted DejaVuAI's "BS Filing" violated several laws.[4] *Id.* ¶ 7-8, 10-16. DejaVuAI's counsel promptly forwarded these emails to Defendant's counsel. *Id.* ¶ 9, Ex. B.

That same evening, at approximately 7:00 p.m., Defendant sent a text message to DejaVuAI's chief of staff (who is also an investor in the Company). Benson Decl. ¶ 6, Ex. A. He told the employee/investor "I'll put your asshole brother[5] in prison if he does not withdraw his court filing. He faces 10 years." *Id.*

Around 6:30 a.m. the following morning, Defendant emailed a representative of DejaVuAI's largest investor (who is also a member of DejaVuAI's Board). McCandless Decl. ¶ 19, Ex. C. In the email, Defendant threatened to defame the investor and DejaVuAI in the press if DejaVuAI did not drop its lawsuit, stating, "As promised, this entire story is going to be in the press if this scumbag does not withdraw his filing." *Id.* He stated he would publicly accuse DejaVuAI and the investor of associating with "alcoholic[s]," "sex offenders," and "criminals," and told the investor to "Brace for a disaster." *Id.* But Defendant indicated DejaVuAI and the investor could avoid this outcome if the Company agreed to acquiesce to Defendant's claim to DejaVuAI's software and enter into a new license agreement with Defendant. *Id.* Defendant proceeded to email the investor representative two more times throughout the morning to reiterate his threats. *Id.* ¶¶ 24-25, Ex. C.

Defendant forwarded these emails to DejaVuAI's counsel and sent counsel five other emails throughout the morning. *Id.* ¶ 19-21, 23-27. The emails again repeatedly accused DejaVuAI and its officers of "fraud" and "perjury" and threatened that they will be "referred to law enforcement" and "prosecuted." *Id.* One of the emails included the subject line "Withdraw before

---

[4] In two of Defendants' emails, Defendant purported to "withdraw" from DejaVuAI's parent company, 1st1 Technologies LLP, and "remove" himself from DejaVuAI's Board of Directors. McCandless Decl. ¶ 10, 13. DejaVuAI has since offered to send Defendant the appropriate paperwork to effectuate this decision, but he has thus far declined. McCandless Decl. ¶ 14 n.4.

[5] For unknown reasons, Defendant appears to mistakenly believe DejaVuAI's Chief Executive Officer is the employee/investor's brother. Benson Decl. ¶ 6.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

it's too late." *Id.* ¶ 26.

As this was occurring, DejaVuAI received an email from Defendant's attorney following up on her request that DejaVuAI consent to an extension of Defendant's deadlines to Answer and respond to the Court's Show Cause Order to allow time for her to withdraw and Defendant to find new counsel. *Id.* ¶ 17, Ex. B. Defendant's counsel stated that Defendant had promised her that "he will comply with the TRO during the extended period." *Id.* DejaVuAI's counsel responded by forwarding Defendant's counsel the additional emails Defendant had sent and informing her that Defendant was already violating the TRO and threatening further violations. *Id.* ¶ 22, Ex. B. DejaVuAI's counsel asked defense counsel to "please advise Mr. Kapustin about the terms he is currently subject to under the TRO and the consequences for violating an explicit court order." *Id.* Defendant's counsel replied thanking DejaVuAI's counsel for "letting [her] know about this." *Id.*

DejaVuAI's counsel continued to forward defense counsel Defendant's emails throughout the morning. *Id.* Finally, at approximately 11:30 a.m., Defendant's counsel emailed DejaVuAI's counsel stating that Defendant had seen her email and had confirmed to her that he would stop emailing DejaVuAI's counsel. *Id.* ¶ 28, Ex. B. By that point, Defendant had sent DejaVuAI's counsel *nineteen* emails since 4 p.m. the previous afternoon. *See id.*, Exs. A, C.

Despite Defendant's attorney presumably advising him to cease violating the TRO, the next day Defendant sent another text message to the same DejaVuAI employee/investor he had contacted two days before. Benson Decl. ¶ 7, Ex. A. Following up on his earlier threat to "put [a DejaVuAI officer] in prison" for "10 years" "if he d[id] not withdraw his court filing," Defendant stated, "it's actually 15 years, not 10." *Id.*

### ARGUMENT

**A. Defendant Should be Held in Contempt for Violating the TRO**

Under Article III of the Constitution, "[f]ederal courts have 'inherent power to enforce compliance with their lawful orders'" by holding a party in civil contempt. *Pacito v. Trump*, No. 2:25-CV-255-JNW, 2025 WL 1397613, at *1 (W.D. Wash. Apr. 11, 2025) (Whitehead, J.)

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

(quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). "Civil contempt is defined as 'a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply.'" *A.B. by & through Trueblood v. Washington State Dep't of Soc. & Health Servs.*, 681 F. Supp. 3d 1149, 1173 (W.D. Wash. 2023) (quoting *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 945 (9th Cir. 2014)). When a party fails to comply with the Court's order, the Court may impose civil contempt sanctions "for one or both of two distinct purposes: to compel or coerce the defendant into compliance with a court's order, and to compensate the complainant for losses sustained as a result of the contemnor's noncompliance." *Id.* at 1174 (quoting *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147 (9th Cir. 1983)).

Initially, the moving party bears the burden of showing by clear and convincing evidence that the contemnor violated a specific and definite order; the burden then shifts to the contemnors to demonstrate either that they substantially complied with the order or took "all reasonable steps" but were unable to comply. *Stone v. City & Cty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992). A party's failure to comply with a court order "need not be willful" to qualify for civil contempt, "and there is no good faith exception to the requirement of obedience to a court order."[6] *Trueblood,* 681 F. Supp. 3d at 1173 (quoting *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993)). "The sole question is whether a party complied with the district court's order." *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983). "A court has

---

[6] Conversely, "willfulness is an essential element of criminal contempt." *United States v. Armstrong*, 781 F.2d 700, 706 (9th Cir. 1986). Under 18 U.S.C. § 401 and Fed. R. Crim. P. 42, federal courts may also hold a party in criminal contempt "to vindicate the court's authority in the face of contumacious and disrespectful acts." *Id.* at 703. "The distinction between the two forms of contempt lies in the intended effect of the punishment imposed." *Id.* (citing *United States v. Asay*, 614 F.2d 655, 659 (9th Cir.1980)). "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive." *Id.*

As the name implies, criminal contempt is a criminal offense; accordingly, a court, grand jury, or prosecutor generally initiates a criminal contempt prosecution rather than the opposing party in the proceeding at issue. *See id.* at 704. Given the willful nature of Defendants' misconduct, DejaVuAI defers to the Court's judgment as to whether criminal contempt is appropriate.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 6

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

wide latitude in determining whether there has been contemptuous defiance of its order," and its ruling will stand on appeal unless it is an abuse of discretion. *Gifford v. Heckler*, 741 F.2d 263, 266 (9th Cir. 1984).

Here, this Court issued a specific and definite order. In plain, unambiguous terms, the Court's TRO prohibited Defendant from contacting any of DejaVuAI's "business contacts whom he is aware of by virtue of his former DejaVuAI employment or his position as a director of the Company." TRO, Dkt 21 at 11. The Court likewise plainly ordered Defendant to refrain from "making statements or representations that disparage [or] portray in a negative light… DejaVuAI, its officers and directors, its investors, or its products and services." *Id.* at 12. Defendant has repeatedly violated both of these prohibitions.

In open defiance of the Court's TRO, Defendant has contacted at least two parties who do business with DejaVuAI for the specific purpose of disparaging and threatening the Company. He sent two text messages to a DejaVuAI employee who is also an investor in the Company and three emails to a representative of DejaVuAI's largest investor who also sits on DejaVuAI's Board (as well as nearly twenty emails to DejaVuAI's counsel in this litigation). Benson Decl. ¶ 5-7, Ex. A; McCandless Decl. ¶ 4-27, Exs. A, C.

Over and over again, Defendant made the type of negative statements about DejaVuAI and its officers, directors, and investors the TRO specifically prohibits. He called a DejaVuAI officer a "scumbag" and an "asshole," and accused the Company and its officers and investors of associating with "alcoholic[s]," "sex offenders, criminals, etc." Benson Decl. ¶ 5-7, Ex. A; McCandless Decl. ¶ 19, Ex. C. He stated DejaVuAI and its officers were "trying to steal [his] technology" through "lies and fraud" and claimed the Company had "cheated, deceived, defrauded and backstabbed him." McCandless Decl. ¶ 11. Defendant also impugned DejaVuAI's products and services, falsely asserting that DejaVuAI had used "us[ed] deception to illegally obtain" its software licensing account and claiming the Company "has no right to sell or use" its technology. McCandless Decl. ¶¶ 7, 10.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Defendant has demonstrated he will not comply with the Court's TRO (or his attorney's advice) on his own accord. After DejaVuAI's counsel requested that defense counsel contact Defendant and ensure he understands the TRO order's terms and the consequences for violating it, defendant's attorney confirmed she had contacted Defendant. *Id.* ¶ 22, Ex. B. Yet the following day, Defendant violated the TRO *yet again*, sending another harassing text message to the DejaVuAI employee/investor reiterating his prior threat. Benson Decl. ¶ 7, Ex. A. Defendant has expressly threatened to violate the TRO even further by defaming DejaVuAI and its investors in the press if DejaVuAI does not drop this lawsuit and enter into a license agreement with him, thereby acquiescing to his invalid claim. McCandless Decl. ¶ 19, Ex. C. At a minimum, civil contempt is needed to compel Defendant to respect the Court's authority and comply with its TRO—and to prevent more damage than what DejaVuAI has already sustained.

**B. Defendant's Conduct Would Warrant Sanctions Even if it did not Violate the TRO**

Separate from the Court's authority to compel compliance with its orders through civil contempt, federal courts possess inherent authority to punish a litigant's bad faith conduct related to the proceeding, regardless of whether the "conduct [occurs] before the court" or "beyond the court's confines." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). The Court may sanction a party who "has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons," including "when a party 'shows bad faith by delaying or disrupting the litigation.'" *Id.* at 45-46 (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975) and *Hutto v. Finney*, 437 U.S. 678, 690 n. 14 (1978)). The court must make a specific finding of "bad faith or conduct tantamount to bad faith," before imposing sanctions pursuant to this inherent authority, but "recklessness" and "a variety of [other] types of willful actions" will suffice "when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *cf Wheeler v. United States*, 640 F.2d 1116, 1124 (9th Cir. 1981) (noting a criminal "trial court's inherent power to protect the sound administration of justice" by issuing orders to prevent out-of-court threats and harassment "when defendant's

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 8

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

conduct presents significant interference with the administration of justice" (alterations omitted) (quoting *Bitter v. United States*, 389 U.S. 15, 16 (1967)).

Here, even aside from violating the Court's TRO, Defendants' threats and harassment are bad faith conduct for the improper purpose of interfering with the administration of justice. He has repeatedly, explicitly threatened to publicly defame DejaVuAI and its officers and investors, report them to law enforcement, and "put them in prison" if they continue this litigation, seeking to obtain the dismissal of DejaVuAI's claims against him through extortion and intimidation.[7] Time and again Defendant has threatened to damage DejaVuAI's officers and investors' personal reputation and embroil them in (false) criminal prosecutions if the Company does not abandon its rights and acquiesce to his demands to sign a new unnecessary license agreement under which DejaVuAI will pay him millions for the privilege of selling its own software. Defendant's conduct appears to be a crime under state and federal law, *see supra* note 1, and it is clearly intended to disrupt this proceeding and interfere with the Court's administration of justice—not to mention DejaVuAI's business. Thus, even if Defendant was not violating the TRO by doing precisely what the Court ordered him not to do (which he is), his conduct would still warrant sanctions.

### C. The Court Should Award DejaVuAI the Costs and Attorneys' Fees Associated with this Motion

Courts have broad discretion to fashion appropriate sanctions for civil contempt or when exercising their other inherent powers to sanction a party. *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1118 (9th Cir. 2005) (citing *Chambers,* 501 U.S. at 44–45). "Sanctions for civil contempt may be imposed to coerce obedience to a court order, or to compensate the party pursuing the contempt action for injuries resulting from the contemptuous behavior, or both." *General Signal Corp. v.*

---

[7] These tactics are not new. This is at least the second time that Defendant has threatened to defame DejaVuAI's investors in the press if DejaVuAI sought to vindicate its legal rights. *See generally* Motion to Seal, Dkt. 4 at 4. And Defendant previously threatened DejaVuAI's counsel that he would file complaints for professional ethics violations against them with their respective state bar associations if they assisted DejaVuAI in bringing this lawsuit. *See* Lubic TRO Declaration, Dkt 12 ¶ 12-13, Exs. I-J.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*Donallco, Inc.*, 787 F.2d 1376, 1380 (9th Cir.1986). Compensatory awards are payable to the injured party and are limited to "actual losses sustained as a result of the contumacy." *Id.* Coercive awards are instead "payable to the court," and can be set at the Court's discretion based on "the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction." *Id.* (quoting *United Mine Workers*, 330 U.S. 258, 304 (1947)). Where a sanction is dual purpose, "both compensatory and coercive[,] the district court should specify the amount awarded under each theory … and split payment of the award between [the injured party] and the court accordingly." *Id.*

DejaVuAI defers to the Court as to whether and how much of a coercive fine is necessary to prevent Defendant from continuing to violate the Court's TRO. DejaVuAI respectfully requests, however, that the Court award it its costs and attorneys' fees associated with this motion and any ensuing briefing or hearing. Much of the damage to DejaVuAI from Defendant's bad faith conduct and TRO violations is unquantifiable, and includes both the harm that has been done to the Company's relationships with its investors and employees as well as the stress, anxiety, and emotional distress resulting from Defendants' frequent harassment and threats. Furthermore, Defendant's bad faith refusal to abide by his legal obligations in relation to this dispute has already resulted in DejaVuAI wasting many weeks of time and many thousands of dollars in legal fees. *See, e.g.*, Verified Complaint, Dkt 1 ¶ 21, Ex. C; Lubic TRO Declaration, Dkt 12 ¶ 4-7, Exs. C, D-1. "Payment by the contemnor of attorney's fees and costs to the complainant is a common compensatory, remedial civil sanction," *Religious Tech. Ctr. v. Henson*, 229 F.3d 1158 (9th Cir. 2000), and it is warranted here.

## CONCLUSION

For the foregoing reasons, DejaVuAI respectfully requests that the Court order Defendant to appear and show cause why he ought not be held in civil contempt or otherwise sanctioned.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 10

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

I certify that this memorandum contains 3,453 words, in compliance with the Local Civil Rules.

DATED this 10th day of June, 2025

Respectfully submitted,

K&L GATES LLP

By: s/ Spencer McCandless
    John T. Bender, WSBA # 49658
    Spencer McCandless, WSBA # 60871

925 Fourth Avenue
Suite 2900
Seattle, Washington 98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: John.Bender@klgates.com
       Spencer.McCandless@klgates.com

Attorneys for Plaintiff
DejaVuAI, Inc.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 11

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

## CERTIFICATE OF SERVICE

I hereby certify on June 10, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties who have appeared in this matter.

K&L GATES LLP


By: s/ Spencer McCandless
John T. Bender, WSBA # 49658
Spencer McCandless, WSBA # 60871

925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: John.Bender@klgates.com
         Spencer.McCandless@klgates.com

Attorneys for Plaintiff
DejaVuAI, Inc.

PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE RE CONTEMPT
CASE NUMBER 2:25-CV-00915 - 12

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022