1

2                                                    The Honorable Jamal N. Whitehead

3

4

5

6

7

8                          **UNITED STATES COURT**

9              **WESTERN DISTRICT OF WASHINGTON**
                                **AT SEATTLE**

10

11   DEJAVUAI INC.,                          │  2:25-cv-00915-JNW

12                        Plaintiff,         │

13   v.                                      │

14   FYODOR KAPUSTIN also known as TED       │  **DEFENDANT'S OPPOSITION TO**
     also known as FYODOR KAPOUSTINE,        │  **PLAINTIFF'S MOTION FOR**
15                                           │  **PRELIMINARY INJUNCTION**

16                        Defendant.         │

17

18              **I.   RELIEF REQUESTED**

19
         Plaintiff DejaVu Inc. ("Plaintiff") seeks to convert the entered temporary
20
     restraining order (the "TRO", Dkt 21) into a preliminary injunction that would prohibit
21
     Defendant Fedor "Ted" Kapoustine ("Defendant" or "Mr. Kapoustine"), a former board
22
     director of Plaintiff, from engaging in any business that competes with Plaintiff.
23
     However, Plaintiff fails to show credible evidence and sufficient legal authority to justify
24
     such a sweeping competition ban against Defendant—especially when there are not
25

26

27

28

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

ongoing or future fiduciary duties owed by Mr. Kapoustine to Plaintiff after his resignation on June 17, 2025, as a board director, or any alleged contractual restrictions relied upon by Plaintiff is likely to be void and unenforceable.

Mr. Kapoustine does not oppose extending the TRO provisions into a preliminary injunction that prohibits him from contacting those identified contacts in the TRO whom Mr. Kapustin became aware of by virtue of his former directorship with Plaintiff; nor does he oppose the continuation of the TRO provisions that would prohibit him from disparaging Plaintiff or interfering with Plaintiff's business operation. However, Plaintiff's request to enjoin Mr. Kapoustine's lawful competition with Dejavuai Inc., as shown below, is overreaching and unwarranted.

The Court should deny Plaintiff's request to extend bullet-pointed Paragraph 3 of the TRO, concerning competition, into any preliminary injunction. There is no legal basis for a competition ban against Mr. Kapoustine. Accordingly, Mr. Kapoustine respectfully requests that the Court limit any injunctive relief to the undisputed provisions of the TRO, and allow him to conduct, and continue conducting, business based on the technology that he invented way before Plaintiff's birth and retains ownership; and also allow Mr. Kapoustine to lawfully compete with Plaintiff.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 2
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1
2

## II.   STATEMENT OF FACTS

3
4

Mr. Kapoustine is a Canadian software engineer expert and specializes in the

field of image comparison algorithm development. ¶4, Fedor Kapoustine's Declaration

5
6

ISO Defendant's Opposition to Plaintiff's Motion for Preliminary Injunction

7

("Kapoustine's Declaration"). After moving to the United States in 2005, he has worked

8

for major U.S. technology companies including Amazon, Facebook, and Microsoft. *Id.* In

9

2003, while residing in Canada, Mr. Kapoustine began developing what would become

10

the DejaVuAI technology, a cutting-edge image comparison algorithm with wide-ranging

11
12

applications, including criminal investigations, navigation, and biometric identification.

13

*Id.,* ¶¶5-6. This technology would be recognized by its users as unmatched by any

14

existing technologies in the same field. Mr. Kapoustine wrote the source code of the

15
16

algorithm and has been maintaining the code in multiple ways, including bug fixing,

17

code refactoring, adding and testing new features, and implementing new applications

18

based on the code. He built and maintained the technology independently, using his

19
20

personal resources and time. By 2017, the core algorithm was production-ready and

21

capable of supporting commercial applications. Mr. Kapoustine named it DejaVuAI. *Id.*

22

Since then, Mr. Kapoustine has successfully implemented his DejaVuAI

23
24

technology in end-user software, in the form of executables, that could be purchased and

25

used by customers in real application scenarios.

26
27
28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 3
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1

2      Despite being technically skilled, Mr. Kapoustine lacked experience in promoting

3  and marketing his DejaVuAI technology. Once the DejaVuAI technology reached a

4  mature stage, he began actively seeking business opportunities. In May 2018, Mr.

5  Kapoustine demonstrated his technology to Johnny Kessler, a man Mr. Kapoustine

6  knew from work and considered a businessman and salesperson. *Id.*, ¶7. Mr. Kessler

7
8  was impressed and expressed to Mr. Kapoustine that he would be interested in helping

9  Mr. Kapoustine with marketing and selling DejaVuAI. *Id.*

10     In 2020, Mr. Kapoustine and Mr. Kessler co-founded 1st1 Technologies LLP, with

11  the understanding that Mr. Kapoustine would remain the sole owner and inventor of

12
13  the technology, while Mr. Kessler would handle business operations. *Id.*, ¶8.

14     The 1st1 Technologies LLP Operating Agreement shows that Mr. Kapoustine

15
16  retained full ownership of the DejaVuAI technology. *Id.* ¶9 & Ex. 1. He never

17  transferred the source code or underlying algorithms to the partnership or any third

18  party. In March 2023, he was granted an O-1 visa based on his extraordinary technical

19
20  expertise, and has since then served as the partnership's Chief Technology Officer

21  ("CTO"). *Id.*, ¶10 & Ex. 2. His visa was sponsored solely by 1st1 Technologies LLP as his

22  U.S. employer, and he could not legally work for any other U.S. employers without

23
24  amending his visa application. *Id.*, ¶18 & Ex. 11.

25     In August 2022, Mr. Kessler proposed to incorporate a new entity to boost the

26  business and attract investors who preferred investing in a corporation. *Id.*, ¶¶11, 14.

27

28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 4
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

Mr. Kapoustine agreed, with the condition that he retain the sole ownership of the

DejaVuAI technology, and Mr. Kessler accepted it. *Id.* In September 2022, DejaVuAI

Inc., now the Plaintiff in this lawsuit, was incorporated. *Id.*, & Ex. 3. Both Mr.

Kapoustine and Mr. Kessler were initial directors on Plaintiff's board.

However, disputes soon emerged. Beginning in late 2022, Mr. Kessler began

misrepresenting the origins and ownership of the DejaVuAI technology to business

partners and customers, mispresenting DejaVuAI Inc. as the developer of the technology

and successor to 1st1 Technologies LLP. *Id.*, ¶15. The misrepresentation also included

the use of 1st1 Technologies LLP's trade names to cover its distinctness from DejaVuAI

Inc., and the concealment of Mr. Kapoustine's role as the real owner and developer of

the DejaVuAI technology. *Id.*, ¶¶12-13, 15 & Ex. 12. These tactics enabled DejaVuAI,

Inc. to make money by selling software built on Mr. Kapoustine's technology without a

license.

In early 2023, Mr. Kapoustine discovered that DejaVuAI, Inc. was distributing

executables based on his technology without authorization and had acquired licensing

tools reserved for use by 1st1 Technologies LLP. *Id.*, ¶24. When Mr. Kapoustine raised

concerns, Mr. Kessler refused to sign a licensing agreement but instead escalated the

conflict. *Id.*, ¶¶24-25.

Led by Mr. Kessler, DejaVuAI Inc. also falsely claims that it employed Mr.

Kapoustine and accordingly owns the DejaVuAI technology. *Id.*, ¶¶17-22. Mr.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 5
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

Kapoustine is also upset by the fact that DejaVuAI Inc. has been trading with customers who would and should be customers of 1st1 Technologies LLP and making money by selling executables of the DejavuAI technology that was created and developed by Mr. Kapoustine, while whether or how Mr. Kapoustine could benefit from those transactions are now subject to Mr. Kessler's say.

Moreover, without Mr. Kapoustine's knowledge or consent, DejaVuAI, Inc., rather than 1st1 Technologies LLP, began issuing his paychecks and W-2 forms. *Id.*, ¶21 & Ex. 6. As reflected in the 2023 and 2024 W-2s issued by DejaVuAI, Inc., his reported salary did not exceed $100,000 in either year.

While many could be and will be disputed in this lawsuit, at least the following remain clear: First, by the middle of 2022 (and about three months before Plaintiff's incorporation), Mr. Kapoustine had developed his DejaVuAI technology to the stage that it was ripe enough to be commercialized and could generate various profitable products in the real world. Second, Mr. Kapoustine could not be lawfully employed by DejaVuAI, Inc. and has never become an employee of this corporation. Lastly, the DejaVuAI technology has never been transferred to DejaVuAI, Inc.

The disputes between Mr. Kessler and Mr. Kapoustine deepened in early 2025. Mr. Kessler sought to commercialize not just the executable software based on Mr. Kapoustine's technology, but the source code and the proprietary algorithms themselves—none of which has ever been transferred to or shared with DejaVuAI, Inc.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 6
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1  *Id.* On February 5, 2025, Mr. Kessler abruptly disabled Mr. Kapoustine's work email

2  ted@dejavuai.com without notice. *Id.*¶26. That same day, the two had an argument

3

4  during a contentious board meeting. *Id.* On February 11, DejaVuAI, Inc. sent Mr.

5  Kapoustine a demand letter ordering him to return the source code, an implicit

6  acknowledgment that the corporation had never possessed it. ¶27 & Ex. 9. A

7  termination letter followed. *Id.*, ¶27 & Ex. 8.

8

9      While Mr. Kapoustine remained as a director of DejaVuAI, Inc. after Feburary 11,

10  2025, he was excluded from all subsequent board communications. He also stopped

11  receiving salary from 1st1 Technologies, despite never being formally discharged. His O-

12  1 visa was terminated in May 2025, leaving him without income or lawful U.S. work

13

14  authorization. *Id.*, ¶29.

15      In April and May 2025, facing exclusion and financial pressure, Mr. Kapoustine

16  contacted a small number of individuals, including directors, shareholders, and prior

17

18  business partners, to raise legitimate concerns that DejaVuAI, Inc. was distributing

19  software based on his technology without a valid license. *Id.*, ¶30. These

20  communications were made in good faith, with the purpose not to harm the corporation

21  or solicit business for himself, but to protect his intellectual property, seek resolution,

22

23  and notify third parties and stakeholders of potential unauthorized use and potential

24  legal risks. In fact, prior to doing so, Mr. Kapoustine attempted to resolve the matter

25

26

27

28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 7
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

internally, including proposing a license agreement, but his efforts were to no avail. *Id.*, ¶¶24-25, 31-32.

Today, DejaVuAI, Inc. markets three software products, Photon, Photon ES, and PAC.ID.[1] It mostly targets industrial, corporate customers instead of individual customers.

In reality, only Photon ES is a mature product that is marketed to a certain clientele who could afford an annual subscription cost of $200,000. *Id.*, ¶¶33-34. Mr. Kapoustine, based on his DejaVuAI technology, is capable of developing improved and more affordable software, including consumer-facing applications. He needs and should have the right to market his own products and make money out of it.

On June 17, 2025, Mr. Kapoustine resigned as a director of DejaVuAI Inc. by delivering a notice to counsel of the corporation. *Id.*, ¶35 & Ex. 10. He remains a partner of 1st1 Technologies LLP. *Id.*, ¶36 & Ex. 10.

## III.  ISSUE PRESENTED

1.    Whether the Court should decline to extend the competition ban contained in the TRO entered on May 22, 2025 as a preliminary injunction, when (1) Mr. Kapoustine has resigned as a board director of Plaintiff, (2) the non-compete clause contained in the PIIA between the parties is likely unenforceable, (3) the ownership of the DejavuAI technology especially the underlying source code remains disputed, and (4) Plaintiff has shown no irreparable harm from fair and lawful competition? **Yes**.

---

[1] See DejaVu AI Inc. website, https://dejavuai.com/products/ (last visited July 14, 2025).

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 8
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

## IV. <u>EVIDENCE RELIED UPON</u>

This Motion relies upon the declaration of Defendant Fedor "Ted" Kapoustine, and the exhibits attached thereto, as well as the pleadings and filings already on record in this matter.

## V. <u>ARGUMENT AND AUTHORITIES</u>

Mr. Kapoustine does not dispute the legal standard governing the injunctive relief at issue here, as articulated in Plaintiff's Motion. Dkt 10, p. 9. He does, however, oppose the extension of the TRO under such a standard into a preliminary injunction broadly limiting his business competition against the Plaintiff.

**A.    Mr. Kapoustine's Resignation from Plaintiff's Board Eliminates Any Ongoing Fiduciary Duties Owed to Plaintiff and therefore the Legal Basis for Broad Injunction against Competition.**

On June 17, 2025, Mr. Kapoustine formally resigned from Plaintiff's board of directors by email, and Plaintiff accepted his resignation the same day. See Ex. 10. From that point forward, Mr. Kapoustine no longer owes any fiduciary duties to Plaintiff in the capacity of its director.

A director's fiduciary duties end upon resignation. *See* RCW 23B.08.300 (establishing that a director's fiduciary duties apply when the director is discharging the duties of office); *see also Tribal Behav. Health LLC v. Reeves*, No. CV-22-00926-PHX-SPL, 2022 U.S. Dist. LEXIS 112186, at *12 (D. Ariz. June 24, 2022) (fiduciary duties cease upon

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 9
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

resignation); *Lodis v. Corbis Holdings, Inc.*, 2010 Wash. Super. LEXIS 1842 (holding fiduciary duties ended when employment terminated). Further, where the parties' relationship turns adversarial, as here, any common law fiduciary duties are extinguished. *Guarino v. Interactive Objects, Inc.*, 122 Wn. App. 95, 129, 86 P.3d 1175 (2004) (the court held that once the parties become adversaries, no common law fiduciary duty remains).

Moreover, courts do not grant injunctive relief for past breaches absent ongoing harm. Injunctions are prospective, not punitive. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021) ("a person exposed to a risk of *future* harm may pursue *forward-looking*, injunctive relief… if the risk is sufficiently imminent and substantial") [emphasis added]. Courts in the Ninth Circuit consistently reject injunctions based on past wrongdoing absent evidence of continuing violation. In *Perrin Bernard Supowitz, LLC v. Morales*, the Ninth Circuit affirmed the denial of a preliminary injunction where former employees had allegedly misappropriated trade secrets, but no ongoing misuse was shown. The risk of harm had dissipated, and the court declined to "impede lawful competition" merely because prior misconduct may have occurred. No. 23-55189, 2023 WL 1415572, at *2-3 (9th Cir. Feb. 5, 2024). Likewise, in *Davis v. Cox*, the Washington Court of Appeals also denied injunctive relief against former directors, explaining that they no longer had any role in corporate governance, and therefore no ongoing ability to cause harm. No. 51770-1-II, 2020 Wash. App. LEXIS 377, at *11 (Feb. 19, 2020).

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 10
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

Here, Mr. Kapoustine no longer owes ongoing fiduciary duties to Plaintiff after his resignation effective on June 17, 2025. Like the defendants in *Davis v. Cox*, since his resignation from the Board, Mr. Kapoustine no longer has the capacity to interfere with Plaintiff's internal governance and therefore lacks the ability to cause future harm to Plaintiff as an insider of Plaintiff's governance. The legal basis for extending bullet-pointed Paragraph 3 of the TRO into a preliminary injunction must rest on something else—or it would not exist.

**B.    The Scope of the Injunction Should Exclude the Ban on Competition Because the PIIA's Non-Compete Clause Is Likely to Be Void and Unenforceable.**

Plaintiff's request to enjoin Mr. Kapoustine from engaging in any competing business also relies, in part, on a non-compete provision in the Proprietary Information and Inventions Agreement (the "PIIA") between the parties. *See* Ex. 4.[2] Mr. Kapoustine disagrees that he has ever been employed by Plaintiff as an employee. But even assuming Plaintiff can prove such employment, such non-compete provision is likely to be void and unenforceable under Washington's Noncompetition Covenants Act (RCW 49.62) for the following *independent* reasons:

---

[2] In its Motion for Preliminary Injunction, Plaintiff referenced this document as a "Employment Agreement" between the parties. Mr. Kapustin, based on the reasons provided in this Opposition, disagree with such characterization of document's nature, and will identify and refer to this document with its original and real name in this briefing.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 11
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1

2        First, RCW 49.62.020(1)(b) provides that a noncompetition covenant is

3    unenforceable unless the employee earned more than $100,000 per year from the

4    enforcing party (or $250,000 in the case of an independent contractor under RCW

5    49.02.030). Based on the W2 forms Mr. Kapoustine received from Plaintiffs in the years

6    2023 and 2024, Mr. Kapoustine's compensation ranged from $70,000 to $80,000, and did

7    not exceed that threshold. If the alleged employment could not be established, then

8

9    Plaintiff would have to prove that Mr. Kapoustine's earnings from Plaintiff to be more

10   than $250,000 under RCW 49.62.030(1). Unless Plaintiff can prove it paid compensation

11   in such amount Mr. Kapoustine, the non-compete provision is void on its face under this

12   statute.

13

14        Second, RCW 49.62.020(1)(a) requires the employer to disclose the terms of the

15   non-compete in writing before or at the time of the job offer, or to provide independent

16   consideration if the agreement is signed later. Here, the PIIA was presented to Mr.

17

18   Kapoustine and signed by him electronically on June 13, 2023, with a pack of documents

19   under the "Initial Board Consent" 3. Ex. 7. There is no indication that Mr. Kapoustine

20   ever received any formal or independent disclosure of such non-compete provision, and

21   there is no evidence showing that any separate compensation was paid to Mr. Kapoustine

22

23   specifically for agreeing to such non-compete provision. As a result, this requirement was

24   also likely not satisfied, and it *alone* can render the non-compete provision void.

25

26

27

28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 12
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1

2

3        Third, under RCW 49.62.020(1)(c), if a non-compete is to be enforced following a

4  layoff, the employer must pay the employee's base salary during the restriction period,

5  offset by other income. Alleging Mr. Kapoustine to be a former employee, Plaintiff

6  unilaterally terminated his alleged employment on February 11, 2025, without providing

7  any salary continuation. Although "layoff" is not defined in the statute, its ordinary

8  meaning (including definitions in Black's Law Dictionary) supports the view that

9  involuntary termination without cause, especially amid the employee's fault, qualifies.

10  Thus, this statutory provision *alone* may also bar enforcement.

11

12        While the 12-month duration of the restriction under the PIIA falls within the

13  presumptively reasonable limit under RCW 49.62.020(2), that alone is insufficient to save

14  the clause from statutory invalidity under the other provisions above.

15

16        Beyond these specific statutory violations, the public policy of Washington strongly

17  disfavors non-compete enforcement in circumstances like this. The Legislature has

18  declared that "workforce mobility is important to economic growth and development," and

19  that the Act is intended to facilitate mobility and protect employees. RCW 49.62.005.

20  Preventing Mr. Kapoustine from earning a living by building new technology using his

21  own pre-existing code would frustrate that purpose.

22

23        Accordingly, the non-compete provision in the PIIA is unlikely to supply the legal

24  basis the Court needs to extend the bullet-pointed Paragraph 3 of the TRO, i.e., the

25  blanket ban on "selling, offering for sale, marketing, or otherwise conducting business…

26

27

28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 13
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

in competition with DejaVuAI [Inc.]." No injunctive relief may rely on an invalid restrictive covenant.

**C.    Other than the Breach of Fiduciary Duty Claim, Plaintiff Has Not Established that It Will Likely Prevail on Any of Its Causes of Action.**

The Court entered the TRO *exclusively* based on the alleged violations of fiduciary duty owed by Mr. Kapoustine to Plaintiff as its director. Dkt 21, pp. 5-7. Other than this claim, Plaintiff has not offered sufficient evidence to establish that it will likely prevail on any other cause of action. On the contrary, the operating agreement of 1st1 Technologies LLP and the supporting materials for the partnership's petition for Mr. Kapoustine's O-1 visa, both signed by Mr. Kessler, clearly show that Mr. Kapoustine has been the sole inventor and owner of the DejavuAI technology and the underlying source code. See Ex. 1. It is also evident that ripe products based on Mr. Kapoustine's technology were already sold and had a great market in the United States *before* Plaintiff's incorporation. Whether the ownership of Mr. Kapoustine's technology, especially the source code that has been authored and maintained all by himself, has ever changed after Plaintiff's incorporation, or if Mr. Kapoustine has ever misappropriated any trade secret of Plaintiff's, remains disputed, if not strongly in favor of Mr. Kapoustine. Other than the breach of fiduciary duty, there is no other basis for the Court to enter a preliminary injunction broadly limiting Mr. Kapoustine's lawful competition with Plaintiff.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 14
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

**D.    Permitting Mr. Kapoustine to Independently Conduct Business Based on the Technology He Invented and Developed Before His Affiliation with Plaintiff Would Not Cause Irreparable Harm to Plaintiff, Even If It May Result in Competition with Plaintiff.**

Plaintiff has failed to show that allowing Mr. Kapoustine to continue using source code or technology he developed independently, before his affiliation with Plaintiff, would result in any irreparable harm. In fact, the record suggests that the technology Mr. Kapoustine is currently working with originated prior to the formation of DejavuAI and was developed outside the scope of any employment or fiduciary duty to Plaintiff or with 1st1 Technology. Plaintiff has not shown in its Motion for Temporary Restraining Order that it would prevail in its misappropriation of trade secret claim or any dispute relating to the ownership of the source code developed by Mr. Kapoustine independently.

To obtain a preliminary injunction, a plaintiff must demonstrate that it will suffer irreparable harm absent immediate court intervention. Mere speculation, economic loss, or ordinary competitive injury does not meet this standard. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (plaintiff must demonstrate "likely" irreparable harm, not mere conclusory allegations).

Here, Plaintiff has not identified any concrete or imminent harm resulting from Mr. Kapoustine's independent development efforts. Mr. Kapoustine is not attempting to contact customers, disparage the company, or interfere with its operations, conduct that

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 15
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

he does not oppose being enjoined. Rather, Mr. Kapoustine asserts that he should be allowed to use his own preexisting technology, developed well before Plaintiff or 1st1 were formed, and is now working on a distinct product based on that foundation.

The Court should not view fair, open market competition as a threat to causing irreparable harm to the Plaintiff. This principle was clearly affirmed in *Amazon.com, Inc. v. Powers*, 2012 U.S. Dist. LEXIS 182831, where this court declined to enforce a broad non-compete clause that would have barred a former Amazon executive from working at a competing company in the cloud computing space. The court held that while restrictions narrowly tailored to protect customer relationships may be enforceable, general bans on competition must be justified by concrete evidence. Amazon failed to demonstrate that Powers could not compete fairly, and the court emphasized that "a general ban on [his] competing against Amazon... is not a ban on unfair competition; it is a ban on competition generally," which the law does not permit.

Here, similar to the plaintiff in *Powers*, Plaintiff also asks the Court to adopt a sweeping prohibition that would prevent Mr. Kapoustine from engaging in any business that could arguably compete with DejaVuAI. But Plaintiff has not identified any specific client relationships, trade secrets, or business interests that would be jeopardized by Mr. Kapoustine's continued work. Rather, Mr. Kapoustine is seeking to develop technology based on source code he created before his affiliation with Plaintiff, and he has expressly agreed not to contact Plaintiff's customers, disparage the company, or interfere with its

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 16
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

operations. Just as in *Powers*, Plaintiff cannot eliminate future market competition merely by invoking a general concern over competitive harm. Without more, such speculative concerns cannot justify the extraordinary relief of a preliminary injunction.

### E.    Equitable Considerations Favor Mr. Kapoustine, Who Was Discharged Without Compensation and Would Be Barred from Using His Own Invention to Make an Earning and Support His Living.

The equity weighs strongly against maintaining the TRO's broad competition ban. Mr. Kapoustine was unilaterally terminated by Plaintiff without severance or continued pay, yet Plaintiff now seeks an injunction to enjoin him from using the technology he independently created, developed, and maintained way before having any involvement with Plaintiff, to support himself. Preventing Mr. Kapoustine from earning a livelihood and accumulating wealth during the entire period of this lawsuit based on his own technology (and the underlying source code) would be fundamentally unfair and inequitable.

Courts assessing injunctive relief consider whether the balance of hardships favors the moving party. Here, Plaintiff has not shown that it will suffer any actual harm if Mr. Kapoustine is allowed to continue independent development of his technology and lawfully conduct business based on it. In contrast, enforcing the broad competition bar, as entered in the TRO, would deprive Mr. Kapoustine of his right to pursue fair business opportunities and his ability to earn a living. Equity does not support such an outcome.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 17
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:  206-279-1965

1

2

3

**F.    No Public Interest Would Be Served by Banning Mr. Kapoustine from Competing Using His Own Preexisting Work.**

4

5

6

Washington law recognizes that workforce mobility and fair competition are in the public interest. RCW 49.62.005 expressly states that promoting employee mobility is

7

8

essential to economic growth and innovation. Enjoining Mr. Kapoustine from using source code and technology he developed prior to his affiliation with Plaintiff would not protect

9

10

trade secrets or prevent unfair competition—it would simply suppress lawful innovation and harm the public interest in open market participation.

11

12

13

Courts have repeatedly declined to use injunctive relief to restrain former employees or directors from competing, absent clear evidence of misuse of confidential

14

15

information or breach of enforceable agreements. E.g., *Powers*, 2012 U.S. Dist.. LEXIS 182831. Preventing a software engineer and an inventor of cutting-edge technology from

16

17

directly benefiting from his own work and own invention would only chill innovation and

18

overreach the proper scope of equitable relief.

19

20

21

**V.  CONCLUSION**

22

23

For the reasons discussed above, Plaintiff has not met its burden to justify extending the bullet-pointed Paragraph 3 of the TRO as part of any preliminary

24

25

injunction. Mr. Kapoustine has resigned from the board, eliminating any ongoing

26

fiduciary duties that would justify a competition ban; the alleged contractual constraints

27

28

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 18
Case No. 2:25-cv-00915-JNW

based on the PIIA are likely to be void and unenforceable. Plaintiff has not demonstrated a likelihood of success on its other cause of action, nor has it shown irreparable harm from Mr. Kapoustine's lawful competition with Plaintiff, if it ever occurs. The weighing of equity and public interest considerations strongly favors Mr. Kapoustine and against an overbroad injunction as requested by the Plaintiff.

Accordingly, the bullet-pointed Paragraph 3 of the TRO, or any similar language that would be a broad competition ban, should not be included in any preliminary injunction that may be entered by the Court. If the Court determines that some limitation on competition is warranted, Mr. Kapoustine requests that any such restriction be narrowly tailored in scope and duration to protect Plaintiff's proven and legitimate interests without unfairly impairing his ability to work on the technology that he independently invented and developed prior to his affiliation with Plaintiff, and to directly benefit from his technology and the source code by engaging in business and making an earning based on them.

**I certify that this memorandum contains 4,203 words, in compliance with the Local Civil Rules.**

DATED: July 14, 2025.

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 19
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:  206-279-1965

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHANZE PARTNERS PLLC


By:   _/s/ Zhizhou Wang_____
        Zhizhou Wang, WSBA #53166
        Xinyuan Zhang, WSBA #61313
        SHANZE PARTNERS PLLC
        701 5th Ave, Suite 4200
        Seattle, WA 98104
        leowang@shanzepartners.com
        echozhang@shanzepartners.com

DEFENDANT'S OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION - 20
Case No. 2:25-cv-00915-JNW

SHANZE PARTNERS PLLC
701 5th Avenue, Suite 4200
Seattle, WA 98104
Phone: 206-262-7488
Fax:   206-279-1965

1

2                              **<u>CERTIFICATE OF SERVICE</u>**

3

4          I hereby certify that on July 14, 2025, I caused the foregoing document to be

5   electronically filed with the Clerk of the Court using the CM/ECF system which will send

6   notification of the filing to all counsel of record.

7
           DATED this July 14, 2025, 2025.
8

9

10                                          Respectfully submitted,

11                                          Shanze Partners PLLC

12

13                                          */s/ Zhizhou Wang*
                                            Zhizhou Wang, WSBA #53166
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S OPPOSITION TO                              SHANZE PARTNERS PLLC
PLAINTIFF'S MOTION FOR                                 701 5th Avenue, Suite 4200
PRELIMINARY INJUNCTION - 21                            Seattle, WA 98104
Case No. 2:25-cv-00915-JNW                             Phone: 206-262-7488
                                                       Fax:   206-279-1965