The Honorable Jamal N. Whitehead

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| DEJAVUAI, INC., a Washington Corporation,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>FYODOR "TED" KAPUSTIN aka FYDOR "TED" KAPUSTINE, an individual,<br><br>Defendant/Counter-Plaintiff. | No. 2:25-cv-00915<br><br>DEJAVUAI'S RENEWED MOTION TO SEAL PORTIONS OF MOTION FOR TEMPORARY RESTRAINING ORDER AND RELATED DOCUMENTS<br><br>NOTE ON MOTION CALENDAR:<br>September 26, 2025 |

**INTRODUCTION AND RELIEF REQUESTED**

Plaintiff DejaVuAI, Inc. ("DejaVuAI" or the "Company") respectfully renews its request that the Court maintain under seal portions of its previously filed Motion for Temporary Restraining Order and Order to Show Cause ("Motion for TRO"), Dkt 5, and the declarations and exhibits in support thereof, Dkts 6-10.

The declaration and exhibits were highly relevant evidence that this Court considered and relied upon in granting DejaVuAI's Motion for TRO. But these filings contained both commercially sensitive information and libelous allegations Defendant Fedor "Ted" Kapoustine made to third parties regarding DejaVuAI and its officers and products. These false and defamatory allegations would damage the Company's reputation and business relationships if disseminated,

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NO. 2:25-CV-00915 - 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

including threatening sales and negotiations with investors that remain pending and are integral to the Company's success.[1]

Mr. Kapoustine previously attempted to intimidate DejaVuAI stakeholders by threatening to disseminate his false allegations in the media if the Company pursued this lawsuit to vindicate its rights. The Court's Temporary Restraining Order ("TRO") now prohibits him from fulfilling these extortionary threats, and the Court's public docket should not be used to indirectly accomplish what the TRO prohibits Mr. Kapoustine from doing directly. DejaVuAI accordingly requests that the redacted versions of the Motion for TRO, Dkt 10, and the declarations and exhibits in support thereof, Dkts 11-14, continue serving as the public versions of the filings.

## STATEMENT OF FACTS

**A. Background**

In 2020, Mr. Kapoustine founded 1st1 Technologies, LLP ("1st1" or the Partnership) with business partner Johnny Kessler. Kessler Decl., ¶ 2. Mr. Kessler and Mr. Kapoustine agreed that 1st1 would be partner-managed. *Id.* Mr. Kessler managed the business side of the enterprise, and Mr. Kapoustine managed 1st1's software development, developing commercial software for the Partnership based on an image recognition prototype software Mr. Kapoustine had created prior to 1st1's founding. *Id.*

Mr. Kapoustine is a native Russian and Canadian citizen, so he required an approved visa classification to work in the United States. *Id.* ¶ 3. The Partnership hired a reputable immigration law firm called Cascadia Cross-Border Law ("Cascadia") to assist them, and in mid-2022 the firm submitted an O-1 visa petition on 1st1's behalf to U.S. Citizenship and Immigration Services ("USCIS"). *Id.*

---

[1] Indeed, many of the same investment negotiations that were pending when DejaVuAI filed its original Motion to Seal Portions of the Motion for TRO and Related Documents (the "Original Motion to Seal"), Dkt. 4, remain pending today because Mr. Kapoustine is using his position at DejaVuAI's majority shareholder to prevent them from moving forward, objecting to the Company raising necessary operating capital on the express ground that a portion may be used to litigate against him. *See* Declaration of Johnny Kessler ("Kessler Decl.") ¶¶ 16-17.

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 2

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Mr. Kessler and Mr. Kapoustine's business needed funding to grow, so in 2022 the partners agreed to restructure so that they could raise capital by selling equity to third-party investors. *Id.* ¶ 4. They founded DejaVuAI as a majority owned subsidiary of 1st1 and transferred substantially all 1st1's assets and operations to DejaVuAI. *Id.* Mr. Kessler and Mr. Kapoustine assigned DejaVuAI all of 1st1's trademarks related to the software the Company had developed, and they executed an exclusive, perpetual, irrevocable licensing agreement between 1st1 and DejaVuAI that granted DejaVuAI all relevant licensing rights to 1st1's software and algorithms a provided that DejaVuAI would own any new versions or improvements the Company. *Id.* ¶¶ 4-5. 1st1 is now a holding company, and DejaVuAI is the operating entity. *Id.* ¶ 4.

Mr. Kessler and Mr. Kapoustine were appointed to DejaVuAI's Board of Directors. *Id.* ¶ 6. In their capacity as Board Members, they approved their own appointment as officers of the Company, Mr. Kessler becoming the new Company's Chief Executive Officer and Mr. Kapoustine becoming its Chief Technology Officer. *Id.* Mr. Kapoustine also signed a Proprietary Information and Invention Assignment Agreement employment agreement that assigned DejaVuAI all his inventions related to the Company's business, including any new inventions he created while employed at the Company. *Id.* ¶ 7. The sole prior invention related to DejaVuAI's business that was exempted was the software 1st1 had developed that the Partnership had irrevocably licensed to DejaVuAI in the Licensing Agreement. *Id.* Mr. Kapoustine's contract reaffirmed that license, stating that DejaVuAI would have perpetual, irrevocable rights to any of 1st1's software that Mr. Kapoustine incorporated into a DejaVuAI product or process. *Id.*

Shortly after DejaVuAI was founded, Cascadia prepared and submitted the appropriate forms and documentation on behalf of DejaVuAI to alert USCIS that 1st1 had restructured and Mr. Kapoustine would be working for its majority-owned and controlled subsidiary, DejaVuAI. *Id.* ¶ 8. USCIS granted the petition several months later, approving Mr. Kapoustine's O-1 visa classification. *Id.*

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 3

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

Beginning in late 2023, a series of disputes arose between Mr. Kessler and Mr. Kapoustine regarding DejaVuAI. These conflicts culminated in early 2025 when Mr. Kapoustine began claiming sole personal ownership of the software he had licensed and contractually assigned to DejaVuAI. *Id.* ¶ 10. After Mr. Kapoustine threatened to delete or publish the source code to DejaVuAI's software, which was stored on the employee computer at his residence, DejaVuAI instructed him to turn a copy over to other Company personnel. *Id.* Mr. Kapoustine refused, and DejaVuAI was forced to terminate his employment. *Id.*

Over the following months, Mr. Kapoustine used DejaVuAI's confidential information to contact numerous current and prospective customers, employees, vendors, investors, and other parties to make inaccurate and defamatory claims regarding DejaVuAI and its officers in order to convince these parties to cease doing business with the Company and support his unlawful competing venture.[2] *Id.* ¶ 11. In many of these contacts, Kapoustine relayed a conspiracy theory that DejaVuAI and its officers are involved in an elaborate plot to "steal" the software that DejaVuAI paid Mr. Kapoustine to develop for the Company. *Id.* ¶ 12. Mr. Kapoustine also attempted to extort DejaVuAI's investors to prevent DejaVuAI from vindicating its legal rights, threatening to disseminate his defamatory claims to the media if DejaVuAI filed a lawsuit against him. *Id.* ¶ 15, Ex. A ("[I]f DejaVuAI, Inc. sue me [sic] or I sue DejaVuAI, Inc., the whole story and your names will pop up on social media and in the news (I will take care of this). Do you really want this?").

**B. Procedural History**

Mr. Kapoustine's conduct threatened major product sales and financing transactions that were integral to the Company's future success. Dkt 21 at 8-10. He refused to comply with a cease-and-desist letter, so on May 14, 2025, DejaVuAI filed this lawsuit and a Motion for TRO to enjoin his unlawful actions. Dkts 5, 10. To prevent Mr. Kapoustine's defamatory allegations from being

---

[2] This improper conduct is described in detail in the Motion for TRO and supporting declarations that are the subject of this motion. *See* Dkts 5-14.

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 4

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

further disseminated, DejaVuAI filed the Original Motion to Seal seeking to keep portions of the Motion for TRO and supporting documents from appearing on the Court's public docket. Dkt 4. Given Mr. Kapoustine's threats to disseminate the precise defamatory allegations that DejaVuAI sought to seal in in the media if DejaVuAI filed suit, DejaVuAI determined that meeting and conferring with him as required by LCR 5(g)(3)(A) would be futile and likely result in irreparable harm, so DejaVuAI included in the Original Motion to Seal a request that the requirement be waived for good cause. *Id.* at 5 n.4.

On May 22, 2025, the Court granted DejaVuAI's Motion for TRO and issued a TRO enjoining Mr. Kapoustine from, among other things, contact DejaVuAI's current or prospective business contacts, disparaging the Company or its officers, or interfering with DejaVuAI's operations. Dkt 21 at 12.

On August 6, the Court issued an order denying the Original Motion to Seal that granted DejaVuAI leave to renew the motion within 30 days. Dkt 54. Although the Court "recogniz[ed] the likelihood that [DejaVuAI] can show a compelling interest in the underlying information remaining under seal," the Court ruled that LCR 5(g)(3)(A) "contains no good cause exception." *Id.* at 2, 3. Because the risk of Mr. Kapoustine fulfilling his threats to disseminate his defamatory allegations in the media were mitigated by the TRO's prohibition on disparaging the Company and its officers, the Court ruled that there were no longer any obstacles to DejaVuAI fulfilling the requirement to meet and confer with him regarding sealing. *Id.* at 3. The Court thus ruled that DejaVuAI could file a renewed motion within 30 days with the required LCR 5(g)(3)(A) certification that counsel had met and conferred regarding the sealing, and it directed the Clerk to maintain the documents at issue under seal pending resolution of DejaVuAI's renewed motion.[3] *Id.* at 3-4.

---

[3] The Court's order technically directs the Clerk to maintain the documents under seal during the 30 days within which it permitted DejaVuAI to file a renewed motion. Dkt 54 at 4. DejaVuAI respectfully presumes this should be interpreted as a direction to maintain the documents under seal until a renewed motion filed within that period is resolved to effectuate the intent of the ruling.

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 5

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

DejaVuAI continues to have a real and imminent fear that, if disseminated, Mr. Kapoustine's false and defamatory claims would threaten ongoing sale and investment negotiations, as well as damage the current and future professional reputation and business relationships of DejaVuAI and individuals associated with the Company. Kessler Decl. ¶ 16.

### STATEMENT OF ISSUES

**A. Should the court permit DejaVuAI to file portions of its Motion for a Temporary Restraining Order, the declarations in support thereof, and the accompanying exhibits under seal?**

### EVIDENCE RELIED ON

This motion relies upon the declaration of Johnny Kessler and accompanying exhibits,[4] as well as the Verified Complaint and the previously submitted filings and evidence on the Court's docket.

### ARGUMENT

**A. Legal Standard**

This Court's local rules and precedents recognize that a party may rebut the strong presumption of public access to court records when sufficient reasons exist for keeping all or part of a filing confidential. *See* LCR 5(g). "To overcome" the presumption that court filings are open to the public, "a party must show 'good cause' for sealing a document attached to a non-dispositive motion and 'compelling reasons' to seal a document attached to a dispositive motion." *Next Level Ventures, LLC v. Avid Holdings Ltd.*, No. C22-1083-JCC, 2023 WL 3382539, at *5 (W.D. Wash. May 11, 2023) (citing *Kamakana v. City of Honolulu*, 447 F.3d 1172, 1178-81 (9th. Cir. 2006)). Courts in the Ninth Circuit do not apply the dispositive/non-dispositive distinction rigidly. *See Ctr.*

---

Should the Clerk disagree, DejaVuAI requests that Clerk notify DejaVuAI prior to unsealing the documents to allow time for an emergency motion.

[4] To minimize the number of documents to be filed under seal and duplication, Mr. Kessler's declaration cross-references the declarations and exhibits filed in support of DejaVuAI's previously filed Motion for TRO rather than duplicating the relevant information and exhibits.

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 6

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

*for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016). Motions for preliminary relief are not "dispositive" in the literal sense, but courts may still require "compelling reasons" to seal documents related to such motions when the motion is "more than tangentially related to the merits" of the underlying case. *Id.*

Under LCR 5(g)(3)(B), a party seeking to file under seal must explain the following:

1. The legitimate private or public interests that warrant the relief sought;

2. The injury that will result if the relief sought is not granted; and

3. Why a less restrictive alternative to the relief sought is not sufficient.

Each of these factors weigh in favor of sealing the documents at issue here. Even if the Court determines DejaVuAI's Motion for TRO is sufficiently related to the merits of this suit to require a higher showing, compelling reasons exist for allowing DejaVuAI to file under seal.

**B. DejaVuAI has a Strong Legitimate Interest in Keeping the Declaration and Exhibits Confidential, While the Public has Little Interest in Accessing the False Information**

This Court has recognized that parties have a sufficiently strong interest in their good will, reputation, and relationships to justify sealing court records to prevent the dissemination of libel. *See Russell v. Samec*, No. 220CV00263RSMJRC, 2020 WL 3574270, at *1 (W.D. Wash. July 1, 2020) ("Although mere 'embarrassment' from production of records [is] not a compelling reason to seal records, that the records 'might' become a vehicle to 'circulate libelous statements' would be a compelling reason." (quoting *Kamakana*, 447 F.3d at 1178)). Mr. Kapoustine's allegations are false and libelous. *See* Dkt 5 at 5, n. 2. That has been proven through the evidence submitted with subsequent filings. *See* Dkts 46-51; 64-66. Regardless, it is not necessary at this juncture for the Court to determine whether they are *actually* "defamatory, outrageous, or otherwise tortious" in order to justify sealing—often, "that [question] is the subject of the litigation." *Id.* So long as "the Court 'might' find that the [materials] are defamatory, such is a compelling reason to seal them in this litigation." *Id.*

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 7

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

The general public has little to no legitimate interest in accessing the information that DejaVuAI proposes to seal. The information is false and defamatory, and defamation is a well-established historical exception to the First Amendment, which is the ultimate source of the public's right to access court records. *See United States v. Stevens*, 559 U.S. 460, 468 (2010) (noting defamation exception to First Amendment); *Civil Beat Law Ctr. for Pub. Interest, Inc. v. Maile*, 117 F.4th 1200, 1208 (9th Cir. 2024) (noting right of access derives from First Amendment). DejaVuAI and its officers are not public figures whose affairs are of great legitimate interest to the public. They have never "thrust [themselves] to the forefront" of a "public controversy" "in order to influence the resolution of the issues involved," *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 267 (9th Cir. 2013), nor have they "achieved such pervasive fame or notoriety that [they] become[] a public figure for all purposes and in all contexts," *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (1974). They are a closely held corporation whose shares are not publicly traded, as well as private individuals who have "not accepted public office or assumed [any] influential role in ordering society." *id.* at 345. The public thus has little if any need to access the information for purposes of public discourse. *Cf. Blackstone Int'l, Ltd. v. E2 Ltd.*, No. C20-1686 TSZ, 2022 WL 16553034, at *6 (W.D. Wash. Oct. 31, 2022) (noting plaintiffs "claim concerns no more than alleged business-to-business defamation and tortious interference with a contract, which does not affect the public interest").

The information is also not necessary for the public to "understand[] the judicial process," *Kamakana*, 447 F.3d at 1179, as it was of minimal relevance to the disposition of DejaVuAI's motion for a temporary restraining order. Even if Mr. Kapoustine's defamatory allegations were true (and they are not), they would not excuse the contractual and fiduciary violations that were the basis for DejaVuAI's motion. Mr. Kapoustine's fiduciary duty would have been to bring his concerns to the rest of the Board of Directors and/or DejaVuAI's shareholders for investigation. He would have still been legally obligated to act in DejaVuAI's best interest and prohibited from intentionally seeking to disrupt its operations and business relationships. The public thus does not

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 8

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

need to know the specific content of Mr. Kapoustine's allegations to understand the Court's evaluation.

**C. DejaVuAI would Suffer Significant Harm from Disclosure of the Confidential and Commercially Sensitive Information**

"In general, 'compelling reasons' sufficient to outweigh the public's interest in disclosure and justify sealing court records exist when such 'court files might have become a vehicle for improper purposes,' such as the use of records to gratify private spite, promote public scandal, circulate libelous statements[.]'" *Kamakana*, 447 F.3d at 1179 (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978). DejaVuAI remains in the midst of negotiating numerous product sales and investment transactions that could fall through if Mr. Kapoustine's false allegations were publicized. Kessler Decl. ¶ 16. Many of the same investment negotiations that were pending when DejaVuAI filed the Original Motion to Seal remain pending today because Mr. Kapoustine's improper attempts to stop this litigation have continued through other channels. He is using a possible blocking position created through ambiguities in the language of 1st1's Operating Agreement to prevent these deals from moving forward, stating outright that he does not wish the Company to obtain necessary financing if a portion will fund this lawsuit. *Id.* ¶ 17.

Given the nature of many of DejaVuAI's clients and Mr. Kapoustine's allegations, publicization is particularly likely to harm DejaVuAI's business relationships. *Id.* ¶ 14. Moreover, the Court's records would remain public indefinitely and continue to damage the reputation and business interests of DejaVuAI and its officers in the future, even after they prove the falsity of the allegations and obtain legal redress; those that encounter them will not always do the follow up research to learn the allegations were refuted.

Indeed, this Court already found that DejaVuAI would suffer irreparable harm if Mr. Kapoustine were to continue disseminating these exact allegations himself and granted a TRO to prevent him from doing so. Dkt 21 at 8-9. Mr. Kapoustine should not be allowed to perversely

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 9

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

utilize the Court to do precisely what the Court ordered him not to do: publicize his scurrilous conspiracy theory.

**D. No Less Restrictive Alternative Would Be Sufficient to Protect DejaVuAI's Interests**

Finally, no less restrictive alternative to the proposed sealing would sufficiently guard against the harms described above. DejaVuAI has reviewed the declaration and exhibits carefully, erring on the side of disclosure by limiting the proposed redactions to only the information that would cause significant damage to its reputation and business relationships. DejaVuAI respectfully proposes sealing an entire document only when it is absolutely necessary because disclosure of the document's existence would necessarily disclose the general nature of the other sealed material. DejaVuAI also endeavored to draft its Motion for TRO with as few references to the sealed material as possible, minimizing the need to redact portions of its memorandum of law. The Company respectfully submits that the proposed sealing provides the public with the most access feasible while still protecting DejaVuAI's important interests.

## CONCLUSION

For the foregoing reasons, DejaVuAI respectfully submits that the Court should grant this motion and continue maintaining the referenced documents under seal.

I certify that this memorandum contains 3,234 words, in compliance with the Local Civil Rules.

I further certify that on August 18, 2025, DejaVuAI's counsel emailed Mr. Kapoustine's counsel seeking to schedule a conference regarding a renewed motion to seal. Counsel met and conferred via video conferencing software on August 27 regarding the topics listed in LCR 5(G)(3)(A). Mr. Kapoustine declined to stipulate to the entirety of the material at issue in the Original Motion to Seal remaining sealed and requested that DejaVuAI clarify its position on whether certain documents must remain sealed in their entirety. On August 29, DejaVuAI's counsel sent counsel for Mr. Kapoustine an email confirming DejaVuAI was firm regarding the

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 10

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

1  sealing of the documents at issue. DejaVuAI's counsel requested a list of other documents or
2  redactions Mr. Kapoustine believed were inappropriately sealed to see if an agreement could be
3  reached. Mr. Kapoustine's counsel responded indicating he would follow up regarding whether a
4  counterproposal would be forthcoming. As of this filing, Mr. Kapoustine has not provided a
5  counterproposal, so DejaVuAI adheres to its original request.

6  DATED this 5th day of September, 2025

Respectfully submitted,

K&L GATES LLP

By: /s/Spencer McCandless
   John T. Bender, WSBA # 49658
Spencer McCandless, WSBA # 60871

925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: John.Bender@klgates.com
       Spencer.McCandless@klgates.com

Attorneys for Plaintiff DejaVuAI, Inc.

DEJAVUAI'S RENEWED MOTION TO SEAL
CASE NUMBER 2:25-CV-00915 - 11

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: +1 206 623 7580
FACSIMILE: +1 206 623 7022

**CERTIFICATE OF SERVICE**

I certify that on this date I arranged for a copy of the foregoing document to be served on the parties listed below as indicated:

**VIA ELECTRONIC COURT SERVICE**

Zizhou Wang
Xinyuan Zhang
Shanze Partners PLLC
701 5th Ave, Suite 4200
Seattle, WA 98104

*Attorneys for Attorneys for Defendant/Counter-Plaintiff Fedor Kapoustine*

DATED this 5th day of September, 2025.

Respectfully submitted,

K&L GATES LLP

By: */s/ Spencer McCandless*
    Spencer McCandless
925 Fourth Avenue
Suite 2900
Seattle, Washington  98104-1158
Tel: +1 206 623 7580
Fax: +1 206 623 7022
Email: Spencer.McCandless@klgates.com

- 1

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE:  +1 206 623 7580
FACSIMILE: +1 206 623 7022