1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEJAVUAI INC.,

                    Plaintiff,

          v.

FYODOR KAPUSTIN also known as
TED also known as FYODOR
KAPUSTINE,

                    Defendant.

CASE NO. 2:25-cv-00915-JNW

ORDER

## 1. INTRODUCTION

Plaintiff DejaVuAI, Inc.'s motion to compel arbitration and stay certain claims comes before the Court. Dkt. No. 37. DejaVuAI moves to stay and compel arbitration of Counts III (breach of contract) and V (misappropriation of trade secrets) of the Complaint and Counterclaim Count I (unjust enrichment). *Id*. at 1. For the reasons below, the Court GRANTS IN PART the motion, directs the Parties to arbitrate the requested claims, and stays this case pending arbitration.

1

## 2. BACKGROUND

This case concerns an ownership dispute over artificial intelligence-powered image recognition software and alleged trade secret misappropriation. Defendant Fyodor Kapoustine, a Canadian software developer, claims individual ownership of the DejaVuAI technology based on his original prototype, while Plaintiff DejaVuAI asserts ownership through agreements executed when the parties restructured their business relationship between 2020 and 2022. In 2022, the partners formed a Washington corporation, DejaVuAI, Inc., to develop and sell DejaVuAI technology; co-founder Johnny Kessler served as its CEO, while Kapoustine served as its CTO. To implement the restructuring, they signed agreements including employment agreements and Proprietary Information And Invention Assignment Agreements ("PIIAAs").

In 2024, disputes began emerging over intellectual property rights to DejaVuAI technology. Kapoustine began claiming to investors, employees, and customers that he owned it individually, while Kessler asserted that DejaVuAI was the owner and developer. By February 2025, tensions had boiled over, and DejaVuAI terminated Kapoustine's employment as CTO—though he remained on DejaVuAI's board of directors. According to DejaVuAI, Kapoustine began misusing his knowledge of DejaVuAI trade secrets to update DejaVuAI technology and to urge numerous customers and employees to cut ties with DejaVuAI. Dkt. No. 13-2 at 2. He also communicated with DejaVuAI customers with the "goal" of "inform[ing] [those] customers that they may participating [sic] in violating [his] copyright on DejaVuAI technology.'" Dkt. No. 7-13.

On May 14, 2025, DejaVuAI sued Kapoustine for breach of fiduciary duties, tortious interference with a contract or business expectancy, breach of contract for breaching his employment agreement and PIIAA, breach of contract for breaching a purported escrow agreement, and misappropriation of trade secrets. Dkt No. 1 at 10–15. The Court issued a TRO on May 22, 2025, and subsequently issued a preliminary injunction. Dkt. Nos. 21; 69.

## 3.  DISCUSSION

### 3.1  The Parties must arbitrate claims III and V and Kapoustine's counterclaim.

DejaVuAI asserts that claims III and V of its Complaint and Kapoustine's Counterclaim Count I are subject to the Parties' arbitration agreement. Kapoustine did not respond or oppose the motion. Under the Local Civil Rules, "[e]xcept for motions for summary judgment, if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit." LCR 7(b)(2).

Notably, Kapoustine does not appear to contest arbitration. In his opposition to DejaVuAI's earlier filed TRO motion, Kapoustine stated that "this whole proceeding should be referred to arbitration per Item 10 of the Proprietary Information and Invention Assignment Agreement[.]" Dkt. No. 20 at 1. This shows that Kapoustine views the arbitration agreement as encompassing the entirety of the parties' dispute.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

Accordingly, the Court finds that the motion has merit and orders the parties to arbitrate claims III and V, as well as Kapoustine's counterclaim. Those claims are stayed pending arbitration.

### 3.2    This matter is stayed pending arbitration.

"The FAA mandates that the Court stay an action 'where [it] is brought by a signatory to an arbitration agreement against another signatory to that agreement, on claims subject to that agreement.'" *Maguir Ins. Agency, Inc. v. Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1327 (W.D. Wash. 2023) (quoting *Ballard v. Corinthian Colls., Inc.*, No. C06-5256-FDB, 2006 WL 2380668, at *2 (W.D. Wash. Aug. 16, 2006)); *see* 9 U.S.C. § 3. Here, DejaVuAI asks that the Court stay only the arbitrable claims and not the remaining claims. Whether to proceed with the non-arbitrable claims lies within the sound discretion of the trial court. *United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 F. App'x 412, 415 (9th Cir. 2002) (unpublished). However, "[t]he Ninth Circuit has noted a preference for proceeding with the non-arbitrable claims when feasible." *Cal. Crane Sch., Inc. v. Google LLC*, 621 F. Supp. 3d 1024, 1033 (N.D. Cal. 2022) (citation modified). And generally, "[e]xpanding the stay, so as to encompass all of the nonarbitrable claims . . . , is only appropriate where the arbitrable claims predominate, or where the outcome of the nonarbitrable claims will depend on the arbitrator's decision." *United Commc'ns Hub, Inc.*, 46 F. App'x at 415 (quoting *Simitar Ent., Inc. v. Silva Ent., Inc.*, 44 F. Supp. 2d 986, 997 (D. Minn. 1999)) (citation modified). As one court in this district has noted, "[c]ourts typically decline to stay cases when the arbitrable claims have no bearing on the

nonarbitrable claims, and when other non-signatory plaintiffs will be prejudiced by a stay." *Maguire Ins. Agency, Inc. v. Amynta Agency, Inc.*, 652 F. Supp. 3d 1313, 1328–29 (W.D. Wash. 2023) (emphasis removed) (collecting cases).

The Court considers the nature of the remaining, nonarbitrable claims to decide whether a stay is appropriate. DejaVuAI may establish its first claim by showing that Kapoustine breached his fiduciary duties through "(1) 'intentional misconduct,' (2) 'a knowing violation of law,' (3) 'conduct violating RCW 23B.08.310' (which includes discharging duties in good faith under RCW 23B.08.300) or (4) 'any transaction from which the director will personally receive a benefit in money, property, or services to which the director is not legally entitled.'" *Grassmueck v. Barnett*, 281 F. Supp. 2d 1227, 1233 (W.D. Wash. 2003) (quoting RCW 23B.08.320).

DejaVuAI's second claim, tortious interference with a contract or business expectancy, requires DejaVuAI to show: "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 144 P.3d 276, 280 (Wash. 2006) (en banc) (citation omitted).

DejaVuAI argues that its first and second claims are not intertwined with or factually dependent on its arbitrable breach-of-contract or trade secret claims. Rather, it asserts that these first two claims are "based [solely] on Mr. Kapustin's contacting DejaVuAI's current and prospective customers, vendors, employees,

resellers, and investors; falsely reporting to them that DejaVuAI was on the verge of bankruptcy; and urging them to cease doing business with DejaVuAI." Dkt. No. 37 at 11. But the scope of DejaVuAI's first two claims is broader than that. Indeed, DejaVuAI has argued that Kapoustine breached his fiduciary duties and tortiously interfered with its business expectancies by encouraging clients to stop doing business with the company because it "did not have rights" to DejaVuAI technology. *See* Dkt. No. 10 at 5. Moreover, the company plainly challenges Kapoustine's decision to communicate with its customers with the "goal" of "inform[ing] [those] customers that they may participating [sic] in violating [his] copyright on DejaVuAI technology.'" *Id*. at 6. (quoting Dkt. No. 7-13).

On review of the record, this case revolves around the Parties' trade secret dispute and ownership of the disputed technology, which will be resolved through arbitration. Here, a decision about DejaVuAI's trade secret and breach of contract (PIIAA) claim will necessarily inform and shape the factual background for DejaVuAI's first two claims. For example, whether Kapoustine owns the trade secrets at issue may inform whether certain communications with DejaVuAI clients were "for an improper purpose," and thus whether they constitute tortious interference. *See Greensun Grp., LLC v. City of Bellevue*, 436 P.3d 397, 405 (Wash. Ct. App. 2019). It may also inform whether certain communications with investors and clients constitute "intentional misconduct" or "knowing violation[s] of law" for purposes of DejaVuAI's fiduciary duties claim. *See Grassmueck*, 281 F. Supp. 2d at 1233. Accordingly, the Court finds that the outcome of DejaVuAI's trade secret and breach-of-contract (PIIAA) claims will likely impact its breach-of-fiduciary-duties

1    claim and tortious interference claim. "At the very least, concurrent adjudication of

2    the underlying factual premise would risk inconsistency between the arbitrator's

3    decision and that of the Court." *Maguire Ins. Agency, Inc.*, 652 F. Supp. 3d at 1328.

4    Thus, staying these claims pending arbitration is appropriate.

5         DejaVuAI's fourth claim alleges Kapoustine breached an escrow agreement

6    that the Parties purportedly entered. According to DejaVuAI, after Kapoustine's

7    termination, the Parties agreed that he would deposit a copy of the source code with

8    a neutral third-party escrow agent to ensure its security, but Kapoustine reneged on

9    that promise. Dkt. No. 1 at 14. Based on the record and the way the Parties have

10   articulated their cases up to this point, the Court finds that DejaVuAI's other

11   claims, including its arbitrable claims predominate over its escrow contract claim.

12   Indeed, this claim has not been briefed before now, despite the issuance of a TRO

13   and preliminary injunction. The Court further concludes that judicial economy is

14   best served by staying DejaVuAI's claims pending arbitration. *See Maguire Ins.*

15   *Agency, Inc.*, 652 F. Supp. 3d at 1328 (citing *U.S. for Use & Benefit of Newton v.*

16   *Neumann Caribbean Int'l, Ltd.*, 750 F.2d 1422, 1427 (9th Cir. 1985) (district court

17   did not err in staying nonarbitrable claims because "there were ample reasons for

18   avoiding a duplication of effort in trying simultaneously, or even successively, the

19   issues" and "[c]onsiderations of economy and efficiency fully support[ed] the District

20   Court's determination" that the nonarbitrable claims must await the arbitrator's

21   final determination)).

22        Proceeding on these claims while the ownership dispute is being arbitrated

23   would be an inefficient use of judicial resources and would risk the Court making

factual and legal determinations that conflict with the arbitrator's resolution of the parties' core dispute.

### 3.3    The Preliminary Injunction remains in effect during the stay.

The preliminary injunction entered by this Court, Dkt. No. 69, remains in effect during the stay. Section 10(f) of the PIIAA provides that DejaVuAI is "entitled (without limitation of any other rights or remedies otherwise available to the Company) to obtain an injunction from any court of competent jurisdiction prohibiting the continuance or recurrence of any . . . breach of this Agreement." Dkt. No. 38-4 at 7. This provision—and the Court's ruling here—preserves the Court's jurisdiction over requests to modify or dissolve preliminary relief during the pendency of arbitration. Either party may move to modify or dissolve the preliminary injunction during the stay.

## 4.  CONCLUSION

Accordingly, the Court GRANTS IN PART DejaVuAI's motion to compel arbitration and stay certain claims. Dkt. No. 37. The Parties are ORDERED to arbitrate Plaintiff's claims III and V and Defendant's unjust enrichment counterclaim. This matter is STAYED pending arbitration. The Parties are DIRECTED to file a joint status report within ten days of the completion of arbitration proceedings.

Dated this 8th day of October, 2025.

Jamal N. Whitehead
United States District Judge

ORDER - 9