**Fedor Kapoustine**
**(address withheld for security reasons)**
**Canada**
**Telephone: +1(425)240-4627**
**Email: ted.lkapustin@pm.me**
FEDOR KAPOUSTINE, PRO SE

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF WASHINGTON**
**COUNTY OF - SEATTLE DIVISION**

**DEJAVUAI, INC.**
Plaintiff,

vs.

**FEDOR KAPOUSTINE**
Defendant

Case No.: 2:25-cv-00915-JNW

**EXHIBIT INDEX AND COVER SHEETS IN SUPPORT OF DEFENDANT'S COMBINED MOTION TO LIFT STAY AND DISMISS WITH PREJUDICE UNDER FRCP 41(b)**

**Judge: Hon. Jamal N. Whitehead**

## EXHIBIT INDEX AND COVER SHEETS

Defendant Fedor Kapoustine respectfully submits the following exhibits in support of his Combined Motion to Lift Stay and Dismiss With Prejudice Under FRCP 41(b):

### EXHIBIT INDEX

**Exhibit A:** A screenshot of article by Mark Kaufman published on LinkedIn that contains defamatory and false information about me.

**Exhibit B:** My communication with Mr. Kaufman asking him to remove the above article.

**Exhibit C:** A Web page published on Plaintiff's website www.dejavusi.co that contains false and defamatory information about me.

**Exhibit D:** Excerpts from Defendant's Opening Brief in Case No. 25-743, filed April 22, 2026 with the US Court of Appeals for the 9th Circuit. These excerpts addresses plaintiff's failure to initiate arbitration as required by the October 8, 2025 order and are relevant to the motion to dismiss for failure to prosecute.

DATED:September 16. 2026

__/s/_ Fedor Kapoustine__

Fedor Kapoustine

Defendant Pro Se

# Exhibit A

https://www.linkedin.com/pulse/inventor-sells-creation-wants-back-mark-kaufman-1dtne InPrivate

LinkedIn Top Content People Learning Jobs Games Join now Sign in

# Inventor Sells Creation, Wants It Back

Mark Kaufman
Published Oct 8, 2025

+ Follow

*DejaVuAI v. Kapustin* is a case from the Western District of Washington that began as a claim of breach of fiduciary duty and became a case about the misappropriation of trade secrets under the Defend Trade Secrets Act (DTSA). At issue here was a motion to convert Additionally, the parties entered into a separate licensing agreement stipulating that DejaVuAI would own any improvements or updates to the prototype and had a perpetual term with no right of termination, except upon the company's dissolution.

Lastly, the parties entered into an even more explicit agreement governing Kapoustine's improvements to the original software: a "proprietary information and invention assignment agreement" (PIIAA). The PIIAA between Kapoustine and DejaVuAI again enshrined the concept that ownership of the prototype was distinct from ownership of its later iterations and improvements.

In the first of two somewhat desperate defenses, the defendant claimed he never signed the license agreement and suggested that the plaintiff forged his signature. (Footnote: Don't rely on a defense that requires a handwriting expert.) The court said this defense strained credulity given the other agreements that Kapoustine admitted to have signed, which clearly contemplated the license agreement being part of his corporate role.

Another unusual defense was defendant's contesting his own immigration status. By arguing that he could not have been a legitimate employee, Kapoustin tried to argue that his work could not have been the product of an employee's work made for hire. The court noted that there was no precedent suggesting that it could invalidate or approve a petition for immigration status in a trade secret dispute.

The court issued the preliminary injunction. Kapoustine was enjoined from selling, marketing, and developing the software that he was the first to invent. He was also prevented from disparaging DejaVuAI and soliciting its employees while the case grinds on. (I would imagine that employees would not be eager to follow him after this decision, indicating he's likely to be held liable for infringing the trade secrets of their current employer.)

What seemed like a simple case of the defendant failing to read what he signed turned into a drawn-out litigation full of unforced blunders, like calling into question his own immigration status. Because the devil lies in the details, it would have been worthwhile to consider the details more carefully before signing on the dotted line.

# Exhibit B

**Ted Kapustin** <ted.kapustin@gmail.com> Nov 24, 2025, 9:04 PM
to info

Hello again, Mr. Kaufmann,

So, there are two possibilities: you either didn't know what you were writing about, or Kessler hired you. If it's the former, then I recommend that you read a draft of one of my declarations (attached). Unfortunately, my lawyer removed 90% of its content and replaced it with his own fantasy. And of course, the judge is biased (he probably thinks he is doing something good for the country when he helps the fraudster steal my technology from me).
I NEVER sold, licensed or transferred my technology to 1st1 Technologies, LLP, DejaVuAI, Inc. or someone else. Kessler has no chance to win this lawsuit, even with a biased judge. But he has a good chance to go to prison for the crimes that he committed.
Let me know if you want to see all the exhibits mentioned in the draft.
And I will appreciate it if you remove your nonsense article from LinkedIn.

Thanks,
Ted

On Sun, Nov 23, 2025 at 10:22 PM Ted Kapustin <ted.kapustin@gmail.com> wrote:

> Hello Mr. Kaufman,
> I have just read your article:
>
> https://www.linkedin.com/pulse/inventor-sells-creation-wants-back-mark-kaufman-1dtne/
>
> Thanks for the free advertisement! Unfortunately, you absolutely don't know what you are writing about. Did the fraudster (Kessler) hire you? I never sold or even licensed my invention to anyone. This lawsuit is a 100% scam. Contact me, and I will provide you with a link to a trove of unredacted documents that prove that Kessler is a criminal who committed several federal frauds and a federal perjury. But thanks to Judge Whitehead who, apparently, received instructions from DC where Kessler has multiple contacts, Kessler may get away with his crimes. But in any case, he will not get my source codes. DekaVuAi, Inc. keeps selling the outdated and buggy executables they stole from me more than a year ago, but this won't last forever. The company will eventually go bankrupt if it does not license my software.
>
> Ted (Fedor Kapoustine)
> (425)240-4627

# Exhibit C

https://dejavuai.co/news/further-statement-regarding-false-and-defamatory-claims/

DejaVuAI

Contact us

Company News

# Further Statement Regarding False and Defamatory Claims

March 24, 2026

FOR IMMEDIATE RELEASE

A Former Employee, Fyodor ("Ted") Kapoustine, has been trolling DejaVuAI (DJV) online. His employment with the company was terminated more than a year ago for theft of trade secrets when he refused to return to DJV the source code that he developed as an employee of the company. As a result of his actions to damage the company, DJV sued him in Federal Court in Seattle to protect the company and its shareholders (DejaVuAI v. Kapustin, WD Wash.Case No. 2:25-cv-00915-JNW). DJV has also reported his actions to federal authorities. On September 17, 2025, the Federal Court issued a Preliminary Injunction for DJV and against the Former Employee, including specific orders prohibiting him from:

A. Contacting DJV customers

B. Disparaging DJV

C. Taking any action to interfere with DJV's operations

D. Marketing and selling with respect DJV products and trade secrets.

Notwithstanding and in violation of the Court orders, the Former Employee continues to make unfounded claims against the company. These false claims, some of which are contradictory, include the following and were reviewed by the Court in issuing its orders:

1. Claim: DJV is using stolen software. FALSE. DJV has a license to use all versions of its software. Older versions (commonly called "Photon") were based on software that was licensed from the Former Employee on a perpetual, non-cancellable basis. These versions were upgraded by DejaVuAI , under the supervision of the Former Employee, and are the exclusive property of DejaVuAI. The Court considered this allegation of stolen software and found that DJV has used software legally and DejaVuAI has demonstrated likelihood of success on its claim that the Former Employee misappropriated DJV's own software in violation of the Defend Trade Secrets Act ("DTSA").

2. Claim: DJV does not have the source code to its own software. FALSE. The Former Employee was fired for refusing to return the company's code for Photon™ that he created as an employee of DJV. The Court found both that DJV has demonstrated likelihood of success on its claim of misappropriation, and also that the facts establish that any and all rights to the Photon software were licensed to DJV, with a "perpetual term" and "no right of termination". The Former Employee's rash and unsupported assertion that the code he developed was "buggy and outdated" is a misplaced effort to defame DJV in connection with his refusal to return the Photon™ source code belonging to DJV, which was the reason for his termination. It is also off base as DJV is supporting its customers transition from Photon™ to its new software, ClearSeek™. DJV's new solution, ClearSeek™, is an independent product from Photon™ and, built from scratch, it does not rely on or include any code written by the Former Employee. Furthermore, in testing and deployment, ClearSeek™ next generation image matching demonstrates fit-for-purpose and appropriate accuracy, performance, stability, and scalability. Both ClearSeek™ and DJV'S newest product, Validator™, are garnering positive reviews in the marketplace.

3. Claim: The Former Employee was never employed by DJV. FALSE. He was DJV's CTO from September 2022 to February 2025. The Court considered this allegation and stated that, "[the Former Employee] signed an employment contract and PIIAA with DejaVuAI, and USCIS approved DejaVuAI as his petitioning employer." The Court also stated the following: "The Court rejects the idea that [the Former Employee] did not update or improve the technology while he was employed—for nearly three years—as DejaVuAI's CTO."

4. Claim: DJV is embezzling money from investors. FALSE. All money raised from investors has been used to pay employees and sales expense, mitigate the impact of the employee's theft of trade secrets, and enforce its rights against the Former Employee in Federal Court, amongst other things.

5. Claim: Employee claims to own 5 million DJV shares. FALSE. Former Employee failed to pay for his DJV shares. Under the Washington State Business Corporation Act, shares for which consideration is not received are not valid or effectively issued. DJV has informed the Former Employee accordingly.

6. Claim: The Former Employee claims that DJV tried to hack into his personal servers. FALSE. This is a false and defamatory claim, made without reference to any purported evidence, in violation of the Injunction and Court order prohibiting him from disparaging DJV. DJV specifically denies the content of this malicious claim.

7. Claim: The Former Employee claims that his signature was forged on various documents and license agreements. FALSE. The Court specifically considered these allegations and found them "unpersuasive". In part regarding the validity of his O-1 visa, the Court pointed out that "Kapoustine signed an employment contract and PIIAA with DejaVuAI, and USCIS approved DejaVuAI as his petitioning employer." Respecting his claim that "never signed the License Agreement, [and] suggest[ed] that DejaVuAI forged his signature," the Court found that the Former Employee's "contemporaneous acknowledgments contradict his current denial."

# Exhibit D

**Excerpt #1 (Pages 10-11)**

Significantly, although Plaintiff requested arbitration and arbitration was granted by the court, Plaintiff has not moved forward with either courtroom hearings or arbitration proceedings. Plaintiff has essentially stalled the lawsuit, taking no meaningful steps to resolve the underlying dispute on the merits. This deliberate delay reveals that Plaintiff's true objective is not to obtain a judicial determination of the parties' rights, but rather to use the preliminary injunction as a tool to buy time while continuing its unauthorized sales of Appellant's software. While Appellant remains enjoined from working on his own technology and earning a living, Plaintiff continues to profit from software that it has no legitimate right to sell. This abuse of the preliminary injunction process—obtaining emergency relief and then refusing to prosecute the case—demonstrates Plaintiff's bad faith and further supports reversal of the injunction.

**Excerpt #2 (Pages 40-41)**

Plaintiff's own conduct further undermines any claim of irreparable harm. Although Plaintiff requested and was granted arbitration, Plaintiff has made no effort to move forward with either arbitration or courtroom hearings. Instead, Plaintiff has stalled the litigation while using the preliminary injunction to maintain the status quo—a status quo in which Appellant is prohibited from working on his own technology while Plaintiff continues its unauthorized sales of Appellant's software. It's been almost a year since the lawsuit was filed on May 14, 2025. If Plaintiff were truly suffering irreparable harm, one would expect Plaintiff to prosecute this case vigorously and seek a prompt resolution. Plaintiff's deliberate delay demonstrates that the preliminary injunction serves not to prevent harm, but to perpetuate Plaintiff's ability to profit from technology it has no right to sell.