UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DEJAVUAI INC., Plaintiff, v. FYODOR KAPUSTIN also known as TED also known as FYODOR KAPUSTINE, Defendant. | CASE NO. 2:25-cv-00915-JNW<br>CONTEMPT ORDER |

Plaintiff DejaVuAI Inc.'s motions for contempt and for a temporary restraining order ("TRO") come before the Court. Dkt. Nos. 87; 104. The Court LIFTS the stay of this matter for the limited purpose of deciding these motions. Defendant Kapoustine has repeatedly violated the Court's preliminary injunction, and his move to Canada does not put him beyond the Court's reach. The Court GRANTS both motions in part for the reasons below.

## 1. FACTUAL FINDINGS

The Court issued a preliminary injunction in this case on September 17, 2025. Dkt. No. 69. The Court incorporates its factual findings from that order. *Id.*

The Court has already concluded that DejaVuAI is likely to succeed on its Defend Trade Secrets Act ("DTSA") claim against Kapoustine and has enjoined Kapoustine from:

(a) Contacting any of DejaVuAI's current and prospective customers, resellers, licensors, vendors, or other business contacts whom he is aware of by virtue of his former DejaVuAI employment or his position as a director of the Company;

(b) Engaging in any form of conduct or making statements or representations that disparage, portray in a negative light, or otherwise impair the reputation or commercial interest of DejaVuAI, its officers and directors, its investors, or its products and services;

(c) Taking any action to directly or indirectly interfere with DejaVuAI's operations, including any conduct to disrupt, alter, or otherwise affect any digital services or infrastructure that DejaVuAI currently uses to operate or market its business.

(d) Disclosing or using DejaVuAI's trade secrets. Prohibited actions include but are not limited to marketing, selling, attempting to market or sell, utilizing in research or development, or otherwise doing or attempting to do business with respect to DejaVuAI's trade secrets or any product or service based upon, derived from, or incorporating DejaVuAI's trade secrets. DejaVuAI's trade secrets include any non-public source codes and non-public algorithms underlying these programs:

| **Product Name** | **Edition** | **Operating Systems** |
|---|---|---|
| Photon | Standard | MacOS, Linux, Windows |
| Photon | Founder's Edition | MacOS, Linux, Windows |
| PhotonServer | Standard | MacOS, Linux, Windows |
| Matcher | Standard | MacOS, Linux, Windows |
| Watcher Client | Standard | MacOS, Linux, Windows |
| Watcher Test | Standard | MacOS, Linux, Windows |
| MapSearch | Standard | MacOS, Linux, Windows |
| PhotonES | Enterprise | MacOS, Linux, Windows |

| Product Name | Edition | Operating Systems |
| --- | --- | --- |
| PhotonES Client | Enterprise | MacOS, Linux, Windows |
| PhotonES Broker | Enterprise | MacOS, Linux, Windows |
| PhotonES Dealer | Enterprise | MacOS, Linux, Windows |
| PhotonES Handler | Enterprise | MacOS, Linux, Windows |
| PhotonES Searcher | Enterprise | MacOS, Linux, Windows |
| ProductReco | Standard | MacOS, Linux, Windows |
| LogoReco | Standard | MacOS, Linux, Windows |
| PhotonFrameExtractor | Standard | MacOS, Linux, Windows |

*Id.* at 22–24. Kapoustine moved for reconsideration, which the Court denied, and then he appealed the preliminary injunction. Dkt. Nos. 72; 74; 77. DejaVuAI moved to compel arbitration, and in October 2025, the Court ordered the Parties to arbitrate DejaVuAI's claims for breach of contract and misappropriation of trade secrets, as well as Kapoustine's counterclaim for unjust enrichment. Dkt. No. 73 at 8. The Court also stayed the case pending that arbitration, which remains unresolved. *Id.*

In April 2026, DejaVuAI moved for contempt, arguing that Kapoustine was violating the preliminary injunction. Dkt. No. 87. He has routinely disparaged DejaVuAI and its employees through social media posts. *See, e.g.,* Dkt. Nos. 88-3 (disparaging Kessler); 88-8 (calling DejaVuAI "scammers" and "embezzle[rs]"); 88-10 (calling Kessler a "scammer" and "fraudster" and stating those who do business with him may go to prison for up to five years); 88-11 (alleging Kessler has committed perjury and forged documents); 88-12 (stating DejaVuAI agents would

"not hesitate even a second to assassinate" him and that they were attempting to download child sex assault materials onto his computer so they could report him to the FBI); 88-13 (claiming Kessler attempted to hack his home computer); 88-26 (stating new DejaVuAI employee was "participating in theft and getting paid for it"); 88-28 (claiming DejaVuAI's attorney forged documents at Kessler's request); 88-32 (criticizing and disparaging DejaVuAI's leadership decisions and software); 88-49 (post addressed to "FBI Cyber Division" claiming to inform the FBI that DejaVuAI and its business partner sold the FBI vulnerable technology with "serious security flaws" and intended to deceive the Government and other customers).

The record shows that Kapoustine has contacted DejaVuAI's current and prospective customers, business partners, and investors to discuss the company's technology and business decisions. *See, e.g.,* Dkt. No. 88-24 (telling DejaVuAI technology reseller in a public LinkedIn post that it sold outdated versions of the technology with vulnerabilities to government customers and should get updated versions from him). For instance, he tagged several DejaVuAI investors in a LinkedIn post, stating among other things: "You can't do anything to me while I am in Canada. You are only wasting your time and money. Either file for bankruptcy or sign a license agreement with me." [1] Dkt. No. 91-1. DejaVuAI also asserts that Kapoustine is selling products derived from its trade secrets in violation of the Court's preliminary injunction. Dkt. No. 87 at 6.

---

[1] Kapoustine's posts also criticize the Court and its rulings. *See, e.g.*, Dkt. Nos. 88-33; 105-5; 105-6. Criticism of the Court does not violate the preliminary injunction, which protects DejaVuAI, and the Court has not considered it in deciding these motions.

On October 26, 2026, DejaVuAI moved for a TRO; it asks the Court to enjoin Kapoustine from engaging in conduct that it believes violates the Court's preliminary injunction. Dkt. No. 104. It argues that emergency relief is needed because Kapoustine has recently "escalated online activity violative of the Court's preliminary injunction, and now seeks to sell software derived from confidential information in competition with DejaVuAI." *Id.* at 2 (capitalization modified). Kapoustine opposes. Dkt. No. 110.

## 2. DISCUSSION

### 2.1 Kapoustine is in civil contempt.

DejaVuAI's contempt motion asks the Court to: (1) enter an order of contempt against Kapoustine; (2) order Kapoustine to provide a valid address for himself, including for service of process in this action and related arbitration, and to confirm his true legal name; and (3) award fees and costs to DejaVuAI.

"A court may wield its civil contempt powers for two separate and independent purposes: (1) 'to coerce the defendant into compliance with the court's order"; and (2) "to compensate the complainant for losses sustained.'" *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th Cir. 2016) (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947)). "The standard for finding a party in civil contempt is well settled: The moving party has the burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir.2002). To satisfy that burden, the moving party must "place in the ultimate factfinder an

abiding conviction that the truth of its factual contentions are 'highly probable.'" *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984). If the moving party does so, "[t]he burden then shifts to the contemnors to demonstrate why they were unable to comply." *Bennett*, 298 F.3d at 1069 (citation modified).

Based on the record and facts stated above, the Court finds by clear and convincing evidence that Kapoustine knowingly violated provisions (a)–(c) of the Court's preliminary injunction. Dkt. No. 69 at 22–23. Those provisions are specific and definite. Kapoustine did not oppose them when the Court entered them, and nothing in them limits their reach to conduct inside the United States. *Id.* at 8, 22–23. His own posts show that he understood the order and chose to ignore it: "I reside in Canada, outside the jurisdiction of the US federal court, and therefore do not care about its judgements." Dkt. No. 88-37). Nor does Kapoustine claim that he was unable to comply; he claims only that the order can't reach him in Canada.

The record is insufficient, however, to establish by clear and convincing evidence that the technology Kapoustine is presently selling incorporates DejaVuAI's trade secrets in violation of subsection (d).

Because Kapoustine knowingly violated specific and definite provisions of the Court's preliminary injunction, the Court will hold him in civil contempt. The Court declines DejaVuAI's request to hold him in criminal contempt as well. Dkt. No. 87 at 8. "The purpose of civil contempt is coercive or compensatory, whereas the purpose of criminal contempt is punitive," and criminal penalties require the protections the Constitution affords criminal proceedings. *Shell Offshore*, 815 F.3d

at 629, 631 (citation modified). This order is civil only, so Kapoustine's argument about the criminal standard of proof does not apply. *See* Dkt. No. 89 at 8.

### 2.2 Kapoustine's move to Canada does not put him beyond the Court's reach.

The Court rejects Kapoustine's arguments in opposition to the contempt motion. His primary argument is that the Court lacks jurisdiction to make a finding of contempt against him because he engaged in the violative conduct after he moved to Canada. It is undisputed, though, that the Court has subject-matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1367. The Court also notes that the DTSA contains an extraterritoriality clause that—at least on this record—seems to apply to DejaVuAI's claim. 18 U.S.C. § 1837(2) ("This chapter also applies to conduct occurring outside the United States if . . . an act in furtherance of the offense was committed in the United States.").

The Court also has personal jurisdiction over Kapoustine because he was personally served with the summons and complaint while physically present in Washington State and because he submitted to the Court's jurisdiction in his answer to the complaint. *See* Dkt. No. 28 ¶¶ 7–8 (admitting that he resides in Bellevue, Washington, agreeing the Court has jurisdiction, and failing to raise a challenge based on personal jurisdiction or service of process); *Burnham v. Sup. Ct. of Cal., Cnty. of Marin*, 495 U.S. 604, 619, (1990) (plurality op.) ("The short of the matter is that jurisdiction based on physical presence alone constitutes due process[.]"); *see also Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428

(1991) ("We have consistently held that if jurisdiction exists at the time an action is commenced, such jurisdiction may not be divested by subsequent events.").

Kapoustine separately argues that his "permanent Canadian residency, established prior to any alleged violations [of the Court's preliminary injunction], creates a constitutional barrier to this Court's exercise of contempt authority." Dkt. No. 89 at 6. But he cites no authority for that proposition. As the Court has found that it has personal jurisdiction over Kapoustine, regardless of where he lives now, it rejects his conclusory due process argument.

Finally, Kapoustine argues that the statute governing contempt, 18 U.S.C. § 401, has no extraterritorial reach; thus, the Court can do nothing about violations of its order that occur outside the United States. Dkt. No. 89 at 7. The Ninth Circuit has rejected a similar argument. District courts "do, and must, have the authority to punish contemptuous violations of their orders," even when the violation occurs abroad. *Reebok Int'l Ltd. v. McLaughlin*, 49 F.3d 1387, 1390 (9th Cir. 1995) (citing 18 U.S.C. § 401). Reebok reversed only because the contemnor was a nonparty foreign bank that had "obeyed the only law applicable to it." *Id.* at 1393–94. Kapoustine, by contrast, is a party, he was served here, and he did not oppose the provisions he now violates. Nor does he point to any Canadian law that compels his posts. And whether a Canadian court would enforce the Court's sanctions bears on collecting them, not on whether Kapoustine violated the order. *See id.* at 7–8.

### 2.3 The Court will impose coercive sanctions if Kapoustine does not comply.

Given Kapoustine's repeated violations of the Court's preliminary injunction and his stated view that the Court's orders can't reach him in Canada, the Court will impose coercive sanctions if he does not comply with this order. The Court also awards DejaVuAI its attorney fees and costs to compensate it for bringing these motions. *See Shell Offshore*, 815 F.3d at 629.

Kapoustine asks the Court to stay these proceedings until the Ninth Circuit decides his appeal of the preliminary injunction. The Court declines. The injunction "will remain in effect until the Court orders otherwise or until this case is resolved," and the provisions Kapoustine violated are ones he did not oppose. Dkt. No. 69 at 8, 24. And because Kapoustine's opposition fails, so does his request for fees and costs. Dkt. No. 89 at 12.

This ruling grants most of the relief DejaVuAI seeks in its TRO motion, which also asks the Court to hold Kapoustine in contempt. Dkt. No. 104 at 8. What remains is its request for an order prohibiting Kapoustine from marketing and selling certain software. As explained above, DejaVuAI claims that Kapoustine is marketing and selling software that incorporates its trade secrets, in violation of the preliminary injunction, but the Court found that DejaVuAI did not establish that claim by clear and convincing evidence. And DejaVuAI concedes that the existing injunction "would encompass the more specific injunctive relief sought in this present motion," so no new injunction is needed. *Id.* at 7. The Court denies this request without prejudice.

Finally, Kapoustine must also file a notice stating his mailing address, which DejaVuAI needs for service of process in this action and the related arbitration. Dkt. No. 87 at 8. He has withheld it from his filings.

## 3. CONCLUSION

Accordingly, the Court GRANTS IN PART DejaVuAI's contempt motion (Dkt. No. 87) and TRO motion (Dkt. No. 104), FINDS Kapoustine in civil contempt of its preliminary injunction, dated September 17, 2025, and ORDERS:

1. The Court's preliminary injunction applies to Kapoustine's conduct on social media, including LinkedIn. Kapoustine MUST REMOVE all LinkedIn and other social media postings that violate the Court's preliminary injunction, Dkt. No. 69.
2. Kapoustine is PROHIBITED from further online posting, on LinkedIn or other social media platforms, that violates the Court's preliminary injunction, Dkt. No. 69.
3. Kapoustine MUST FILE a notice in this matter confirming his service address and legal name within SEVEN (7) DAYS of this order.
4. Kapoustine MUST PAY DejaVuAI's attorney fees and costs for bringing the contempt and TRO motions. DejaVuAI must submit attorney declarations and time logs for the Court's review within FOURTEEN (14) DAYS of this order. The Court will determine the amount of attorney fees and payment date in a subsequent order.

5. DejaVuAI may renew its argument that Kapoustine violated subsection (d) of the Court's preliminary injunction and may request an evidentiary hearing if necessary. The Court reminds Kapoustine that he must comply with subsection (d) of the Court's preliminary injunction and warns him that he may face additional coercive sanctions if he willfully fails to do so.
6. The Court will impose additional coercive sanctions if Kapoustine continues to violate the Court's preliminary injunction.

Dated this 2nd day of November, 2026.

Jamal N. Whitehead
United States District Judge