AMERICAN ARBITRATION ASSOCIATION

**DEJAVUAI, INC.,**

*Claimant,*

v.

**FEDOR KAPOUSTINE** *(erroneously named in District Court filings as "Fyodor Kapustin"),*

*Respondent, Pro Se.*

**AAA Case No. 01-26-0005-6588**

*(Related Federal Actions: W.D. Wash. Case No. 2:25-00915-JNW; Ninth Circuit Appeals No. 25-7431, 26-7340)*

# RESPONDENT'S AMENDED COMBINED DISPOSITIVE MOTION TO DISMISS PURSUANT TO AAA COMMERCIAL RULE R-34

## I. INTRODUCTION AND RELIEF REQUESTED

Pursuant to the leave granted by the Arbitrator during the November 10, 2026 initial conference, and in accordance with American Arbitration Association (AAA) Commercial Arbitration Rule R-34 and Rule R-6, Respondent Fedor Kapoustine (*Pro Se*) respectfully submits this Amended Combined Dispositive Motion to Dismiss Claimant DejaVuAI, Inc.'s ("Claimant" or "DejaVuAI") arbitrated claims (Counts III and V of the underlying Federal Complaint) **with prejudice**.

This dispute can and should be resolved immediately as a pure matter of law based on undisputed, objective documentary evidence requiring zero discovery. Dismissal with prejudice is mandated on two independent, deeply intertwined grounds of bad faith:

1. **Federal Judicial Estoppel, Fraud on the Court, and Lack of Title:** Claimant's entire case rests on the fabricated premise that Respondent was employed by DejaVuAI, Inc. and created proprietary software (or at least, parts of it) within the scope of that employment (Compl., W.D. Wash. Dkt. No. 1 at 5 §C ¶16). However, Claimant's former CEO and accountant, John Gerow "Johnny" Kessler, who also served as CEO and accountant of 1st1 Technologies, LLP, certified

under penalty of federal perjury to U.S. Citizenship and Immigration Services (USCIS) on Forms I-129 and I-140 that a separate legal entity—1st1 Technologies, LLP (EIN: 85-1294804)—was Respondent's exclusive employer (Dkt. No. 61 at 17-22, 263-269). Crucially, both sworn federal petitions explicitly certify verbatim that **"Mr. Kapoustine is the inventor and owner of image search and recognition technology, DejaVuAI,"** (Dkt. No. 61 at 29, 272) and define his job duties strictly as executive leadership (planning, directing, overseeing, delivering speeches, participating in trade shows, and hiring), excluding software development or writing code (Dkt. No. 61 at 31-32, 276). Furthermore, the exact DejaVuAI, Inc. W-2 forms and pay stubs (Dkt. No. 61 at 367-370) Claimant now waves as "proof" of corporate employment were previously submitted by Kessler to USCIS as proof of *LLP employment and LLP salary payments* under a legally invalid, fabricated designation: *"1st1 Technologies, LLP (DBA DejaVuAI, Inc.)."* (Dkt. 61 at 251, 253, 257, 272). Combined with the LLP's foundational Operating Agreement—which explicitly confirms Respondent's sole ownership—and Claimant's shifting, unexecuted/forged contract versions, these sworn federal records bar Claimant's claims as a matter of law under federal judicial estoppel.

2. **Equitable Waiver and Laches via Intentional, 352-Day Tactical Delay:** After weaponizing this fraudulent employment narrative to obtain a draconian preliminary injunction in federal court, Claimant deliberately sat on the District Court's Order Compelling Arbitration for nearly a full year (**352 days**). Even after Respondent explicitly reminded Claimant twice in federal appellate briefs (on April 22, 2026, and June 11, 2026, in Ninth Circuit Appeal No. 25-7431) that it had failed to initiate arbitration, Claimant continued to stall—initiating this AAA proceeding only nine days after Respondent moved to dismiss the federal lawsuit for failure to prosecute. Under federal equity and Washington law, this deliberate, bad-faith delay constitutes a complete waiver of the right to arbitrate.

# II. STATEMENT OF UNDISPUTED FACTS

1. **Creation of the Software and the LLP Operating Agreement:** Years prior to the formation of either 1st1 Technologies, LLP ("the LLP") or Claimant DejaVuAI, Inc. ("the Corporation"), Respondent independently developed proprietary reverse-image search software ("DejaVuAI Software"). In June 2020, the LLP was formed. The **1st1 Technologies, LLP Operating Agreement** explicitly recognizes that the DejaVuAI Software is the exclusive personal property of

Respondent (Dkt. No. 38-1 at 2, § A ¶ 1). Respondent never assigned the copyright, never licensed the DejaVuAI Software to either entity, and never shared the source code.

2. **Separate Legal Entities and the Fabricated "DBA" Payroll Shell Game:** 1st1 Technologies, LLP (EIN: 85-1294804) and DejaVuAI, Inc. (EIN: 92-0336356) are entirely separate legal entities registered in the State of Washington with distinct Employer Identification Numbers (EINs) and distinct Washington Unified Business Identifiers (UBIs). While *"DejaVuAI"* (without a corporate suffix) was a registered trade name/DBA of the LLP, *"DejaVuAI, Inc."* was never a DBA of the LLP. Because Kessler served concurrently as CEO and accountant for both entities, he, for some unknown reason, routed Respondent's salary disbursements from the bank account of DejaVuAI, Inc. rather than the LLP's account and generated W-2 forms under DejaVuAI, Inc.

3. **Sworn Federal Immigration Petitions (2022–2024):** On June 7, 2022, Kessler signed Form I-129 (submitted June 17, 2022; approved March 1, 2023) (Dkt. No. 61 at 1-246, 248-249), and on January 10, 2024, he signed Form I-140 (submitted January 12, 2024; approved January 24, 2024) (Dkt. No. 61 at 250-567, 569-570). On both federal petitions, Kessler certified under penalty of perjury that:

   a) **1st1 Technologies, LLP (EIN: 85-1294804)** was Respondent's employer, listing the LLP's unique EIN on Page 1 of the I-129 and I-140 petitions (Dkt. No. 61 at 17, 263), and USCIS maintained 1st1 Technologies, LLP as the sole approved petitioner despite Kessler's unsuccessful October 25, 2022 attempt to substitute DejaVuAI, Inc. as petitioner by falsely stating that the petitioner changed name from 1st1 Technologiesm, LLP to DejaVuAI, Inc., and changed the EIN from 85-1294804 to 92-0336356 (Ex. 6);

   b) Verbatim: **"Mr. Kapoustine is the inventor and owner of image search and recognition technology, DejaVuAI"** (Dkt. No. 61 at 29, 272);

   c) Respondent's job duties as CTO of the LLP consisted solely of executive management—specifically planning, directing, overseeing, supervision, delivering speeches, participating in trade shows, and hiring—with zero duties involving software development or writing code (Dkt. No. 61 at 31-32, 276); and

   d) To prove that *1st1 Technologies, LLP* paid Respondent's salary on the I-140 petition, Kessler attached **the exact same DejaVuAI, Inc. W-2 forms and pay stubs** (Dkt. No. 61 at 367-370), disguising the discrepancy by falsely labeling the petitioner as *"1st1 Technologies, LLP (DBA DejaVuAI, Inc.)."* (Dkt. 61 at 251, 253, 257, 272)

4. **The October 2022 Deceptive Petitioner-Swap Attempt:** On October 25, 2022, while the initial O-1A petition was pending, Kessler attempted to surreptitiously substitute the corporate entity as the sponsor by submitting a fraudulent response to a USCIS Request for Evidence ("RFE") (W.D. Wash. Dkt. No. 47-8). In that submission, Kessler fabricated a narrative that the original petitioner had simply changed its name, explicitly writing to the federal adjudicator: *"Since Petitioner submitted the I-129 for Mr. Kapoustine on June 17, 2022... it has changed its name from 11 Technologies LLP to DejaVuAI Inc."* and falsely labeling the corporation as *"DejaVuAI Inc. (F/K/A 1st1 Technologies LLP)"* and *"DejaVuAI Inc. (formerly 1st1 Technologies LLP)."* Investigative records from the Washington State Bar Association (Ex. 9)—including the formal declaration of immigration attorney Halley Fisher French—conclusively establish that Kessler actively deceived legal counsel to execute this filing by falsely assuring her it was a routine, mere name change. USCIS rejected this corporate deception; the agency completely ignored the substitution attempt and issued the final O-1A approval strictly to the original petitioner, **1st1 Technologies, LLP (EIN: 85-1294804)**, on March 1, 2023.

5. **The April 2025 Visa Revocation Admission:** Following Respondent's resignation, Kessler submitted a formal written request to USCIS on April 22, 2025, to revoke Respondent's O-1A work authorization (W.D. Wash. Dkt. No. 65-10 at 2). To successfully execute the revocation under federal regulations, Kessler was legally forced to name the actual approved petitioner on record: **1st1 Technologies, LLP**. However, in a subsequent sworn declaration submitted to the District Court to justify his litigation positions, Kessler asserted that Respondent had been *"working for DejaVuAI, Inc. when the company was formed"* on September 1, 2022 (W.D. Wash. Dkt. No. 65 ¶ 14)—thereby admitting under penalty of perjury that he knowingly directed Respondent to engage in unauthorized employment for six months prior to the visa's eventual approval on March 1, 2023, in direct violation of federal immigration law.

6. **The Fraudulent Federal Lawsuit and Injunction:** In May 2025, Claimant filed suit against Respondent in the U.S. District Court for the Western District of Washington (Case No. 2:25-00915-JNW). To enforce an alleged Proprietary Information and Invention Assignment Agreement ("PIIA")—initially misrepresented as an employment contract despite DejaVuAI, Inc.'s Bylaws attaching a separate mandatory form of Offer Letter (W.D. Wash. Dkt. No. 11-4 at 4, 37-39)—and secure a sweeping preliminary injunction barring Respondent from working on or selling his own code, Claimant reversed its sworn federal narrative, representing to the District Court that those

exact same W-2 forms and pay stubs proved Respondent was employed by DejaVuAI, Inc. and that DejaVuAI, Inc. owned the DejaVuAI Software. Relying on the same corporate W-2 forms generated via Kessler's irregular subsidiary bank routing, Claimant misled the District Court into entering a factual finding that *"the companies notified USCIS of the corporate restructuring, and USCIS approved DejaVuAI as Kapoustine's petitioning employer"* (W.D. Wash. Dkt. No. 69 at Page 4; referencing Dkt. No. 47 ¶ 17), a statement directly disproven by the final USCIS approval sheets.

7. **The Intentional 352-Day Delay Despite Repeated Appellate Warnings:** On October 8, 2025, District Judge Jamal N. Whitehead signed an Order compelling Count III (Breach of Employment Contract) and Count V (Misappropriation of Trade Secrets) to arbitration. Having secured a preliminary injunction that paralyzed Respondent's livelihood, Claimant refused to initiate arbitration for **352 days. I**n Respondent's pending Ninth Circuit appeal of the preliminary injunction (**Appeal Case No. 25-7431**), Respondent explicitly reminded Claimant twice of its failure to initiate arbitration:
   1) first in Respondent's **Opening Brief filed on April 22, 2026**,
   2) and again in Respondent's **Reply Brief filed on June 11, 2026**.
   Despite these two explicit written reminders on the federal appellate record, Claimant intentionally continued to stall for over three additional months.
   Claimant finally filed its AAA Demand on **September 25, 2026**—nine days after Respondent filed a Motion to Dismiss for Failure to Prosecute on **September 16, 2026**.

# III. ARGUMENT

## A. Count III and Count V Are Barred as a Matter of Law by Federal Judicial Estoppel, Failure of Consideration, and Lack of Title

Under AAA Commercial Rule R-34, an arbitrator may grant a dispositive motion where the moving party demonstrates a substantial likelihood of success and the claims can be resolved as a matter of law. Here, both arbitrated claims fail on their face.

**1. Judicial Estoppel Prohibits Claimant from Repurposing Its Sworn USCIS Payroll Evidence or Claiming Ownership:**

Under the federal doctrine of judicial estoppel, established by the U.S. Supreme Court in *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001), a party that assumes a certain position in a legal or administrative proceeding and succeeds in maintaining that position may not thereafter assume a contrary position simply because its interests have changed. This doctrine applies strictly to sworn representations made to federal administrative agencies, including USCIS.

Claimant's CEO certified under penalty of perjury to USCIS on both Form I-129 and Form I-140 that 1st1 Technologies, LLP (EIN: 85-1294804) was Respondent's employer and swore verbatim that **"Mr. Kapoustine is the inventor and owner of image search and recognition technology, DejaVuAI."** (Dkt. No. 61 at 29, 272). Moreover, Kessler explicitly submitted the DejaVuAI, Inc. W-2 forms and pay stubs to USCIS as proof of *LLP employment and LLP salary payments* by conflating two separate Washington entities with distinct EINs and UBIs under the legally invalid designation *"1st1 Technologies, LLP (DBA DejaVuAI, Inc.)"* (Dkt. 61 at 251, 253, 257, 272).

Under federal immigration law (8 C.F.R. § 214.2(o)(2)(i) and 8 C.F.R. § 214.2(o)(1)(i)), an O-1A visa is strictly employer-specific; Respondent could not legally be employed by a separate corporate subsidiary without an amended USCIS petition. Having secured federal immigration approvals by swearing to the LLP's EIN, presenting those W-2s/pay stubs as LLP compensation, and certifying Respondent's sole ownership of the technology, Claimant is judicially estopped from repurposing those exact same payroll records in this forum to claim Respondent was an employee of DejaVuAI, Inc. or that DejaVuAI, Inc. owns the DejaVuAI Software.

**2. The October 2022 Petitioner-Swap Deception and April 2025 Revocation Admission Estop Corporate Employment Claims:**

Claimant's core narrative—that it formally notified USCIS of a "corporate restructuring" that substituted the corporation as the approved employer—is completely demolished by the physical record. Kessler's October 25, 2022 letter was not a legitimate corporate restructuring notice; it was a deceptive attempt to manipulate an immigration petition by falsely representing separate Washington legal entities as a single entity under a fraudulent *"F/K/A"* name change. As confirmed by the Washington State Bar Association investigative records (Ex. 9), this deception was so pronounced that even the initial immigration attorney formally swore she was misled by Kessler's misrepresentations.

Because USCIS rejected this substitution and issued its March 1, 2023 approval exclusively to the LLP, no corporate employment relationship ever legally existed. This was explicitly confirmed by Kessler himself on April 22, 2025, when he filed his official visa revocation request (W.D. Wash. Dkt. No. 65-10 at 2) identifying **1st1 Technologies, LLP** as the petitioning sponsor. Under federal judicial estoppel, Claimant cannot treat the LLP as the exclusive employer to secure and revoke federal immigration status, and then recharacterize the relationship as corporate employment in a civil lawsuit to seize private intellectual property.

**3. Claimant Cannot Salvage Its Claims Through the PIIA's "Affiliate" Clause or Section 4(a):**

Anticipating that its false claim of direct corporate employment is barred by judicial estoppel, Claimant cannot pivot mid-flight to argue that the PIIA applies through its preamble defining "the Company" to include "affiliates" (such as the parent LLP), nor can Claimant invoke Section 4(a) ("Inventions Retained and Licensed") to claim an implied perpetual license over Respondent's pre-existing DejaVuAI Software. Such a pivot fails on four independent legal grounds:

- **Procedural Bar Against New Theories and the Perjury Catch-22:** Claimant's federal Complaint (Counts III and V) does not plead an affiliate relationship or a Section 4(a) license; it pleads exclusively that Respondent was employed by DejaVuAI, Inc. and claims DejaVuAI, Inc. owns the source code outright (Compl. ¶¶ 42–47, 60). As explicitly preserved in Respondent's Answering Statement, Claimant is bound by its federal pleadings and cannot invent a new contractual theory mid-arbitration. Moreover, Claimant is trapped in an inescapable Catch-22: to invoke the PIIA's "affiliate" clause, Claimant would have to admit that Respondent was actually employed by 1st1 Technologies, LLP—which would simultaneously confess that its sworn federal Complaint, Preliminary Injunction motion, and contempt filings were built on perjured representations of corporate employment, invalidating its entire lawsuit for fraud on the court.
- **Total Failure of Consideration:** The PIIA expressly states that it is entered into *"in consideration of my employment or consulting relationship with the Company and my receipt of the compensation now and hereafter paid to me by the Company."* Because Respondent was never employed by DejaVuAI, Inc., and because Kessler himself certified to USCIS that the disputed salary disbursements were *LLP compensation* rather than corporate compensation (while also failing to pay Respondent's full promised LLP salary), the PIIA lacks valid consideration and is unenforceable.

- **Absence of Coding Duties and Statutory Protection (RCW 49.44.140):** Under Section 4(b) and Section 4(e) of the PIIA (incorporating Washington's statutory employee invention protections), assignment applies only to inventions developed *during* the Relationship using Company resources or resulting from work performed for the Company. Respondent's DejaVuAI Software predates both companies by years, and Claimant's own sworn USCIS petitions confirm Respondent's CTO duties were strictly managerial (planning, directing, speeches, trade shows, hiring) and excluded software development or writing code.
- **Superiority of the LLP Operating Agreement and Sworn Ownership Admissions:** The *1st1 Technologies, LLP Operating Agreement* (Dkt. No. 38-1**)** and Claimant's sworn federal petitions (*"Mr. Kapoustine is the inventor and owner..."*) conclusively establish Respondent's sole ownership. A boilerplate subsidiary PIIA cannot silently confiscate or encumber personal property explicitly carved out in a parent entity's foundational Operating Agreement and repeatedly affirmed under oath to the federal government.

**4. Receiving Bank Transfers Routed by a Shared Accountant Reflects Accounting Irregularities—Not Legal Employment—and Cannot Overcome Judicial Estoppel:**

Claimant's assertion that Respondent created an employment relationship with DejaVuAI, Inc. merely by accepting salary deposits routed from DejaVuAI, Inc.'s bank account fails as a matter of law. **First**, under federal immigration regulations, an O-1A visa holder cannot enter into a valid employment contract with an unpetitioned corporate subsidiary; a shared accountant's irregular bookkeeping choice to disburse funds from a subsidiary account and issue mismatched W-2s reflects corporate and tax reporting improprieties, not a lawful employment relationship. Indeed, Respondent—a Canadian citizen who has lawfully entered the United States on roughly a dozen prior TN-1 visas without a single overstay or status violation—never consented to unauthorized employment, and federal law refuses to imply or enforce an employment contract premised on a violation of federal immigration statutes. **Second**, in January 2024—sixteen months *after* DejaVuAI, Inc. was formed—Kessler submitted those exact same pay stubs and W-2 forms to USCIS and swore under penalty of perjury that they represented *LLP compensation* paid by 1st1 Technologies, LLP (EIN: 85-1294804). Remarkably, when Respondent subsequently inquired with the Internal Revenue Service ("IRS") in March 2025 regarding the LLP's failure to issue proper LLP W-2 forms, Kessler submitted a formal IRS response stating that the LLP had no W-2 to send because *"our records show that we did not pay you wages."* Having

gained federal immigration approvals by characterizing those exact disbursements as LLP salary—and later denying those same wage payments to the IRS—Claimant is judicially estopped from relabeling the exact same bank transfers as "consideration" establishing corporate employment.

**Third**, even if consideration existed, both federal copyright law (17 U.S.C. § 101) and Washington statutory law (RCW 49.44.140) restrict employer ownership strictly to works created *during* employment and *within the scope* of assigned duties—neither of which applies to pre-existing software owned by Respondent prior to the formation of either entity.

**5. Claimant's Revisionist "September 2022 Restructuring" Claim Is Barred by Its Own Sworn 2024 Federal Filings and Corporate Records:**

Equally baseless is Claimant's revisionist narrative that 1st1 Technologies, LLP was "restructured" and transferred all its assets to DejaVuAI, Inc. upon the corporation's founding in September 2022. That narrative is refuted by three undisputed facts:

- **Sworn 2024 Federal Filings:** In January 2024—more than a year after the alleged September 2022 "restructuring"—Kessler swore under penalty of perjury to USCIS on Form I-140 that 1st1 Technologies, LLP (EIN: 85-1294804) remained Respondent's active employer.
- **Three Years of Separate Co-Existence:** Washington Secretary of State records confirm that 1st1 Technologies, LLP and DejaVuAI, Inc. co-existed as separate legal entities for over three years until Kessler unilaterally dissolved the LLP in **October 2025**—the very month the District Court compelled this dispute to arbitration (Ex. 14).
- **Absence of Title to Transfer:** Under fundamental property law, a party cannot transfer title it does not possess. Because the June 2020 LLP Operating Agreement explicitly confirmed that the DejaVuAI Software belonged exclusively to Respondent—and no written copyright assignment or asset transfer instrument exists—the LLP held zero ownership rights in the DejaVuAI Software to transfer in September 2022 or at any other time.

**6. The Inter-Company License Agreement Between the LLP and Claimant Neither Covers Respondent's Software Nor Creates Title:**

Claimant also cannot rely on the purported License Agreement (Compl. Exhibit A) between 1st1 Technologies, LLP and DejaVuAI, Inc. to establish rights over Respondent's DejaVuAI Software.

**First**, Counts III and V—the sole claims compelled to this arbitration—arise from Respondent's

alleged employment contract, not an inter-company license. Second, by its plain text, that agreement explicitly separates an undefined *"The Algorithm"* (and non-existent *"Software"* based thereon) from Respondent's actual technology, the *"DejaVuAI Algorithm,"* granting a license *only* to the former while expressly excluding the latter. Third, under fundamental property law (*nemo dat quod non habet*), the LLP could not license or encumber Respondent's DejaVuAI Software because the June 2020 LLP Operating Agreement vested ownership solely in Respondent, and Respondent never executed any assignment or license to the LLP. To the extent Kessler inserted a self-serving recital suggesting LLP ownership, that recital is barred by **judicial estoppel** given Kessler's subsequent sworn federal certifications to USCIS in 2022 and 2024 affirming verbatim that **"Mr. Kapoustine is the inventor and owner of image search and recognition technology, DejaVuAI."**

**7. Claimant's Shifting "Employment Contract" Theories and Bylaws Violations Are Barred by Judicial Estoppel:**

Equally fatal to Count III is Claimant's inability to identify a valid, consistent employment agreement. In its original Complaint, Claimant treated the standalone PIIA as Respondent's "employment contract" (Compl. ¶¶ 13, 42–47), even though DejaVuAI, Inc.'s own corporate Bylaws attach a mandatory form of Offer Letter (Dkt. No. 11-4 at 4, 37-39) that expressly designates execution of a PIIA as a separate *condition precedent* to employment—confirming that a PIIA is not an employment contract. After Respondent's prior counsel exposed this defect, Kessler pivoted to relying on conflicting, unauthorized versions of an alleged corporate employment agreement. There are four different versions of this agreement:

1. Signed by Respondent on October 22, 2022 at Kessler's request. It mentions 1st1 Technologies, LLP as employer (Ex. 3).
2. Forged by Kessler and uploaded to Cascadia Cross-Border Law firm that has "1st1 Technologies, LLP" replaced by "DejaVuAI, Inc." (Ex. 4).
3. Further forged by immigration attorney Halley Fisher French at Kessler's request (she added a paragraph stating that the minimum salary will be $60,000 instead of $150,000) and submitted to USCIS on October 25, 2022 during an unsuccessful attempt to substitute DejaVuAI, Inc. as the I-129 petitioner by claiming that the petitioner changed name and EIN (Ex. 5).

4. And yet another materially different version forged by Kessler and submitted in January 2024 under the false *"1st1 Technologies, LLP (DBA DejaVuAI, Inc.)"* label to support the LLP's I-140 petition that mentions a $100,000 salary (Dkt. No. 61 at 365).

Under federal judicial estoppel, this Tribunal need not conduct a factual trial over Kessler's shifting drafts: USCIS adjudicated and approved both petitions strictly with **1st1 Technologies, LLP (EIN: 85-1294804)** as the sole petitioner and employer, legally barring Claimant from enforcing any version of a DejaVuAI, Inc. employment contract in this forum.

**8. Count III (Breach of Employment Contract) and Count V (Trade Secret Misappropriation) Fail on Their Elements:**

- **Count III** presupposes a valid employment contract between Respondent and DejaVuAI, Inc. Because judicial estoppel and failure of consideration render the PIIA and any purported employment agreement unenforceable, Count III fails as a matter of law.
- **Count V** (18 U.S.C. § 1836) requires proof that Claimant owns a protectable trade secret. Not only do *"1st1 Technologies, LLP Operating Agreement"* and the sworn USCIS petitions prove Respondent owns the DejaVuAI Software, but Claimant's own Complaint fatally admits it does not even possess the source code (Ex. 8), seeking damages for *"the cost of reverse engineering DejaVuAI's software to recreate its source code"* (Compl. ¶ 60). A party cannot sue the sole creator and sworn owner of software for misappropriating source code that the party admits it never possessed and must reverse-engineer from executables.

## B. Claimant Waived Its Right to Arbitrate Through an Intentional, 352-Day Delay Despite Two Explicit Appellate Reminders

Even if Claimant's claims were not fatally barred by fraud, judicial estoppel, and lack of title, dismissal with prejudice is independently required under the doctrines of **equitable waiver and laches**.

Under both the Federal Arbitration Act (FAA) and Washington law, a party waives its right to arbitrate when it knows of an existing right to compel arbitration, acts inconsistently with that right, and causes prejudice to the opposing party. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 417–19 (2022) (holding that federal courts apply standard waiver principles focusing on the actions of the party holding the right); *see also Vill. of Schaumburg v. Permasteelisa N. Am. Corp.*, No. 24-1168, 2026 WL 2046109

(7th Cir. Aug. 18, 2026) (holding that an eight-month litigation delay waived the right to arbitrate and that contractual no-waiver provisions cannot override federal waiver rules). Moreover, under Washington's Uniform Arbitration Act, **RCW 7.04A.090**, the statutory mechanism to initiate arbitration rested entirely in Claimant's hands from the moment the District Court entered its October 8, 2025 Order—meaning Claimant cannot excuse its inaction by pointing to the absence of a court-imposed filing deadline.

Here, Claimant cannot claim its 352-day delay was accidental or excusable neglect; the record proves its refusal to arbitrate was deliberate:

- Claimant obtained the Order Compelling Arbitration on **October 8, 2025**, yet took zero steps to initiate AAA proceedings.
- In Ninth Circuit **Appeal Case No. 25-7431**, Respondent explicitly put Claimant on written notice twice regarding its failure to initiate arbitration—first in Respondent's **Opening Brief filed on April 22, 2026**, and again in Respondent's **Reply Brief filed on June 11, 2026**.
- Despite being reminded twice on the federal appellate record, Claimant intentionally continued to stall for more than three additional months while enjoying the benefits of a court-ordered preliminary injunction—obtained via the immigration and payroll misrepresentations exposed above—to gag Respondent and destroy his livelihood.
- Claimant's **September 25, 2026** AAA Demand was not a good-faith effort to resolve a dispute, but a desperate defensive reaction triggered solely by Respondent's **September 16, 2026** Motion to Dismiss for Failure to Prosecute.
- Allowing a party to freeze an opponent's life with an injunction while ignoring two formal appellate warnings and refusing to advance the underlying arbitration for nearly a year is a textbook abuse of equity. Furthermore, a procedural dismissal based *solely* on delay without addressing the underlying fraud would unjustly allow Claimant to return to the District Court and perpetuate its false ownership claims. Therefore, equity demands a unified dismissal **with prejudice** grounded in both judicial estoppel/lack of title and waiver.

# IV. CONCLUSION AND PRAYER FOR RELIEF

Claimant has attempted to use shifting corporate shells with distinct EINs and UBIs, a fabricated "DBA" name change deception to mislead legal counsel and recycle payroll records, shifting contract

drafts that violate its own Bylaws, a boilerplate PIIA lacking consideration, and an intentional 352-day procedural stall—persisting even after two explicit appellate reminders and capped by a formal 2025 visa revocation admission—to confiscate software that its own parent company’s Operating Agreement and its CEO’s sworn federal immigration petitions explicitly confirm belongs exclusively to Respondent. No amount of discovery can alter the CEO’s sworn signatures on federal USCIS petitions, the verbatim admission of Respondent's ownership, the LLP's EIN (85-1294804), or the dates on the federal court and Ninth Circuit dockets.

WHEREFORE, Respondent Mr. Kapoustine respectfully requests that the Arbitrator:

1. **GRANT** Respondent’s Amended Combined Dispositive Motion to Dismiss pursuant to AAA Commercial Rule R-34;

2. **DISMISS** Claimant’s Count III and Count V **with prejudice** on the independent and combined grounds of Federal Judicial Estoppel, Failure of Consideration/Lack of Title, and Equitable Waiver/Laches;

3. **RETAIN JURISDICTION** over Respondent’s pending Counterclaims for copyright infringement, unjust enrichment, and accounting of profits, as well as Respondent’s pending Applications for Interim Protective Measures under Rule R-41 (regarding the forensic preservation of Respondent’s Microsoft Office 365 mailbox and cessation of unauthorized software distribution); and

4. **AWARD** Respondent such further equitable relief and fee allocations as the Arbitrator deems just and proper.

Dated: November 16, 2026
Respectfully submitted,
_/s/__Fedor Kapoustine__

**Fedor Kapoustine**, *Respondent Pro Se*
(address withheld for security reasons)
Phone: (425)240-4627
Email: ted.kapustin@pm.me

## EXHIBIT INDEX

**Exhibit 1:** Summary page of the digital envelope signed by Respondent on June 13, 2023 (3.5 months after he started working as CTO of 1st1 Technologies, LLP) that contained the PIIA buried deep inside the envelope.

**Exhibit 2:** Respondent's communication with K&L Gates in April 2025 in which Respondent proves that he was never employed by DejaVuAI, Inc. and warns them about their client's perjury and fraud

**Exhibit 3:** Undated and invalid "Employment contract" that Respondent actually signed at Kessler's request after being confused by Kessler. It mentions 1st1 Technologies, LLP in the first paragraph

**Exhibit 4:** Undated, invalid and forged "Employment contract" that Kessler forged (he replaced "1st1 Technologies, LLP" with "DejaVuAI, Inc.")

**Exhibit 5:** Undated, invalid and forged "Employment contract" that Halley Fisher French forged at Kessler's request by inserting overlay text mentioning a $60,000 salary

**Exhibit 6:** Cover letter of the October 25, 2022 USCIS submission in which Kessler tried to change the petitioner of Respondent's I-129 petition from 1st1 Technologies, LLP to DejaVuAI, Inc. by falsely stating that **the petitioner changed its name and EIN**, and misrepsesented DejaVuAI, Inc. as "formerly 1st1 Technologies, LLP" and "F/K/A (formerly known as) 1st1 Technologies, LLP". In this submission Kessler misrepresented 1st1 Technologies, LLP (DBA DejaVuAI) and DejaVuAI, Inc. as the same company, and introduced a short name "DejaVuAI" for "DejaVuAI, Inc." in the beginning of the document, which allowed him to mix documents related to both companies in that USCIS submission. This cover letter also contains an invalid "Employment contract" forged by Kessler and Ms. Fisher French that Respondent never signed. According to Kessler's plan, securing Respondent's visa for DejaVuAI, Inc. and hiring him as CTO of DejaVuAI, Inc. would enable PIIA and allow DejaVuAI, Inc. to seize Respondent's DejaVuAI technology (he thought that Respondent already signed PIIA by that time). When Kessler found out in June 2023 that Respondent never signed PIIA, he sent Respondent a digital envelope with organizational documents to trick Respondent into signing it.

**Exhibit 7:** March 04, 2025 email from immigration attorney Halley Fisher French confirming that Respondent's O-1A visa allowed him to be employed only by 1st1 Technologies, LLP

**Exhibit 8:** June 18, 2025 email from Respondent's attorney in which Claimant's attorney confirms that DejaVuAI, Inc. does not have the source codes for Respondent's DejaVuAI technology in its possession

**Exhibit 9:** Dismissal letter from Washington State Bar Association that investigated immigration attorney Halley Fisher French in response to Respondent's grievance against her. According

to this letter, Ms. Fisher French admitted that she forged Respondent's "Employment contract" (Ex. 5) at Kessler's request by adding a paragraph citing a $60,000 salary. She also stated that Kessler convinced her that 1st1 Technologies, LLP changed its name to DejaVuAI, Inc. and EIN from 85-1294804 to 92-0336356, which resulted in the October 25, 2022 USCIS submission. Apparently, USCIS did not buy it, and Respondent's O-1A visa was issued for 1st1 Technologies, LLP.

**Exhibit 10:** Washington state Department of Revenue registration record for 1st1 Technolgies, LLP

**Exhibit 11:** Washington state Department of Revenue registration record for DejaVuAI, Inc.

**Exhibit 12:** Washington Secretary of State registration record for 1st1 Technolgies, LLP

**Exhibit 13:** Washington Secretary of State registration record for DejaVuAI, Inc.

**Exhibit 14:** Kessler's email to Respondent's attorney notifying Respondent of unilateral dissolution of 1st1 Technologies, LLP

**Exhibit 15:** Washington Secretary of State registration record for 1st1 Technolgies, LLP after ist dissolution

**Exhibit 16:** Response of accountant of 1st1 Technologies, LLP to Respondent's request to release W-2 forms

AMERICAN ARBITRATION ASSOCIATION

**DEJAVUAI, INC.,**
*Claimant,*
v.
**FEDOR KAPOUSTINE** *(erroneously named in District Court filings as "Fydor Kapustin"),*
*Respondent, Pro Se.*
**AAA Case No. 01-26-0005-6588**
*(Related Federal Actions: W.D. Wash. Case No. 2:25-00915-JNW; Ninth Circuit Appeal No. 25-7431)*

# [PROPOSED] ORDER GRANTING RESPONDENT'S COMBINED DISPOSITIVE MOTION TO DISMISS PURSUANT TO AAA COMMERCIAL RULE R-34

THIS MATTER came before the Arbitrator on Respondent Fedor Kapoustine's Combined Dispositive Motion to Dismiss Pursuant to AAA Commercial Arbitration Rule R-34. Having reviewed the Motion, the undisputed documentary record (including sworn federal USCIS Forms I-129 and I-140, the 1st1 Technologies, LLP Operating Agreement, the federal court dockets, and exhibits), and the arguments of the parties, the Arbitrator finds and orders as follows:

1. **Federal Judicial Estoppel and Lack of Title:** Claimant DejaVuAI, Inc. is judicially estopped from asserting that Respondent was employed by DejaVuAI, Inc. or that DejaVuAI, Inc. owns the proprietary software at issue, given Claimant's prior sworn federal certifications to USCIS identifying 1st1 Technologies, LLP (EIN: 85-1294804) as Respondent's sole employer and affirming verbatim that *"Mr. Kapoustine is the inventor and owner of image search and recognition technology, DejaVuAI."* Furthermore, the 1st1 Technologies, LLP Operating Agreement confirms Respondent's sole ownership, and Claimant's contractual claims fail as a matter of law for lack of valid consideration and lack of title.

2. **Equitable Waiver and Laches:** Claimant waived its right to arbitrate Counts III and V by failing to initiate arbitration for 352 days following the District Court's October 8, 2025 Order Compelling Arbitration—despite two explicit written reminders in Ninth Circuit Appeal No. 25-7431—initiating this proceeding only after Respondent moved to dismiss the federal action for failure to prosecute.

## IT IS HEREBY ORDERED:

1. Respondent's Combined Dispositive Motion to Dismiss Pursuant to AAA Commercial Rule R-34 is **GRANTED**;
2. Claimant's arbitrated claims (Counts III and V of the underlying Federal Complaint) are **DISMISSED WITH PREJUDICE**;
3. The Tribunal **RETAINS JURISDICTION** over Respondent's Counterclaims and Respondent's pending Applications for Interim Protective Measures under AAA Commercial Rule R-41 (including forensic preservation of Respondent's Microsoft Office 365 mailbox); and
4. All general discovery propounded by Claimant on Counts III and V is **PERMANENTLY TERMINATED**.

SO ORDERED this _____ day of November, 2026.

______________________

**Rob Gillette**, *Arbitrator*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2026, a true and correct copy of the foregoing *Respondent's Combined Dispositive Motion to Dismiss Pursuant to AAA Commercial Rule R-34* and *Proposed Order* were filed electronically via the AAA WebFile system and/or served via email upon counsel of record for Claimant DejaVuAI, Inc. at the following address:

Claimant's Counsel Email: Brennen@demaineseeberger.com

Claimant's Counsel Name/Firm: deMaine Seeberger PLL

_/s/__Fedor Kapoustine__

**Fedor Kapoustine**, *Respondent Pro Se*