# Exhibit 1

DocuSign

## Certificate Of Completion

| | | |
|---|---|---|
| Envelope Id: 813C677C40DD4F848ECADF33B5D9FC06 | | Status: Completed |
| Subject: Complete with DocuSign: DejaVuAI Inc. - Organizational Records | | |
| Source Envelope: | | |
| Document Pages: 122 | Signatures: 12 | Envelope Originator: |
| Certificate Pages: 5 | Initials: 0 | Amanda Armstrong |
| AutoNav: Enabled | | 17444 NE 97th Way |
| EnvelopeId Stamping: Enabled | | Suite 500 |
| Time Zone: (UTC-08:00) Pacific Time (US & Canada) | | Redmond, WA 98052 |
| | | aarmstrong@cairncross.com |
| | | IP Address: 209.170.232.165 |

## Record Tracking

| | | |
|---|---|---|
| Status: Original<br>Jun 13, 2023 \| 15:06 | Holder: Amanda Armstrong<br>aarmstrong@cairncross.com | Location: DocuSign |

| Signer Events | Signature | Timestamp |
|---|---|---|
| Fedor Kapoustine<br>ted@dejavuai.com<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 98.237.187.143 | Sent: Jun 13, 2023 \| 15:38<br>Resent: Jun 13, 2023 \| 15:39<br>Viewed: Jun 13, 2023 \| 15:41<br>Signed: Jun 13, 2023 \| 15:48 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: Oct 11, 2022 \| 17:57<br>ID: 6c5667de-ebcc-45ea-93cf-60b94ef7ddc1 | | |
| Johnny Kessler<br>johnny@dejavuai.com<br>Security Level: Email, Account Authentication (None) | <br>Signature Adoption: Uploaded Signature Image<br>Using IP Address: 208.53.105.123 | Sent: Jun 13, 2023 \| 15:38<br>Viewed: Jun 13, 2023 \| 16:38<br>Signed: Jun 13, 2023 \| 16:38 |
| **Electronic Record and Signature Disclosure:**<br>Accepted: Jun 13, 2023 \| 16:38<br>ID: ffbe62ca-ef5d-4dad-b415-875e5ee304ea | | |

| In Person Signer Events | Signature | Timestamp |
|---|---|---|

| Editor Delivery Events | Status | Timestamp |
|---|---|---|

| Agent Delivery Events | Status | Timestamp |
|---|---|---|

| Intermediary Delivery Events | Status | Timestamp |
|---|---|---|

| Certified Delivery Events | Status | Timestamp |
|---|---|---|

| Carbon Copy Events | Status | Timestamp |
|---|---|---|

| Witness Events | Signature | Timestamp |
|---|---|---|

| Notary Events | Signature | Timestamp |
|---|---|---|

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Sent | Hashed/Encrypted | Jun 13, 2023 \| 15:38 |

| Envelope Summary Events | Status | Timestamps |
|---|---|---|
| Envelope Updated | Security Checked | Jun 13, 2023 \| 15:39 |
| Certified Delivered | Security Checked | Jun 13, 2023 \| 16:38 |
| Signing Complete | Security Checked | Jun 13, 2023 \| 16:38 |
| Completed | Security Checked | Jun 13, 2023 \| 16:38 |

| Payment Events | Status | Timestamps |
|---|---|---|

**Electronic Record and Signature Disclosure**

# Exhibit 2

Ted Kapustin Mon 4/21/2025 1:40 PM

Lubic, Michael B. <michael.lubic@klgates.com>

+2 others

No, I am saying that if you connue using deliberately false informaon and invalid and forged documents to threaten me and to extort my invenon from me, I will le a complaint against your rm. People in the Bar Associaon are not idiots; they will see all your wrongdoing that you have been documenng yourself.

Your client has no chance, and you should have realized it by now. When he presented false informaon and invalid and forged documents to you more than 2 months ago, you assumed that all that informaon and documents were legit. But now you know the truth. But it looks like money doesn't smell for you. Like he got in trouble (I am sure he will get a criminal record for the fraud he commi*ed, unless the statute of limitaons expires before he is convicted), you will get in trouble for helping him while knowing that he is commi,ng a crime.

Again, your e-orts will result in nothing but trouble for you and your client. By now, you should be happy that this fraudulent fool already gave you some $5-6K, according to my esmate. Just let him go and get busy with something else. Or is there a shortage of work for you?

**How can I complain of a law rm that violates the law?**

To complain about a law rm violang the law in Washington State, you should le a grievance with the Washington State Bar Associaon (WSBA). The WSBA will invesgate the complaint and take appropriate acon if misconduct is found. You can also consider contacng your local law enforcement or prosecutor's o8ce if you believe the law rm has commi*ed a crime. [1, 2, 3]

**Here's a more detailed breakdown: [2]**

1. **Filing a Grievance with the WSBA:**
    - Visit the WSBA website.
    - Complete the online grievance form.
    - Ensure you specically name the lawyer against whom you are ling the complaint.
    - Provide details about the violaon and any supporng documentaon.
    - You can also contact the WSBA by phone (1-800-945-WSBA) or email (intake@wsba.org).
2. **Contac(ng Law Enforcement/Prosecutor:**
    - If the law rm's acons constute a crime (e.g., fraud, theE), you should report it to your local law enforcement agency or prosecutor's o8ce. [1, 2, 3, 4, 5]

**Addi(onal Informa(on: [2]**

- **Not all disputes are considered grievances:** If you have a minor disagreement with your lawyer, you may be able to seek assistance from the WSBA without ling a full complaint. [2]
- **Fee disputes:** If your complaint is about the amount your lawyer charged, you may be referred to a fee arbitraon service. [6]
- **Legal malprac(ce:** If your lawyer's acons caused you harm, you may be able to pursue a legal malpracce lawsuit. [7]
- **Consult with an a/orney:** If you are unsure how to proceed or if you have complex issues, you may want to consult with another a*orney. [8]

Generave AI is experimental.

[1] h*ps://www.atg.wa.gov/help-topic
[2] h*ps://www.wsba.org/for-the-public/concerns-about-a-lawyer
[3] h*ps://www.ndlaw.com/hirealawyer/choosing-the-right-lawyer/where-can-i-le-a-complaint-against-my-lawyer.html
[4] h*ps://onlinegrievance.wsba.org/
[5] h*ps://legal-info.lawyers.com/research/legal-malpracce/reporng-lawyer-for-ethics-violaons.html
[6] h*ps://www.americanbar.org/groups/public_educaon/resources/public-informaon/what-if-i-am-unhappy-with-my-lawyer-/
[7] h*ps://www.pstas.com/arcles/can-i-sue-my-unethical-a*orney/
[8] h*ps://www.cab.org.nz/arcle/KB00001124

**From:** Ted Kapusn <ted@1st1.tech>
**Sent:** Friday, April 18, 2025 12:19 AM
**To:** Lubic, Michael B. <michael.lubic@klgates.com>
**Cc:** McCandless, Spencer <Spencer.McCandless@klgates.com>; Guess, Philip <Philip.Guess@klgates.com>
**Subject:** Re: Le*er Re: Misuse of DejaVuAI, Inc.'s Intellectual Property

What do you want from me?
You have no business with my immigraon a*orney, and he has nothing to do with IP.
I told to you several mes, and I will repeat it again: I NEVER worked for DejaVuAI, Inc. Therefore, that "document" with a trap is INVALID. Period. If you want to share the opinion of your immigraon group with me, go ahead - maybe they will convince me.
My understanding is that your client pre-sold my invenon for Musk or Thiel, and they are paying you (or they just cover his expenses).
It's now clear to me that he never wanted to sign a license agreement with me. He wants my technology in its enrety. Well, I am not sure I can help him with that.

---

**From:** Lubic, Michael B. <michael.lubic@klgates.com>

**Sent:** Thursday, April 17, 2025 10:25 PM
**To:** Ted Kapusn <ted@1st1.tech>
**Cc:** McCandless, Spencer <Spencer.McCandless@klgates.com>; Guess, Philip <Philip.Guess@klgates.com>
**Subject:** RE: Le*er Re: Misuse of DejaVuAI, Inc.'s Intellectual Property

Our immigration group does not agree with the advice you received. Because you are represented by counsel, under the rules of professional conduct we cannot communicate with you without their express consent. Please provide us with contact information for your counsel so that our immigration attorneys can discuss the immigration issues with them and figure out why they differ in their analysis.

**From:** Ted Kapusn <ted@1st1.tech>
**Sent:** Wednesday, April 16, 2025 3:44 PM
**To:** Guess, Philip <Philip.Guess@klgates.com>
**Cc:** Lubic, Michael B. <michael.lubic@klgates.com>; McCandless, Spencer <Spencer.McCandless@klgates.com>
**Subject:** Re: Le*er Re: Misuse of DejaVuAI, Inc.'s Intellectual Property

Hello,

At this time, I only have an immigration attorney who be in court with me if your client litigates me of gets a court order (which will be appealed). Depending on the future actions of your client, I can hire either an IP lawyer (to help me with creating a proper license agreement with DejaVuAI, Inc.) or a litigation attorney.

Let me remind you that DejaVuAI, Inc. has NO RIGHT to my invention, including algorithms and source codes. According to the document "1st1 Technologies, LLP operating agreement" that you included in your letter to me sent on February 11, 2025, I am the sole inventor and owner of my technology trademarked as DejaVuAI. The document "DejaVuAI, Inc. proprietary information and invention assignment agreement" is INVALID because I never worked for DejaVuAI, Inc. in any capacity (simply because I never had a work visa for it). My O-1 visa was issued ONLY for 1st1 Technologies, LLP, and its start date is July 1, 2022 (let me remind you that DejaVuAI, Inc. was registered only on September 1, 2022, and was incorporated on October 11, 2022).

My immigration attorney already conducted an analysis of all the documents that your client submitted to Cascadia law firm in October 2022, and his conclusion (he provided it in writing, and I will bring this analysis to court) is that DejaVuAI, Inc. could not legally employ me, and therefore any agreement with it that required my employment is invalid and not enforceable. I encourage you to talk to an immigration attorney too before you make a decision to file for a court order or to litigate me.

Here is what Google says in response to the question: **"Is hiring an unauthorized alien a crime in Washington?"**

=======================

**Yes, in Washington State and federally, hiring an unauthorized alien is generally considered a crime or violation of law**. Specifically, the Immigration Reform and Control Act (IRCA) prohibits knowingly hiring unauthorized aliens, and can result in civil penalties, fines, and even imprisonment for employers. [1, 2, 3, 4]

**Here's a more detailed breakdown: [2, 5]**

- **Federal Law:** Title 8 U.S. Code, Section 1324a, makes it unlawful for employers to knowingly hire unauthorized aliens. This includes hiring, recruiting, or referring for a fee. [1, 2, 5]
- **Penalties:** Violations can result in civil penalties, ceasing and desist orders, and in some cases, criminal penalties like imprisonment or fines for employers. [3, 4]
- **Pattern or Practice:** If an employer engages in a pattern or practice of hiring unauthorized aliens, they can face more severe penalties, including imprisonment of up to six months. [3, 6]
- **State Law:** While Washington State law also addresses immigration issues, it generally does not criminalize the hiring of unauthorized aliens. However, state law does have provisions that could affect employers who engage in certain practices related to hiring, such as using false documents. [6, 7, 8, 9]
- **Sanctuary Cities:** Washington State has some municipalities that are considered sanctuary cities, which can affect how state and local law enforcement agencies interact with federal immigration enforcement efforts. [8]

[1] https://wilshirelawfirm.com/blog/undocumented-immigrant-faq-workers-rights/
[2] https://www.justice.gov/sites/default/files/eoir/legacy/2007/09/20/274a.pdf
[3] https://cis.org/Report/Are-UC-Officials-Who-Hire-Illegal-Aliens-Subject-Prosecution
[4] https://www.shrm.org/topics-tools/news/talent-acquisition/employers-face-consequences-hiring-unauthorized-workers
[5] https://www.law.cornell.edu/uscode/text/8/1324a
[6] https://www.justice.gov/archives/jm/criminal-resource-manual-1908-unlawful-employment-aliens-criminal-penalties
[7] https://app.leg.wa.gov/RCW/default.aspx?cite=10.93.160
[8] https://www.theolympian.com/news/politics-government/article303952366.html
[9] https://app.leg.wa.gov/rcw/default.aspx?cite=49.44&full=true

===================

Even if your client somehow proves (which is VERY unlikely) that I conspired with him to work illegally for DejaVuAI, Inc. (hoping that he will only pay a fine, but will still get my technology), this WILL NOT validate that invalid document. Here is what Google says in

response to the question: **"Can an agreement with an employer be enforced if the employment was illegal?"**

==================

Generally, **an agreement with an employer cannot be enforced if the employment itself was illegal**. Agreements born from illegal acts are considered void and not enforceable. For instance, if an employment contract involves violating labor laws, the contract will likely be struck down by a court. [1, 2]

**Here's why: [1, 2]**

- **Illegality as a Defense:** A key factor that can void an employment contract is illegality. If the contract's terms involve illegal activities or are otherwise prohibited by law, it's considered void from the outset. [1, 2]
- **Public Policy:** Courts prioritize upholding public policy, and enforcing an illegal contract would contradict that principle. [1, 2]
- **Examples:** A contract involving illegal labor practices, discriminatory employment practices, or activities that violate specific laws will likely not be enforceable. [1, 2, 3]
- **Unconscionable Agreements:** Even if not strictly illegal, overly one-sided or unfair agreements may be deemed unenforceable due to being against public policy. [4]

In summary: If the foundation of the agreement, the employment itself, is illegal, the agreement is unlikely to be upheld by a court. The illegality acts as a fundamental defense against enforcement. [1, 2]

[1] https://www.cjmmlaw.com/what-can-cause-an-employment-contract-to-be-void/
[2] https://redmans.co.uk/employment-law-solicitors/employment-contracts/
[3] https://app.leg.wa.gov/rcw/default.aspx?cite=49.44&full=true
[4] https://www.quora.com/Is-it-illegal-for-a-contract-to-have-something-totally-different-than-what-was-verbally-agreed-to-especially-in-an-employment-sense

================
One more response:
==================

**No, an agreement with an employer is generally not enforceable if the employment itself was illegal**. An agreement, including an employment contract, is considered void if it involves illegal activities or violates fundamental legal principles. [1, 2]

**Here's why: [1, 2]**

- **Illegality voids contracts:** Courts generally will not enforce contracts that are based on or involve illegal actions. If the employment itself was illegal, the entire

agreement, including the employment contract and any related terms, is likely to be deemed unenforceable.

- **Public policy:** Enforcing an agreement that enables or facilitates illegal activity would be against public policy, which generally prohibits courts from upholding contracts that are illegal or immoral.
- **Example:** If an employer hires someone knowing they are not legally permitted to work in the country, any contract with that person would be void because the employment itself is illegal. [1, 2]

**Important Considerations: [3]**

- At-will employment: In Washington, which is an "at-will" employment state, an employer can generally terminate an employee for any reason, as long as it doesn't violate any laws. However, even in at-will states, employers cannot fire an employee for reasons that are illegal under federal or state law. [3]
- Non-compete agreements: Non-compete agreements, which restrict an employee from working for a competitor after leaving a company, can be tricky. They must be reasonably limited in time and geography to be enforceable. [4, 5]
- Retaliation: Employers are prohibited from retaliating against employees who have engaged in certain protected activities, such as reporting illegal activity. [3, 6]
- Non-solicitation agreements: In Washington, non-solicitation agreements (which restrict an employee from soliciting a company's customers) are now treated as non-compete agreements if they cover prospects, not just current customers. [4]

In summary, if an employment agreement is based on or facilitates an illegal activity, it will likely be considered void and unenforceable by the courts. [1, 2]

[1] https://www.cjmmlaw.com/what-can-cause-an-employment-contract-to-be-void/
[2] https://www.hcamag.com/us/specialization/employment-law/what-makes-an-employment-contract-void/401856
[3] https://www.lni.wa.gov/workers-rights/workplace-policies/termination-retaliation
[4] https://www.fisherphillips.com/en/news-insights/washington-just-turned-many-non-solicitation-agreements.html
[5] https://katzmelinger.com/understanding-non-compete-agreements-what-is-a-non-compete-and-can-it-be-enforced-if-i-am-fired/
[6] https://www.nolo.com/legal-encyclopedia/wrongful-termination-was-firing-illegal-32282.html

==================

I have to add that your client committed a document fraud in fall 2022, and I already reported this fraud to the FBI and USCIS.  I am pretty sure his crimes will be investigated and prosecuted. And if he gets a criminal record, I will NOT sign anything with him. So, if he wants to create and sign a proper license agreement with me, he should do it promptly. BTW, it turns out, DejaVuAI, Inc. does not even have a proper license to sell my

software in a binary form, let alone to own my algorithm (which is entirely in my head) and my source codes. So, DejaVuAI Inc. may soon receive a Cease-and-Desist letter from my attorney.

Also be informed that your client keeps providing you with deliberately false information (his main premise that I worked for DejaVuAI, Inc., even though he could not hire me there because on March 1, 2023 he received a copy of my O-1 visa approval notice which he later emailed to me). As you may know, providing deliberately false information even to a private law firm can be a crime (see links in my crime report to the FBI).

My suggestion is that we go straight to a license agreement because everything else will be a waste of time and money on both sides and will make the situation of your client even worse (because even more of his crimes will be exposed in court, and he will be immediately referred to the law enforcement for them), Also, if he litigates me, it will be a good opportunity for me to file a number of counter-claims such as not paying me salary at 1st1 Technologies for over 2 months, not providing me with correct W-2 forms (so I can't file a tax return and can't apply for Adjustment of Status for my Green Card, etc.). And since these counter-claims will be for him as CEO of 1st1 Technologies, LLP, he will be responsible with his personal assets for his wrongdoing, not with the company's ones.

So, he should choose between continuing his desperate attempts to get my technology (which he will never get) and bankrupt DejaVuAI, Inc, in the process OR to sign a mutually lucrative license agreement and bathe in money (and the investors of DejaVuAI, Inc. will bathe in money too in this case). And again, I WILL NOT be signing ANYTHING with a convicted felon.

I am attaching my second crime report to the FBI (I sent a copy of it to USCIS) that I submitted in person a week ago (and it was taken seriously). You can get all other documents, including the fraudulent documents that he uploaded to Cascadia, directly from your client (I also believe that I shared some of them with you earlier).

Thanks,
Ted

---

**From:** Guess, Philip <Philip.Guess@klgates.com>
**Sent:** Tuesday, April 15, 2025 6:28 PM
**To:** Ted Kapusn <ted@1st1.tech>
**Cc:** Lubic, Michael B. <michael.lubic@klgates.com>; McCandless, Spencer <Spencer.McCandless@klgates.com>
**Subject:** RE: Le*er Re: Misuse of DejaVuAI, Inc.'s Intellectual Property

Mr. Kapustin:

Our understanding is that Mr. Claiborne is no longer your counsel. Have you retained new counsel and, if so, what is the name of your attorney?

Thank you. Phil Guess.

# Exhibit 3

DejaVuAI inc.

**Employment Contract between DejaVuAI Inc. and Fedor (Ted) Kapoustine**

The following is a summary of the terms and conditions of Mr. Kapoustine's proposed emp
with DejaVuAI Inc. (formerly S1 1 Technologies LLP).

Mr. Kapoustine will be employed on a full-time basis by S1 1 Technologies as Chief Technology
Officer. In this role, he will oversee all company policies related to the developme
proprietary technology, DejaVuAI. Along with the Chief Executive Officer, he will plan, dire
coordinate operational activities at the highest level of management. His specific respons
and accountabilities will include:

- Plan, direct, and implement technology policies, objectives, and/or activities to continuing operations, maximize returns on investments, and increase productivity
- Oversee all activities related to technology development, specifically the application company's central product, DejaVuAI
- Analyze technology and program operations to evaluate performance and determin of improvement
- Implement corrective action plans to solve technology-related problems
- Confer with Co-Founder and the Chief Executive Officer discuss issues, coordinate a and/or resolve problem
- Work with executive team and board members to establish departmental responsib and coordinate functions among departments
- Hire/appoint subordinate technology managers and staff and assign or delegate responsibilities to them
- Work with Co-Founder and CEO to negotiate or approve contracts with both public a private entities, including federal or state agencies
- Deliver speeches, write articles, and/or present information at meetings or conventi promote DejaVuAI, exchange ideas, and accomplish objectives.
- Direct or conduct studies or research on technology-related issues
- Make presentations to legislative or other government committees regarding DejaV
- Attend meetings of government agencies/municipal councils/committees.
- Represent DejaVuAI Inc. to promote its objectives at official functions, or dele representatives to do so.

Benefits include salary, fully paid health insurance, paid time off (PTO), and holiday pay.

As a minority owner of a start-up, Mr. Kapoustine agrees that his annual salary will be bas
company performance. All members of this organization will be entitled annual profit-shar
addition to salary. Based on DejaVuAI current sales and prospective contracts for our pro
estimated that Mr. Kapoustine's salary figure for 2022 will be $150,000 USD. Please see S
A on page 2 "Combined Sales Tracker 2022-2023 for a full explanation of our cur
prospective contracts.

The below signed hereby agree to the terms and conditions set forth above.

Johnny Kessler

Fedor (Ted) Kapoustine

# Exhibit 4

DejaVuAI inc.

**Employment Contract between DejaVuAI Inc. and Fedor (Ted) Kapoustine**

The following is a summary of the terms and conditions of Mr. Kapoustine's proposed emp
with DejaVuAI Inc. (formerly 1st Technologies LLP).

Mr. Kapoustine will be employed on a full-time basis by DejaVuAI Inc. as Chief Tec
Officer. In this role, he will oversee all company policies related to the developme
proprietary technology, DejaVuAI. Along with the Chief Executive Officer, he will plan, dire
coordinate operational activities at the highest level of management. His specific respons
and accountabilities will include:

- Plan, direct, and implement technology policies, objectives, and/or activities to continuing operations, maximize returns on investments, and increase productivity
- Oversee all activities related to technology development, specifically the applicatior company's central product, DejaVuAI
- Analyze technology and program operations to evaluate performance and determin of improvement
- Implement corrective action plans to solve technology-related problems
- Confer with Co-Founder and the Chief Executive Officer discuss issues, coordinate a and/or resolve problem
- Work with executive team and board members to establish departmental responsib and coordinate functions among departments
- Hire/appoint subordinate technology managers and staff and assign or delegate responsibilities to them
- Work with Co-Founder and CEO to negotiate or approve contracts with both public a private entities, including federal or state agencies
- Deliver speeches, write articles, and/or present information at meetings or conventi promote DejaVuAI, exchange ideas, and accomplish objectives.
- Direct or conduct studies or research on technology-related issues
- Make presentations to legislative or other government committees regarding DejaV
- Attend meetings of government agencies/municipal councils/committees.
- Represent DejaVuAI Inc. to promote its objectives at official functions, or dele representatives to do so.

Benefits include salary, fully paid health insurance, paid time off (PTO), and holiday pay.
Mr. Kapoustine will be guaranteed a base salary of $60,000, with additional remuneration subject to sales revenues.
As a minority owner of a start-up, Mr. Kapoustine agrees that his annual salary will be bas
company performance. All members of this organization will be entitled annual profit-shar
addition to salary. Based on DejaVuAI current sales and prospective contracts for our pro
estimated that Mr. Kapoustine's salary figure for 2022 will be $150,000 USD. Please see S
A on page 2 "Combined Sales Tracker 2022-2023 for a full explanation of our cur
prospective contracts.

The below signed hereby agree to the terms and conditions set forth above.

Johnny Kessler

Fedor (Ted) Kapoustine

# Exhibit 5

**Employment Contract between DejaVuAI Inc. and Fedor (Ted) Kapoustine**

The following is a summary of the terms and conditions of Mr. Kapoustine's proposed emp
with DejaVuAI Inc. (formerly Technologies LLP).

Mr. Kapoustine will be employed on a full-time basis by DejaVuAI Inc. as Chief Tec
Officer. In this role, he will oversee all company policies related to the developme
proprietary technology, DejaVuAI. Along with the Chief Executive Officer, he will plan, dire
coordinate operational activities at the highest level of management. His specific respons
and accountabilities will include:

- Plan, direct, and implement technology policies, objectives, and/or activities to continuing operations, maximize returns on investments, and increase productivity
- Oversee all activities related to technology development, specifically the applicatio company's central product, DejaVuAI
- Analyze technology and program operations to evaluate performance and determin of improvement
- Implement corrective action plans to solve technology-related problems
- Confer with Co-Founder and the Chief Executive Officer discuss issues, coordinate a and/or resolve problem
- Work with executive team and board members to establish departmental responsib and coordinate functions among departments
- Hire/appoint subordinate technology managers and staff and assign or delegate responsibilities to them
- Work with Co-Founder and CEO to negotiate or approve contracts with both public a private entities, including federal or state agencies
- Deliver speeches, write articles, and/or present information at meetings or conventi promote DejaVuAI, exchange ideas, and accomplish objectives.
- Direct or conduct studies or research on technology-related issues
- Make presentations to legislative or other government committees regarding DejaV
- Attend meetings of government agencies/municipal councils/committees.
- Represent DejaVuAI Inc. to promote its objectives at official functions, or dele representatives to do so.

Benefits include salary, fully paid health insurance, paid time off (PTO), and holiday pay.
Mr. Kapoustine will be guaranteed a base salary of $60,000, with additional remuneration subject to sales revenues.
As a minority owner of a start-up, Mr. Kapoustine agrees that his annual salary will be bas
company performance. All members of this organization will be entitled annual profit-shar
addition to salary. Based on DejaVuAI current sales and prospective contracts for our pro
estimated that Mr. Kapoustine's salary figure for 2022 will be $150,000 USD. Please see S
A on page 2 "Combined Sales Tracker 2022-2023 for a full explanation of our cur
prospective contracts.

The below signed hereby agree to the terms and conditions set forth above.

Johnny Kessler

Fedor (Ted) Kapoustine

# Exhibit 6

October 25, 2022

**Premium Processing**
**Delivered Via FedEx**

Premium Processing Service
USCIS California Service Center
Attn: I-129 O
24000 Avila Road
2nd Floor, Room 2312
Laguna Niguel, CA 92677

**RE: DejaVuAI Inc. (Formerly 1st1 Technologies, LLP)'s Petition to Classify Fedor (Ted) Kapoustine as an O-1 Alien of Extraordinary Ability in Image Comparison Algorithm Development**

**Response to RFE Dated July 1, 2022**

Dear Adjudicator:

**DejaVuAI Inc.** (F/K/A 1st1 Technologies LLP**)** ("Petitioner") submits this letter in response the attached Request for Evidence issued on July 1, 2022.

**Exhibit 1: Copy of RFE Dated July 1, 2022**

**Exhibit 2: USCIS Announcement Extending Flexibility in Responding to Agen Requests**

Since Petitioner submitted the I-129 for Mr. Kapoustine on June 17, 2022 (**WAC22250503** has changed its name from 1st Technologies LLP to DejaVuAI Inc. Please see:

**Exhibit 3: Updated I-129 page 1 and O Supplement page 26 indicating Petitio New Name and IRS Tax Identification Number**

**Exhibit 4: Petitioner's Updated Corporate Documents:**

- **Updated Articles of Incorporation**
- **Updated Bylaws**
- **IRS Letter assigning Federal Tax Identification Number**

As requested by the RFE, the following is a summary of the terms and conditions Kapoustine's proposed employment with Petitioner, as well as a summary of the company to pay Mr. Kapoustine's proposed salary.

**Employment Agreement**

Mr. Kapoustine will be employed full-time by DejaVuAI as Chief Technology Officer. In this he will oversee all company policies related to developing its proprietary technology. He w direct, and coordinate operational activities with the Chief Executive Officer at the management level. His specific responsibilities and accountabilities will include the follow

- Plan, direct, and implement technology policies, objectives, and activities to e continuing operations, maximize returns on investments, and increase productivity
- Oversee all activities related to technology development, specifically the application company's central product, DejaVuAI
- Analyze technology and program operations to evaluate performance and determine of improvement
- Implement corrective action plans to solve technology-related problems
- Confer with the Co-Founder and CEO to discuss issues, coordinate activities, and res problems
- Work with the Executive Team to establish departmental responsibilities and coordi functions among departments
- Hire/appoint subordinate technology managers and staff and assign or delegate responsibilities to them
- Work with Co-Founder and CEO to negotiate or approve contracts with both public a private entities, including federal or state agencies
- Deliver speeches, write articles, and present information at meetings or conv promote DejaVuAI, exchange ideas and accomplish objectives
- Direct or conduct studies or research on technology-related issues
- Make presentations to legislative or other government committees regarding DejaV technology
- Attend meetings of government agencies/municipal councils/committees
- Represent DejaVuAI to promote its objectives at official functions or delegate representatives to represent the company

**As a minority shareholder, Mr. Kapoustine's annual salary will be based on performance.** He is guaranteed a base salary of $60,000, with additional remuneration su sales revenues. He will be entitled to annual profit-sharing in addition to his salary. Based DejaVuAI's current sales figures and prospective contracts, we project Mr. Kapoustine's sa figure will be $150,000. Please see:

**Exhibit 5: Signed Employment Agreement between Mr. Kapoustine and DejaVuAI**

**Exhibit 6: List of DejaVuAI's Current and Prospective Contracts**

**Exhibit 7: Updated I-129 Page 5 Clarifying Mr. Kapoustine's Remuneration**

**Ability to Pay**

Since its establishment in June 2020, DejaVuAI has generated $72,000 in sales. **The comp has several projects in process, culminating in over $9.2 million in projected reven the next twelve months.**

- DejaVuAI has received an investment of $400,000 from TRT Tech, LCC, a co owned by Tim Tebow. Please see:

  **Exhibit 8: Stock Purchase Agreement**

  **Exhibit 9: Bank of America Wire Transfer Confirmation and Associated Bank Statements Showing $400,000 Investment**

- DejaVuAI recently sponsored and participated in the following events geared at sup Law Enforcement efforts in combatting human trafficking:

  - The National Child Protection Task Force (NCPTF) annual Law Enforceme Training Conference in Fayetteville, Arkansas.
  - The Human Trafficking Training Center's 2022 North American Human Trafficking Conference in Las Vegas, Nevada.

  Please see:

  **Exhibit 10: National Child Protection Task Force (NCPTF) Sponsorship Agreement for the 2022 NCPTF Conference on 06/27/22 07/01/2022; Excerpts from Event Website**

  **Exhibit 11: LinkedIn Posts from the Human Trafficking Training Center's 2022 North American Human Trafficking Conference**

  As a result of these events, DejaVuAI has been sought for involvement in several lar projects. One of these projects is NCPTF's utilization of DejaVuAI to support i operations. This project will be fully funded and supported through sponsorships by Tim Tebow Foundation, The Janus Fund, Operation Lightshine, the All Things Possibl Foundation, and the Lantern Rescue Foundation. Petitioner will be able to pro solutions for these organizations by applying $2 million worth of DejaVuAI software aid in child rescue and combatting human trafficking worldwide.

- DejaVuAI's existing customer, Paliscope, has issued multiple orders and propo several NATO countries and U.S. Allies. Please see the following Proposal ID Petitioner's list of current and prospective contracts in **Exhibit 6**.

  **Exhibit 12: Paliscope Proposal ID for $195,000 for DejaVuAI Software**

- DejaVuAI is actively engaging with operations and security professionals at Starbuck a pilot project that will produce **$500,000** in annual renewable revenue.

- Petitioner also has received funding from the U.S. government to support the expan its technology. In a field of over 1,000 applicants, Petitioner was chosen to be in the 25% and was granted the U.S. Air Force AFWERX 21.2B Small Business Innovation & Research (SBIR) Phase I Award. This was an award of over $49,000 from the U.S. fe government. Please see:

  **Exhibit 13: SBIR Contract with the U.S. Air Force**

  **Exhibit 14: Receipts Confirming Payment of SBIR Award Funds**

- Additional private investors and projects have approached Petitioner with prop Petitioner leveraged these investors, it could raise $10 million within 90 days. Attac a confidential Memorandum of Understanding (MOU) between Petitioner and D Cortex, Aurora Forge, and others to raise this capital to get DejaVuAI software to va government agencies in the U.S. Please see:

  **Exhibit 14: Memorandum of Understanding**

Accordingly, DejaVuAI has the ability to pay Mr. Kapoustine's proposed salary based on th of the parties' employment agreement.

**Conclusion**

Petitioner DejaVuAI Inc. submits that this evidence satisfies the agency's Request for Evid regarding the terms of Mr. Kapoustine's employment. Petitioner respectfully requests that 1A Petition be approved. Please contact Attorney Halley Fisher (G-28 attached) if you requ additional information.

Sincerely,

**DejaVuAI**

Johnny Kessler
Chief Executive Officer

HELLOSIGN

# Audit Trail

| | |
|---|---|
| **TITLE** | DejaVuAI RFE Response Cover Letter.pdf |
| **FILE NAME** | DejaVuAI%20RFE%20...over%20Letter.pdf |
| **DOCUMENT ID** | 211b13a2414b635d9067df59bee2e142a4ab2c82 |
| **AUDIT TRAIL DATE FORMAT** | MM / DD / YYYY |
| **STATUS** | ● Signed |

**This document was requested from app.clio.com**

## Document History

| | | |
|---|---|---|
| SENT | **10 / 25 / 2022**<br>21:57:53 UTC | Sent for signature to Johnny Kessler (johnny@dejavuai.com)<br>from hfisher@cascadia.com<br>IP: 75.151.105.100 |
| VIEWED | **10 / 25 / 2022**<br>23:22:40 UTC | Viewed by Johnny Kessler (johnny@dejavuai.com)<br>IP: 208.53.105.123 |
| SIGNED | **10 / 25 / 2022**<br>23:23:51 UTC | Signed by Johnny Kessler (johnny@dejavuai.com)<br>IP: 208.53.105.123 |
| COMPLETED | **10 / 25 / 2022**<br>23:23:51 UTC | The document has been completed. |

# Exhibit 7

**Attn. Halley Fisher French**

Ted Kapustin Tue 3/4/2025 9:00 AM

Halley French <hsher@cascadia.com>

Tue 3/4/2025 8:56 AM

Hello Halley,

Thank you for a prompt and detailed response.
I DO NOT authorize ling a peon for any work visa that would allow my direct employment in any capacity by DejaVuAI, Inc.

Thanks,
Ted

Halley French <hfisher@cascadia.com> Tue 3/4/2025 8:56 AM

Ted Kapustin

Hi Ted,

Your current O-1 status is through 1st1 Technologies, LLP – see attached approval notice. So, 1st1 Technologies is the only US company you are authorized to directly work for under your visa. If DejaVuAI Inc. contracted with 1st1 Technologies for your services, you should be able to provide those services pursuant to your employment contract with 1st1. Alternatively, if you were to work directly for DejaVuAI Inc., that is doable, but we should file an amended petition listing DejaVuAi Inc. as an additional employer (or, when we file the renewal application, we can switch the petitioning employer to DejaVuAI Inc. and explain the relationship between the companies).

Hope this helps.

Thanks,
Halley

Ted Kapustin Mon 3/3/2025 10:30 AM

info@cascadia.com

Hello Halley,

This is Fedor ("Ted") Kapousne with whom you have been working since January 2022.
My O-1 sponsored by 1st1 Technologies, LLP was approved in March 2023 and was back-dated to July 1, 2022. And a year ago, as far as I remember, my EB-1A applicaon was approved.
I have a quick queson: which visa am I on now? Does it allow me to work for any employer in the US? Specically, am I allowed to work for DejaVuAI, Inc. (not to be confused with DejaVuAI, which is "DBA" for 1st1 Technologies, LLP)?

Thanks,
Ted
(425)240-4627

# Exhibit 8

Yan (Regina) [redacted] Wed 6/18 12:41 PM

Ted Kapustin

Adam [redacted]

Hi Ted,

The opposing counsel sent the below message just now:

“Mr. Kapustin,

Per your email yesterday and DejaVuAI’s bylaws, your resignation from DejaVuAI’s Board of Directors was effective immediately when I forwarded your email to DejaVuAI as you requested. We are asking that you sign a resignation statement only so that all parties will have a clean formal record of what occurred yesterday for their files. The signed statement is not a legal requirement; it is just for your and the Company’s convenience.

DejaVuAI, Inc. is nevertheless happy to certify that it does not currently have any source code written by you in its possession (though the Company reserves all legal claims and arguments regarding ownership, licensing, and other property rights concerning such source code).

I will have the proposed resignation statement over to you via DocuSign with copies to your current attorneys later today. Please let your attorneys know if you have any questions or requested edits. ”

Best,

[redacted]

# Exhibit 9

**KEVIN BANK LAW**
1109 1st Ave, Ste 212
Seattle, WA 98101
(206) 771-6418
kevin@kevinbanklaw.com

SENT VIA EMAIL

April 21, 2026

Claire Carden
Disciplinary Counsel
Clairec@wsba.org

Re: Grievance of Kapoustine against French
ODC File No. 25-02082

Dear Ms. Carden:

On behalf of Ms. French, I am responding to Mr. Kapoustine's April 2, 2026 email reply to Ms. French's March 30, 2026 response to his grievance.

In his reply, Mr. Kapoustine alleges Ms. French has committed federal crimes in submitting the updated employment agreement in response to USCIS's July 2022 Request for Evidence (RFE). His allegations are baseless.

1. Allegation of Forgery:

Ms. French certainly did not commit forgery. The crime of forgery has a mens rea of intent to defraud. *Vasquez-Borjas v. Garland*, 36 F.4th 891, 898-99 (9th Cir. 2022). Although intent and knowledge may be inferred from a defendant's overall actions, *United States v. Lorenzo*, 570 F.2d 294, 299 (9th Cir. 1978), there has to be a basis for making such an inference. There is no such basis here.

The employment agreement Ms. French submitted to USCIS was not forged, counterfeited, false, or inaccurate. Even if it were, there is no evidence to suggest that Ms. French acted with an intent to defraud anyone. Ms. French's goal in making the ministerial edit to the employment agreement was to provide USCIS with truthful information that would address its concerns as expressed in the RFE. The change clarified that the petitioning employer would guarantee Mr. Kapoustine $60,000 of his projected compensation of $150,000. The change furthered the interests of her joint clients, *i.e.*, to strengthen the O-1A petition. Ms. French had no reason to doubt Mr. Kessler's assurance that he would guarantee $60,000 of Mr. Kapoustine's projected $150,000 salary. There is absolutely no evidence that Ms. French intended to defraud USCIS or Mr. Kapoustine. The information she provided to USCIS was approved by her employer co-client, who would be responsible for paying the salary to Mr. Kapoustine. Mr. Kapoustine received the RFE response

that included the version of the employment agreement with the change prior to submission of the RFE response to USCIS and raised no objections. There is simply no evidence that Ms. French manifested an intention to defraud USCIS through forgery, and no facts or circumstances to create an inference that she intended to deceive or defraud USCIS through forgery.

2. Allegation of Perjury

Similarly, there is no basis for the allegation of perjury. An action alleging perjury under 18 U.S.C. §1621 will only be successful if the defendant willfully subscribes as true any material matter which he/she does not believe to be true. 18 U.S.C. §1621(2). A defendant must act with "willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Taylor*, 749 F.3d 842, 848 (9th Cir. 2014). Federal courts state that the term "willfully" requires the defendant have committed a "conscious act with the purpose of obstructing justice." *United States v. Lofton*, 905 F.2d 1315, 1316-17 (9th Cir. 1990) (quoting *United States v. Stroud*, 893 F.2d 504, 507 (2d Cir. 1990)). Ms. French could not have committed perjury because Ms. French had no basis to believe that the updated employment agreement was not truthful and she did not willfully submit it to USCIS to obstruct justice. As explained above, there is not even a scintilla of evidence to establish that she submitted a document to USCIS that she knew to be untrue. She believed the document to be true and accurate, based on her conversations with Mr. Kessler. Mr. Kapoustine was provided with access to the document via the shared drive before it was submitted and raised no objection to the ministerial change. As a software engineer with decades of experience and extraordinary ability in the field of image comparison algorithm development, Mr. Kapoustine is a sophisticated client who possesses the technical knowledge to access a client portal. Ms. French made the addition to the employment agreement for the purpose of clarifying the terms of remuneration, *i.e.*, reflecting the accurate statement that Mr. Kapoustine would receive some guaranteed amount of compensation and not engage in speculative self-employment. The purpose of this addition was to strengthen the application with more detailed information, not to obstruct justice. Moreover, the change was not material, as it retained Mr. Kapoustine's original projected salary of $150,000; it only clarified that Mr. Kapoustine was *guaranteed* at least $60,000, as opposed to being guaranteed $0. There is simply no evidence that Ms. French acted willfully to provide false information to USCIS.

3. Ongoing civil litigation between Mr. Kessler and Mr. Kapoustine

The importance of the ongoing civil litigation between Mr. Kessler and Mr. Kapoustine cannot be overlooked when adjudicating this grievance. See *Déjà vu, Inc. v. Kapustine*, Case No. 2:25-cv-00915-JNW (U.S. Dist. Ct., W.D. Wa) (docket attached). Ms. French is not a part of that litigation and takes no sides. However, it is notable that Mr. Kapoustine states in his reply that "Johnny Kessler who asked Halley Fisher to make this forgery now uses this document as evidence in the US federal court and claims that I signed it and agreed to a $60,000/year salary." The employment and business relationship between Mr. Kessler (as the employer and co-owner) and Mr. Kapoustine (as the employee and co-owner) is central to the litigation, which began after Ms. French withdrew from representing both clients. It appears that Mr. Kapoustine's motivation in filing this grievance is to support his counterclaims against Mr. Kessler in the litigation. By alleging that Ms. French "forged" the employment agreement at the urging of Mr. Kessler (for which there is no evidence), Mr. Kapoustine is trying to buttress his argument that the parties' employment agreements were invalid and/or undermine Mr. Kessler's credibility. This is ironic because Ms. French's ministerial

change to the contract was actually beneficial to Mr. Kapoustine. His overall projected salary of $150,000 was unchanged, a portion of his salary was guaranteed, and as a result of Ms. French's truthful and diligent advocacy, he was approved for coveted O-1A status from within the U.S. without accruing any unlawful presence.

In sum, there is no evidence that Ms. French committed any crimes whatsoever in responding to the RFE, or at any other time.

Sincerely yours,

Kevin Bank

WASHINGTON STATE
BAR ASSOCIATION

Office of Disciplinary Counsel

Claire Carden
Disciplinary Counsel
Direct line: 206-727-8220
E-mail: clairec@wsba.org

May 20, 2026

Via email only

Fedor Kapoustine
446 64th Ave NE
Bellevue, WA 98008

Re: Grievance of Fedor Kapoustine against Halley Fisher French
ODC File No. 25-02082

Dear Fedor Kapoustine:

This letter is to advise you that we have completed our investigation of your grievance against lawyer Halley Fisher French and to advise you of our decision. The purpose of our review has been to determine whether sufficient evidence exists on which to base a disciplinary proceeding. Under the Washington Supreme Court's Rules for Enforcement of Lawyer Conduct (ELC), a lawyer may be disciplined only on a showing by a clear preponderance of the evidence that the lawyer violated the Washington Supreme Court's Rules of Professional Conduct (RPC). This standard of proof is more stringent than the standard applied in civil cases.

Based on the information we have received, we have determined to take no further action in this matter. Therefore, we are dismissing the grievance. Our decision to dismiss the grievance is based on a review of your original grievance received on February 27, 2026, your February 27, 2026 additional information, Halley Fisher French's March 31, 2026 response, your April 2, 2026 comments, French's April 30, 2026 reply, your May 5, 2026 additional information, and the May 14, 2026 interview of you.

You are a Canadian citizen. You and Johnny Kessler hired Halley Fisher French to allow you to enter and work in the United States for your jointly own company[1]. You and Kessler signed a joint representation agreement, including a conflict waiver. The written fee agreement says you will be paying the fee. You initialled that portion of the fee agreement. According to both you and French, Kessler was the main point of contact for French.

After the initial filing, United States Citizenship and Immigration Services (USCIS) sent a request for evidence (RFE). USCIS requested a written summary of the terms of employment between you and 1st1 Technologies. 1st1 Technologies was a start up that did not show significant income in its first year. At the time of filing, your proposed salary exceeded the amount 1st1 Technologies grossed in the year prior. French worked with you and Kessler to draft an employment agreement.

On or around October 13, 2022, you signed an employment agreement that included this paragraph:

> As a minority owner of a start-up, Mr. Kapoustine agrees that his annual salary will be based on company performance. All members of this organization will be entitled annual profit-sharing in addition to salary. Based on DejaVuAI current sales and prospective contracts for our product, it is estimated that Mr. Kapoustine's salary figure for 2022 will be $150,000 USD. Please see Schedule A on page 2 "Combined Sales Tracker 2022-2023 for a full explanation of our current and prospective contracts.

On or around October 25, 2022, French modified the signed agreement to read:

> Mr. Kapoustine will be guaranteed a base salary of $60,000, with additional remuneration subject to sales revenues. As a minority owner of a start-up, Mr. Kapoustine agrees that his annual salary will be based on company performance. All members of this organization will be entitled annual profit-sharing in addition to salary. Based on DejaVuAI current sales and prospective contracts for our product, it is estimated that Mr. Kapoustine's salary figure for 2022 will be $150,000 USD. Please see Schedule A on page 2 "Combined Sales Tracker 2022-2023 for a full explanation of our current and prospective contracts.

On October 25, 2022, French sent an email to Kessler, the representative of 1st1 Technologies, explaining why French made the change and asking if it was an issue. Kessler responded "Looks good. Let's go!" According to French, this document was uploaded to the Clio portal and available to both you and Kessler. During your ODC interview, you stated you did not know you had access to Clio.

---

[1] There is a dispute about the company name; however, for clarity's sake it will be referred to 1st1 Technologies throughout. In your grievance, you allege Kessler and/or French intended to defraud USCIS regarding the name change. There is insufficient evidence to establish that the alleged name and EIN change was anything other than a name and EIN change. If a judge later makes such a determination, you may ask that we reopen this file.

The modified signed agreement was submitted to USCIS. Eventually, you were granted the immigration relief you sought.

In your grievance, you allege that, by altering the response to the RFE, French committed forgery and/or perjury. RPC 8.4(b) precludes a lawyer from committing criminal acts that reflect adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects. RPC 8.4(c) precludes a lawyer from engaging in conduct involving dishonesty. RPC 3.3(a)(1) precludes a lawyer from knowingly making a false statement or failing to correct a material false statement. However, a high burden of proof—clear preponderance of the evidence—applies in lawyer disciplinary proceedings. The "clear preponderance" standard of proof is a strict one, more demanding than the standard applicable in most civil actions.

We do not believe we could meet that burden here. While it is not best practice to modify a signed document without ensuring all signatories have reviewed the document and confirming their agreement to the modification, we do not believe we can meet our high burden of proof to establish perjury or forgery. At minimum, French believed that French had approval to transmit the modified agreement as evidenced by the emails between French and Kessler. In addition, French believed that you had access to these documents because French believed you had access to documents through Clio. By copy of this letter, we remind French that when modifying a signed document, it is important to ensure all signatories have reviewed the document and accept the change.

We have considered carefully the information you provided and appreciate your bringing it to our attention. Under the Rules for Enforcement of Lawyer Conduct, a lawyer may be disciplined only upon a showing by a clear preponderance of the evidence that the lawyer violated ethical rules. For the reasons stated above, we are dismissing this grievance under ELC 5.7(a). If you do not mail or deliver a written request for review of this dismissal to us within **forty-five (45) days** of the date of this letter, the decision to dismiss the grievance will be final. Dismissal of a grievance constitutes neither approval nor disapproval of the conduct involved and should not be taken as the position of the Office of Disciplinary Counsel with respect to any other matter.

Sincerely,

Claire Carden
Disciplinary Counsel

cc: Kevin M Bank

# Exhibit 10

Washington State Department of Revenue

Business Lookup

## License Information:

New search Back to results

**Entity name:** 1ST1 TECHNOLOGIES LLP

**Business name:** 1ST1 TECHNOLOGIES LLP

**Entity type:** Limited Liability Partnership

**UBI #:** 604-625-986

**Business ID:** 001

**Location ID:** 0001

**Location:** Active

**Location address:** 15350 CRESCENT VALLEY RD SE
OLALLA WA 98359-9582

**Mailing address:** 15350 CRESCENT VALLEY RD SE
OLALLA WA 98359-9582

**Excise tax and reseller permit status:** Click here

**Secretary of State information:** Click here

## Owners and officers on file with the Department of Revenue

| Owners and officers | Title |
|---|---|
| KAPOUSTINE, FEDOR | |
| KESSLER, JOHNNY | |

## Registered Trade Names

| Registered trade names | Status | | First issued |
|---|---|---|---|
| 1ST1 TECH | Active | | Jun-23-2020 |
| 1ST1 TECHNOLOGIES | Active | | Jun-23-2020 |
| 1ST1 TECHNOLOGIES LLP | Active | | Jun-23-2020 |
| DEJA VU AI | Active | | Mar-15-2022 |
| DEJAVU AI | Active | | Mar-15-2022 |
| DEJAVUAI | Active | | Mar-15-2022 |
| DEJAVUAI.COM | Active | | Mar-15-2022 |

The Business Lookup information is updated nightly. Search date and time: 3/27/2025 8:42:59 PM

# Exhibit 11

Washington State Department of Revenue

Business Lookup

## License Information:

New search Back to results

**Entity name:** DEJAVUAI INC.

**Business name:** DEJAVUAI INC.

**Entity type:** Profit Corporation

**UBI #:** 604-955-692

**Business ID:** 001

**Location ID:** 0001

**Location:** Active

**Location address:** 15350 CRESCENT VALLEY RD SE
OLALLA WA 98359-9582

**Mailing address:** 15350 CRESCENT VALLEY RD SE
OLALLA WA 98359-9582

**Excise tax and reseller permit status:** Click here

**Secretary of State information:** Click here

## Owners and officers on file with the Department of Revenue

| Owners and officers | Title |
|---|---|
| KESSLER, JOHNNY | |

The Business Lookup information is updated nightly. Search date and time: 3/27/2025 8:52:15 PM

# Exhibit 12

https://ccfs.sos.wa.gov/?_gl=1*1hmix44*_ga*MTExMzEyNzQ3LjE3NDI1MTIwODM.*_ga_7B08VE04WV*MTc0NDAwNDU1Ny42LjAuMTc0NDAwNDU2Mi4wLjAuMA..#/Busin...

WebAdmin | Produc... Трамп идет на шту... WMST - Class Details Kalman filter - Wiki... Extended Kalman fil... Kawasaki KLX300 -... Stellar Salads from... WMST Motorcycle E... The crosstalk betwe...

Corporations and Charities Filing System

Welcome! FEDOR Logout

Navigation

- My Dashboard
- Order Certificates/Certified Copies
- Business Search
- Charities Search
- Trademark Search
- Create or Register a Business
- Business Maintenance Filings
- Reactivate a Business
- Charities Filings
- Account Preferences
- Logout

## Business Information

### BUSINESS INFORMATION

Business Name: 1ST1 TECHNOLOGIES LLP

UBI Number: 604 625 986

Business Type: WA LIMITED LIABILITY PARTNERSHIP

Business Status: ACTIVE

Principal Office Street Address: 15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES

Principal Office Mailing Address: 15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES

Expiration Date: 06/30/2025

Jurisdiction: UNITED STATES, WASHINGTON

Formation/ Registration Date: 06/19/2020

Period of Duration: PERPETUAL

Inactive Date:

Nature of Business: PROFESSIONAL, SCIENTIFIC & TECHNICAL SERVICES

### REGISTERED AGENT INFORMATION

Registered Agent Name: 1ST1 TECHNOLOGIES

Street Address: 15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES

Mailing Address:

### GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | JOHNNY | KESSLER |
| GOVERNOR | INDIVIDUAL | | FEDOR | KAPOUSTINE |

# Exhibit 13

https://ccfs.sos.wa.gov/?_gl=1*193k48i*_ga*MTExMzEyNzQ3LjE3NDI1MTIwODM.*_ga_7B08VE04WV*MTc0Mzg3MDcxOC40LjAuMTc0Mzg3MDgxNy4wLjAuMA..#/... Update

WebAdmin | Produc... Трамп идет на шту... WMST - Class Details Kalman filter - Wiki... Extended Kalman fil... Kawasaki KLX300 -... Stellar Salads from... WMST Motorcycle E... The crosstalk betwe...

Corporations and Charities Filing System

Welcome! FEDOR Lo

Navigation

- My Dashboard
- Order Certificates/Certified Copies
- Business Search
- Charities Search
- Trademark Search
- Create or Register a Business
- Business Maintenance Filings
- Reactivate a Business
- Charities Filings
- Account Preferences
- Logout

## Business Information

### BUSINESS INFORMATION

Business Name: DEJAVUAI INC.

UBI Number: 604 955 692

Business Type: WA PROFIT CORPORATION

Business Status: ACTIVE

Principal Office Street Address: 15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES

Principal Office Mailing Address:

Expiration Date: 09/30/2025

Jurisdiction: UNITED STATES, WASHINGTON

Formation/ Registration Date: 09/01/2022

Period of Duration: PERPETUAL

Inactive Date:

Nature of Business: PROFESSIONAL, SCIENTIFIC & TECHNICAL SERVICES, OTHER TECHNOLOGY

### REGISTERED AGENT INFORMATION

Registered Agent Name: JOHNNY KESSLER

Street Address: 15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES

Mailing Address:

### GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
| --- | --- | --- | --- | --- |
| GOVERNOR | INDIVIDUAL | | JOHNNY | KESSLER |

# Exhibit 14

**Date:** October 15, 2025

**To:** Leo Wang, Attorney representing Fedor Kapoustine ("Ted Kapustin"), 1st1 Technologies Member

**From:** John G. Kessler ("Johnny Kessler"), 1st1 Technologies Member and Registered Agent

**Subject:** Formal Notice of Dissolution of 1st1 Technologies, LLP and Asset Distribution

Mr. Wang,

This letter provides formal notification of the immediate dissolution of **1st1 Technologies, LLP (the "Company"),** effective today, October 15, 2025. This action is taken in my capacity as a two person partner in the “at-will” state of Washington (per on the **Revised Uniform Partnership Act (RUPA)**, and **Washington's LLP laws (RCW 25.05)**. This is to notify you that Ted’s share of the assets will be distributed to him in accordance with the operating agreement and common rules of practice. As the ownership shows in US state and federal systems, I am 51% owner and Ted is 49% owner, but in a measure of good faith, I am returning this to the original operating agreement amounts of 50% for each member.

**Asset Identification and Distribution**

The sole material asset of **1st1 Technologies, LLP** is the **100% shares held by the Company in DejaVuAI Inc.** Per **Section 24** and **Section 25** of the Operating Agreement, which stipulate that each Member owns an equal 50% interest and that distribution of profits shall be made in equal shares, the Company’s 100% interest in **DejaVuAI Inc.** will be divided and transferred as follows:

1. **50% interest in DejaVuAI Inc.** will be immediately transferred to John G. Kessler in the CARTA system (5,000,000 preferred shares).
2. **50% interest in DejaVuAI Inc.** will be immediately transferred to Fedor Kapoustine in the CARTA system (5,000,000 preferred shares).

This distribution completes the liquidation of the Company’s only material asset on an equitable 50/50 basis. I will initiate the necessary legal and corporate steps to finalize this transfer of shares promptly.

**Next Steps and Cooperation**

You are formally required to acknowledge receipt of this dissolution notice and agree to cooperate with all necessary filings with the State of Washington to formally terminate the LLP – an “at-will” state for employment and limited liability partnerships. A significant benefit of this distribution is that you will now hold an individual restricted **share position in DejaVuAI Inc.** All rights are reserved, including the confirmation that any operational rights, such as existing or future license agreements associated with the former Company's business, are now transferred to and reserved by us individually.

Sincerely,

**Johnny Kessler** **October 15, 2025**

# Exhibit 15

ccfs.sos.wa.gov/#/BusinessSearch/BusinessInformation

Corporations and Charities Filing System

Welcome! FEDOR Logout

Navigation

- My Dashboard
- Order Certificates/Certified Copies
- Business Search
- Charities Search
- Trademark Search
- Create or Register a Business
- Business Maintenance Filings
- Reactivate a Business
- Charities Filings
- Account Preferences
- Logout

## Business Information

### BUSINESS INFORMATION

Business Name: **1ST1 TECHNOLOGIES LLP**

UBI Number: **604 625 986**

Business Type: **WA LIMITED LIABILITY PARTNERSHIP**

Business Status: **VOLUNTARILY DISSOLVED**

Principal Office Street Address: **15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES**

Principal Office Mailing Address: **15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES**

Expiration Date: **06/30/2026**

Jurisdiction: **UNITED STATES, WASHINGTON**

Formation/ Registration Date: **06/19/2020**

Period of Duration: **PERPETUAL**

Inactive Date: **10/20/2025**

Nature of Business: **PROFESSIONAL, SCIENTIFIC & TECHNICAL SERVICES**

### REGISTERED AGENT INFORMATION

Registered Agent Name: **1ST1 TECHNOLOGIES**

Street Address: **15350 CRESCENT VALLEY RD SE, OLALLA, WA, 98359-9582, UNITED STATES**

Mailing Address:

### GOVERNORS

| Title | Governors Type | Entity Name | First Name | Last Name |
|---|---|---|---|---|
| GOVERNOR | INDIVIDUAL | | JOHNNY | KESSLER |
| GOVERNOR | INDIVIDUAL | | FEDOR | KAPOUSTINE |

# Exhibit 16

IRS Department of the Treasury
Internal Revenue Service

PHILADELPHIA PA 19255

In reply refer to: 3555139556
Apr. 09, 2025 LTR 63C 0
* 000000 00
00006898
BODC: SB

1 FT1 TECHNOLOGIES LLC
15350 CRESSENT VALLEY RD SE
OLALLA WA 98359

046076

Employer/payer identification number:
Taxpayer identification number: 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
Taxpayer name: FEDOR V KAPOUSTINE
Taxpayer address: 446 164TH AVE NE
BELLEVUE,WA 98008
Tax year: 2024

Dear Taxpayer:

WHY WE'RE SENDING YOU THIS LETTER

The taxpayer above stated the Form W-2, Wage and Tax Statement, they received from you for the tax year above is incorrect.

WHAT YOU NEED TO DO

Check the statement below that applies to you, then sign, date, and send a copy of this letter to the taxpayer listed above within 10 days from the date of this letter.

An information return penalty may apply if you don't file information returns or provide payee statements timely or accurately. Visit irs.gov/payments/information-return-penalties for more on information return penalties.

DON'T SEND A COPY OF THIS LETTER OR ANY ATTACHMENTS TO THE IRS.

[ ] We attached a copy of your Form W-2 to this letter.

[X] We don't have a Form W-2 to send you because our records show we didn't pay you wages.

[ ] We don't have a Form W-2 to send you because our records show you didn't reach the minimum income reporting level required to receive a Form W-2.

[ ] Our records show the amount on your Form W-2 is correct.

[ ] Our records show the amount we originally reported to you was incorrect. We've corrected your Form W-2 and attached a copy to this letter.

[ ] We attached a copy of your Form 1099-R to this letter.

3555139556
Apr. 09, 2025 LTR 63C 0
* 000000 00
00006899

1 FT1 TECHNOLOGIES LLC
15350 CRESSENT VALLEY RD SE
OLALLA WA 98359

[ ] We don't have a Form 1099-R to send you because our records show we didn't pay you a pension, annuity, retirement or profit-sharing plan, an IRA, insurance contract, etc.

[ ] We don't have a Form 1099-R to send you because our records show you didn't reach the minimum income reporting level required to receive a Form 1099-R.

[ ] Our records show the amount on your Form 1099-R is correct.

[ ] Our records show the amount we originally reported to you was incorrect. We've corrected your Form 1099-R and attached a copy to this letter.

HOW TO CONTACT US

If you have questions, you can call 800-829-0922.

When you write, include a copy of this letter, your telephone number and the hours we can reach you.

Keep a copy of this letter for your records.

Thank you for your cooperation.

Sincerely yours,

Ms. Hanks

Ms. Hanks
Operations Manager - AMP03

APRIL 14, 2025